ALICIA W. MACKLIN (State Bar No. 266325)
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone:  (310) 551-8111
Facsimile:   (310) 551-0304
E-Mail:      amacklin@hooperlundy.com

JORDAN KEARNEY (State Bar No. 305483)
KATRINA PAGONIS (State Bar No. 262890)
**HOOPER, LUNDY & BOOKMAN, P.C.**
44 Montgomery Street, Suite 3500
San Francisco, California 94104
Telephone:  (415) 875-8500
Facsimile:   (310) 362-8937
E-Mail:      jkearney@hooperlundy.com
             kpagonis@hooperlundy.com

DAVID S. SCHUMACHER (MA State Bar No. 647917)
(admitted *pro hac vice*)
**HOOPER, LUNDY & BOOKMAN, P.C.**
470 Atlantic Avenue, Suite 1201
Boston, Massachusetts 02210
Telephone:  (617) 532-2700
Facsimile:   (617) 848-0625
E-Mail:      dschumacher@hooperlundy.com

Attorneys for Defendant Lucile Salter Packard
Children's Hospital at Stanford

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A.; Z.B., a minor, by and through their parent, B.B.; Z.C., a minor, by and through their parent, C.C.; Z.D., a minor, by and through their parent, D.D.; Z.E., a minor, by and through their parent, E.E.; and F.F., <br><br> Plaintiffs, <br><br> vs. <br><br> LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, a California nonprofit public benefit corporation, <br><br> Defendant. | Case No. 5:26-cv-04998-PCP <br><br> **DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE** <br><br> **HEARING ON MOTION:** <br> Date:     June 5, 2026 <br> Time:     10:00 a.m. <br> Crtrm.:   8 <br> Judge:   Hon. P. Casey Pitts |

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL  (310) 551-8111 • FAX (310) 551-0304

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................................1

II.     BACKGROUND ..................................................................................................................2

        A.      LPCH's Pediatric Expertise and National Leadership ..............................................2

        B.      The DOJ Investigation ...............................................................................................3

        C.      The DOJ Issues a Grand Jury Subpoena and Demands Immediate
                Production of Medical Records ..................................................................................4

        D.      Patients' Challenge to LPCH's Criminal Subpoena ..................................................6

III.    ARGUMENT .......................................................................................................................6

        A.      Likelihood of Success on the Merits .........................................................................7

                1.      The Grand Jury Subpoena Does Not Render LPCH Responsible for
                        Disclosures as a State Actor ...........................................................................7

                2.      Plaintiffs Have Sued the Wrong Party in the Wrong Court .........................12

        B.      Immediate Irreparable Harm ...................................................................................13

        C.      Balance of Equities and Public Interest ...................................................................15

IV.     CONCLUSION ..................................................................................................................16

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abordo v. Mobi PCS*,
    684 F. App'x 631 (9th Cir. 2017) ........................................................................................ 8, 11

*In re Administrative Subpoena 25- 1431-032 to Rhode Island Hospital,* No. 1:26-
    mc-0007-MSM-AEM, 2026 WL 1392565
    (D.R.I. May 14, 2026) ............................................................................................................ 4

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ............................................................................................................... 9

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
    827 F.2d 1291 (9th Cir. 1987) ........................................................................................ 10, 11

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) ............................................................................................ 7, 9

*Chiles v. Salazar*,
    146 S. Ct. 1010 (2026) ........................................................................................................... 5

*Matter of Chinske*,
    785 F.Supp. 130 (D. Mont. 1991) ....................................................................................... 12

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979) ............................................................................................... 15

*Conant v. McCoffey*,
    No. C 97-0139 FMS, 1998 WL 164946 (N.D. Cal. Mar. 16, 1998) ..................................... 14

*Cooper v. Cty. of San Luis Obispo*,
    350 F.R.D. 625 (C.D. Cal. 2025) ......................................................................................... 14

*Disney Enters, Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) .............................................................................................. 6, 7

*In re Grand Jury Matters*,
    751 F.2d 13 (1st Cir. 1984) ................................................................................................. 12

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974) ............................................................................................................. 10

*Jaffee v. Redmond*,
    518 U.S. 1 (1996) ................................................................................................................... 5

Case No. 5:26-cv-04998-PCP

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO
SHOW CAUSE

10439166.6

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

*Kalbers v. United States Dep't of Justice*,
   166 F.4th 783 (9th Cir. 2026).................................................................................................. 14

*Khalil v. Trustees of Columbia University in the City of New York*,
   No. 25-CV-2079 (AS), 2026 WL 775813 (S.D.N.Y. Mar. 19, 2026).................................... 11

*California ex rel. Lockyer v. U.S. Dep't of Agriculture*,
   710 F.Supp.2d 916 (N.D. Cal. 2008) ...................................................................................... 15

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012).................................................................................................. 13

*Nelson v. Nat'l Aeronautics & Space Admin.*,
   506 F.3d 713 (9th Cir. 2007).................................................................................................. 13

*New York Times Co. v. Gonzales*,
   459 F.3d 160 (2d Cir. 2006)................................................................................................... 13

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023)................................................................................................... 9

*Rines v. United States Masters Swimming, Inc.*,
   No. CV 25-10945 JGB, 2025 WL 3691902 (C.D. Cal. Nov. 19, 2025) ................................. 10

*Sutton v. Providence St. Joseph Medical Center*,
   192 F.3d 826 (9th Cir. 1999)..................................................................................... 8, 9, 10, 12

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004).................................................................................................. 13

*United States v. AMC Entertainment, Inc.*,
   549 F.3d 760 (9th Cir. 2008).................................................................................................. 15

*United States v. California*,
   173 F.4th 1060 (9th Cir. 2026)................................................................................................. 7

*United States v. (Under Seal)*,
   714 F.2d 347 (4th Cir. 1983).................................................................................................. 12

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985).................................................................................................. 15

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................................................... 6

**Federal Statutes**

18 U.S.C.
   § 3486............................................................................................................................................ 3

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

28 U.S.C.
  § 1826 .......................................................................................................................... 15

**Other Authorities**

Fed. R. Crim. P.
  6(e)(2)(B)(vi) ............................................................................................................... 14
  17(g) ............................................................................................................................. 15
  42 .................................................................................................................................. 15

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

Case No. 5:26-cv-04998-PCP

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

## I.    INTRODUCTION

For the better part of the last year, the United States Department of Justice ("DOJ") has been investigating the provision of gender affirming care ("GAC") for minors. In July 2025, the DOJ issued administrative Health Insurance Portability and Accountability Act ("HIPAA") subpoenas for records to numerous pediatric hospitals, including the Lucile Salter Packard Children's Hospital at Stanford ("LPCH"), which have provided lawful, medically-recognized GAC to numerous patients. After months of discussions with the DOJ and the production of certain records, on May 6, 2026, the DOJ abruptly withdrew the HIPAA subpoena to LPCH. The following day, the DOJ served the hospital with a grand jury subpoena issued from the Northern District of Texas ("Grand Jury Subpoena"). The DOJ indicated that it expects substantial compliance with this subpoena—including the provision of patient records—by the return date of June 10, 2026. LPCH is seeking to protect patient privacy by planning to produce to the DOJ anonymized patient records.

Meanwhile, on May 27, 2026, the instant action was filed, seeking a temporary restraining order ("TRO") to prevent LPCH from producing Plaintiffs' health records to the DOJ. The DOJ has been clear with LPCH's counsel that, if an injunction issues, it will move to compel full compliance with the Grand Jury Subpoena in the Northern District of Texas, which could include patient-identifying information—fully aware that the court in Fort Worth recently granted a motion to compel against another hospital in an analogous, although not identical, situation.

Thus, LPCH finds itself in an extraordinary and challenging situation. If this Court issues an injunction, LPCH cannot comply with the Grand Jury Subpoena without risking contempt of this Court. But if the court in the Northern District of Texas allows a motion to compel, and LPCH does not comply, the hospital risks contempt in *that* court.

While LPCH is sympathetic to the patient Plaintiffs, the relief they seek is not cognizable against LPCH or in this Court. A challenge to a grand jury subpoena is properly presented as a motion to quash against the party that issued the subpoena (the DOJ) in the district that issued the subpoena (the Northern District of Texas). Instead, Plaintiffs sued the recipient of the subpoena (LPCH)—in a district (the Northern District of California) with no jurisdiction over the issuing

1                                            Case No. 5:26-cv-04998-PCP

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

grand jury. To explain this unconventional choice, Plaintiffs claim that LPCH, a private hospital, is actually a "state actor" for the purposes of this investigation. However, there is no authority supporting the extraordinary position that a party subject to a grand jury subpoena automatically becomes a state actor for constitutional purposes. To the contrary, a raft of cases have reached the opposite conclusion: that merely following the law, including responding to legal process, does not transform a private party into an arm of the government. Moreover, the public policy consequences of a conclusion that LPCH is a state actor are potentially profound and far-reaching.

An injunction would also undermine LPCH's ongoing efforts to mitigate any potential disclosure of confidential patient information. In discussions with LPCH, the DOJ has indicated that, in the first instance, it will accept anonymized patient records. Those discussions remain ongoing, and no agreement has been finalized. However, an order enjoining LPCH from producing any patient records could disrupt those negotiations and potentially trigger immediate, full enforcement of the subpoena, which could include patient-identifying information. Thus, the requested relief risks producing the very harm Plaintiffs seek to avoid, rather than preventing it. And, while the production of anonymized patient records to the DOJ, which must safeguard the information, substantially mitigates any harm to the Plaintiffs, a contempt order (either in this Court or in Texas) would be extremely harmful to LPCH.

In short, the law does not recognize the relief that Plaintiffs seek, and an injunction would trigger a tug of war between two judicial sovereigns and potentially result in the worst-case scenario for the Plaintiffs. Therefore, this Court should deny the motion for a TRO and preliminary injunction and allow LPCH to resume responding to the Grand Jury Subpoena by negotiating the production of anonymized patient records to the government.[1]

## II.    BACKGROUND

### A.    LPCH's Pediatric Expertise and National Leadership

LPCH is a preeminent children's hospital in the United States, which provides a full

---

[1] In responding to the instant lawsuit, LPCH does not concede that the Grand Jury Subpoena is legitimate or proper, and LPCH specifically reserves all rights to challenge the Grand Jury Subpoena, in whole or in part, in the appropriate forum.

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

spectrum of clinical services, including care for rare and complex conditions as well as routine pediatric care. With physicians who are board-certified specialists across all pediatric disciplines, LPCH is consistently ranked among the leading children's hospitals in the country, including top-ten national rankings in multiple specialties, including neonatology, nephrology, neurology and neurosurgery, pulmonology, and gastroenterology. LPCH also maintains nationally-recognized programs in pediatric cardiology and organ transplantation and is verified as a Level I Children's Surgery Center, the highest designation awarded by the American College of Surgeons. The hospital's care model is specifically designed for pediatric patients and expectant mothers, emphasizing specialized clinical expertise, minimally-invasive treatment approaches, advanced pain management, and family-centered care supported by pediatric-specific technology and facilities.

The Grand Jury Subpoena focuses on LPCH's provision of GAC, which is a medically-recognized treatment that may include a range of social, psychological, behavioral, and, where appropriate, medical interventions, designed to support and affirm an individual's gender identity.

### B.   The DOJ Investigation

In July 2025, the DOJ issued a subpoena to LPCH seeking numerous records associated with LPCH's GAC clinic. Declaration of David S. Schumacher ("Schumacher Decl.") ¶ 2 (attached hereto as Ex. A). The subpoena was an administrative "HIPAA" subpoena issued pursuant to 18 U.S.C. § 3486. *Id.* That summer, the DOJ issued over twenty, virtually-identical HIPAA subpoenas to hospitals around the country. *Id.*; *see also* Compl., ECF 1, ¶ 23. The HIPAA subpoenas included requests for records of all minor patients that received GAC at LPCH. Schumacher Decl. ¶ 2.

Between August 2025 and May 2026, LPCH initiated a comprehensive search for responsive documents and produced records in response to requests in the HIPAA subpoena that did not implicate patient privacy. *Id.* ¶ 3. LPCH did not, however, produce any patient records to the DOJ. The government indicated that it would accept anonymized patient records in the first instance. LPCH explored this possibility, even though it would be extremely complicated and expensive to anonymize the patient records. This project was ongoing as of May 6, 2026. *Id.* ¶ 4.

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

**C.    The DOJ Issues a Grand Jury Subpoena and Demands Immediate Production of Medical Records**

Rhode Island Hospital was one of the health systems that received a virtually identical HIPAA subpoena. On April 30, 2026, the DOJ filed a motion against Rhode Island Hospital to compel compliance with its HIPAA subpoena. The DOJ filed this motion not in Rhode Island, but in the Northern District of Texas. Schumacher Decl. ¶ 5; *see also* Compl. ¶ 25 (citing Gov't Pet. to Enforce at 2, *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (N.D. Tex. April 30, 2026)). That same day, before the hospital had an opportunity to respond, the U.S. District Court for the Northern District of Texas issued an order compelling full compliance with the subpoena within 14 days. Schumacher Decl. ¶ 5; *see also* Compl. ¶ 25 (citing Order, No. 4:26-mc-00006 (N.D. Tex. Apr. 30, 2026), ECF 2).[2]

On May 6, 2026, the DOJ informed counsel for LPCH via email, out of the blue, that the DOJ was withdrawing the HIPAA subpoena to Stanford "[e]ffective immediately." Schumacher Decl. ¶ 6. The next day, May 7, 2026, the DOJ issued the Grand Jury Subpoena to LPCH. *Id.; see also* U.S. District Court for the Northern District of Texas, Subpoena to Lucile Packard Children's Hospital to Testify Before Grand Jury, R26 TXN 53128, May 6, 2026 (attached hereto as Ex. B). The Grand Jury Subpoena was substantially similar to the prior HIPAA subpoena, with one major difference: it was issued from the Northern District of Texas. Schumacher Decl. ¶ 6. The return date on the subpoena is June 10, 2026. Grand Jury Subpoena, Ex. B.

As relevant here, through the Grand Jury Subpoena, the DOJ commanded LPCH to produce the following patient-identifying information and records:

---

[2] In parallel litigation, the U.S. District Court for the District of Rhode Island quashed the HIPAA subpoena. *In re Administrative Subpoena 25-1431-032 to Rhode Island Hospital,* C.A. No. 1:26-mc-0007-MSM-AEM, 2026 WL 1392565 (D.R.I. May 14, 2026). In response, the Northern District of Texas Court ordered Rhode Island Hospital to "turn over all responsive documents" to the court for *in camera* review, noting that the District of Rhode Island only "prohibited the DOJ from" enforcing the subpoena. Order, No. 4:26-mc-00006 (May 18, 2026, N.D. Tex.), ECF 26.

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

12. Documents sufficient to identify each patient who underwent [GAC].[3]

13. For each such patient identified in Subpoena specification 12, *supra,* documents relating to the clinical indications, diagnoses, or assessments that formed the basis for providing [GAC], including the prescribing of puberty blockers or hormones, and all other documents relating to the [GAC] provided to each patient identified in Subpoena specification 12 from initial consultation to the most recent treatment provided.

14. All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in Subpoena specification 12, *supra,* including any disclosures about off-label use (*i.e.,* uses not approved by the United States Food and Drug Administration) and potential risks of puberty blockers and/or hormones.

Grand Jury Subpoena, Ex. B.

Counsel for LPCH has met and conferred with the DOJ regarding the Grand Jury Subpoena. Schumacher Decl. ¶ 7. The DOJ initially indicated that it expected substantial compliance, including the production of hundreds of thousands of pages of patient records, by June 10, 2026, the return date on the subpoena (34 days after it was issued)—although discussions are ongoing. *Id.* The DOJ indicated that, while it would accept anonymized patient records in the first instance, it reserved the right to request unmasked patient records, and LPCH could challenge such a request in court. *Id.* LPCH has not produced any patient records to the government and will not do so prior to June 10, the return date on the subpoena. *Id.*

---

[3] The Grand Jury Subpoena uses the term, "Sex-Rejecting Procedures," which is arguably narrower than the umbrella term of GAC. For example, the term "Sex-Rejecting Procedures" as defined in the Grand Jury Subpoena does not include mental health counseling and treatment records. Mental health records raise additional concerns, both because the records may be subject to privileges (*see Jaffee v. Redmond*, 518 U.S. 1 (1996)) and because viewpoint restrictions on talk therapy raise First Amendment concerns. *Chiles v. Salazar*, 146 S. Ct. 1010 (2026). LPCH's use of the term "GAC" in this briefing should not be read as broadening the scope of the Grand Jury Subpoena.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

5                    Case No. 5:26-cv-04998-PCP

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

### D.    Patients' Challenge to LPCH's Criminal Subpoena

While these discussions were ongoing, on May 27, 2026, the instant lawsuit was filed. Schumacher Decl. ¶ 9; *see* Compl. Plaintiffs filed an *ex parte* motion for a TRO, seeking to enjoin LPCH's production of all records or information responsive to specifications 12–14 of the Grand Jury Subpoena or Plaintiffs' identifying information or protected health information. Pls.' Mot. for TRO, ECF 3. Plaintiffs also ask this Court to issue an order to show cause why a preliminary injunction should not be entered on the same terms. *Id.*

Counsel for LPCH updated the DOJ regarding the lawsuit. Schumacher Decl. ¶ 9. The DOJ has informed undersigned counsel that, if the Court issues an injunction preventing LPCH from producing patient records in response to the Grand Jury Subpoena, the DOJ would immediately move to compel full compliance with the subpoena in the Northern District of Texas. *Id.*

## III.    ARGUMENT

Plaintiffs seek the extraordinary relief of a TRO, preventing LPCH from complying with the Grand Jury Subpoena. To obtain a TRO or an injunction, Plaintiffs must demonstrate the following: (1) likelihood of success on the merits; (2) imminent irreparable harm; (3) the balance of equities favors the plaintiffs; and (4) the injunction will serve the public interest. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008); *Disney Enters, Inc. v. VidAngel, Inc.,* 869 F.3d 848, 856 (9th Cir. 2017).

Plaintiffs cannot meet this demanding standard. Their theory improperly equates mere compliance with a federal grand jury subpoena as state action. Of course, LPCH did not issue the subpoena and bears no responsibility for it, and the law does not transform a subpoena recipient into a state actor for purposes of constitutional liability. Moreover, LPCH is actively working to mitigate potential intrusions on patient privacy, including the potential production of anonymized records. Contrary to Plaintiffs' assertions that LPCH faces no "cognizable harm" by a delay in responding to the DOJ, *see* Mot. for TRO at 3, the requested relief would expose LPCH to substantial legal risk by forcing it to choose between conflicting Federal obligations. Finally, the public interest weighs against an injunction that would create inter-court conflict and disrupt LPCH's ongoing efforts to protect patient privacy.

10439166.6

### A.    Likelihood of Success on the Merits

Likelihood of success on the merits "is a threshold inquiry and is the most important factor." *United States v. California*, 173 F.4th 1060, 1066 (9th Cir. 2026) (internal quotations omitted). "[I]f a movant fails to meet this threshold inquiry, the court need not consider the other factors . . . in the absence of serious questions going to the merits." *Disney Enters., Inc.,* 869 F.3d at 856 (internal quotations omitted). Plaintiffs are not likely to succeed on the merits because their arguments rest on this Court finding LPCH to be a state actor, which it is not. Plaintiffs' constitutional privacy claims, as alleged against LPCH, a private hospital, must therefore fail.

### 1.    The Grand Jury Subpoena Does Not Render LPCH Responsible for Disclosures as a State Actor

Plaintiffs seek to enjoin LPCH from responding to the Grand Jury Subpoena on the novel theory that, having received the subpoena, issued on the application of the United States Attorney's Office for the Northern District of Texas and under the seal of the U.S. District Court for the Northern District of Texas, LPCH has become a "state actor" responsible for invading Plaintiffs' constitutional right of privacy.[4] As "a California nonprofit public benefit corporation," Compl. ¶ 19, LPCH is "a private corporation, not a government agency." *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 2846, 222 L. Ed. 2d 1130 (2025). Importantly, Plaintiffs only named LPCH, the private recipient of the Grand Jury Subpoena, as a defendant and declined to sue the United States or its agents or to move to limit or quash the Grand Jury Subpoena itself. LPCH itself bears no responsibility for the issuance of the subpoena, and its compliance with compulsory legal process cannot be the basis for liability as a

---

[4] The Motion for a TRO does not address all of Plaintiffs' allegations, including, in particular, Counts II (unlawful search and seizure) and III (denial of equal protection). Compl. ¶¶ 63–79. LPCH reserves its right to address those arguments in later proceedings. Notably, though, state action is a threshold issue for every alleged constitutional violation. Thus, like Plaintiffs' constitutional privacy arguments discussed herein, LPCH is not the correct defendant for these claims. *See* Sect. III.A.1. Further, as to Count II, this claim is based on an allegation that Plaintiffs did not "voluntarily disclose[ their health information] to [LPCH] in any meaningful constitutional sense." *See* Compl. ¶ 51. To the extent Plaintiffs are alleging that LPCH obtained their personally-identifying information without their consent, LPCH emphatically disputes that allegation. Importantly, there is no allegation in the Complaint that LPCH's practice deviated from the governing HIPAA requirements.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL  (310) 551-8111  •  FAX (310) 551-0304

state actor. Having sued the wrong party, a private entity rather than the state actors responsible for issuance of the subpoena, Plaintiffs cannot succeed on the merits of their claim.

A private entity's compliance with a grand jury subpoena alone cannot be the basis to hold that entity responsible as a state actor. In *Sutton v. Providence St. Joseph Medical Center*, the Ninth Circuit expressly rejected the contention that "governmental compulsion in the form of a generally applicable law, without more," is sufficient to hold a private entity responsible as a governmental actor. 192 F.3d 826, 841 (9th Cir. 1999). The rule that a party must comply with a subpoena is generally applicable law, such that a private entity is not responsible as a state actor when responding to a subpoena. *Abordo v. Mobi PCS*, 684 F. App'x 631, 632 (9th Cir. 2017) (citing *Sutton* to conclude that a private entity did not act "under the color of state law in responding to subpoenas issued by the State of Hawaii's Department of Commerce and Consumer Affairs"). To prevail, Plaintiffs "must establish some other nexus sufficient to make it fair to attribute liability to the private entity." *Sutton*, 192 F.3d at 841. As summarized by the Ninth Circuit, this would consist of "participation by the state in an action ostensibly taken by the private entity, through conspiratorial agreement, official cooperation with the private entity to achieve the private entity's goal, or enforcement and ratification of the private entity's chosen action." *Id.* (internal citations omitted). Without any mention of *Sutton*, Plaintiffs' state actor argument exclusively focuses on federal compulsion through the Grand Jury Subpoena. Plaintiffs, having alleged only compulsion through a generally applicable law and no other nexus, cannot prevail on the merits.

In an effort to state a constitutional claim against LPCH, Plaintiffs argue that the government compelled or coerced LPCH such that LPCH's conduct is "fairly attributable to the government." Mem. Supp. at 12. In so doing, however, Plaintiffs primarily rely on cases in which litigants have sought to hold governmental agents or officers responsible for the actions of private entities. Mem. Supp. at 10–11 (citing *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989); *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)). This focus is unsurprising: "The compulsion analysis originated in cases in which the government itself, not a private entity, was

8                                Case No. 5:26-cv-04998-PCP

the defendant." *Sutton*, 192 F.3d at 836. But the question of whether the government's compulsion or coercion of LPCH is sufficient to attribute LPCH's conduct to the government is not presented in this case. Rather, the question is whether the Grand Jury Subpoena renders *LPCH itself* responsible as a government actor. This is a materially different inquiry. *Id*. at 838 (holding that, although "*the government* cannot escape liability when it compels a result," such compulsion "does not suggest that the government's action is 'fairly attributable' to the private defendant" (emphasis added)). "[I]n a case involving a private defendant, the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable' to the private defendant. Indeed, without some other nexus between the private entity and the government, we would expect that the private defendant is *not* responsible for the government's compulsion." *Id.* at 838 (emphasis added); *see also Blum*, 457 U.S. at 1003 ("This case is obviously different from those cases in which the defendant is a private party and the question is whether his conduct has sufficiently received the imprimatur of the State so as to make it 'state' action . . . ."); *Children's Health Def.*, 112 F.4th at 759 (noting that "there is reason to doubt that a purely private actor like [LPCH], which was the *victim* of the alleged coercion, would be the appropriate defendant, rather than the government officials responsible for the coercion"). Thus, in the Ninth Circuit, plaintiffs must "show 'something more' than state compulsion in order to hold a private entity liable as a governmental actor." *Sutton* 192 F.3d at 838 (citing *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987)).

It is therefore unsurprising that private entities are only responsible as state actors in "exceptional cases." *O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023)*.* In the handful of cases cited by Plaintiffs involving private defendants, Mem. Supp. at 10–11, the Ninth Circuit has generally held that the private entity is *not* responsible as a state actor. *Id.* (holding "Twitter's interactions with state officials did not transform the company's enforcement of its content-moderation policy into state action"); *Children's Health Def.*, 112 F.4th 742 (holding that Meta did not bear state actor responsibility for its content-moderation policies); *Sutton*, 192 F.3d at 843 (holding that state compulsion without "willful participation in a joint activity by the private entity and the government" is insufficient to establish a private entity's responsibility as a state actor);

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

9    Case No. 5:26-cv-04998-PCP

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

*see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358–59 (1974) (holding that "a heavily regulated, privately owned utility, enjoying at least a partial monopoly" is not liable as a state actor because the state was not sufficiently connected with the utility's action in terminating service).

In the end, Plaintiffs rely on a single Ninth Circuit case—*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987)—in which a private telecommunications provider bore responsibility as a state actor. *See* Mem. Supp. at 11–12. *Carlin*, however, does not save Plaintiffs' attempts to hold LPCH responsible as a state actor for responding to the Grand Jury Subpoena issued by the U.S. District Court for the Northern District of Texas. In this First Amendment case*,* the defendant telephone company terminated service to Carlin Communications, a company that "supplie[d] salacious telephone messages to the public," after a deputy attorney of Maricopa County threatened to prosecute the telephone company if it continued to provide service to Carlin. *Carlin,* 827 F.2d*.* at 1292–93. The telephone company contested "whether the county attorney's letter was the real motivating force behind the termination," but the Ninth Circuit concluded that, in light of the county attorney's threats, the conduct was not the "result of private choice." *Id*. at 1295.

The Ninth Circuit has subsequently cabined *Carlin* on two grounds. First, *Carlin* involves a public utility rather than a typical private actor. *Sutton*, 192 F.3d at 843. "[B]ecause important First Amendment interests are at issue, the fact that the telephone company is a heavily regulated public utility assuming quasi-monopolistic control over the message medium should be accorded significant weight and tip the balance toward state action." *Id.* (quoting Morgan W. Tovey, *Dial–A–Porn and the First Amendment: The State Action Loophole*, 40 Fed. Communications L.J. 267, 289 (1988)). Second, *Carlin* involved "particularized state participation" in the form of threats from a county attorney rather than "generally applicable laws (or customs)." *Id.*

These same factors distinguish the case at bar from *Carlin*. LPCH is not a public utility, lacks any control over a message medium, and does not enjoy a government-sanctioned quasi-monopoly, distinguishing it from the public utility defendant in *Carlin*. *See id.*; *Rines v. United States Masters Swimming, Inc.*, No. CV 25-10945 JGB (AJRX), 2025 WL 3691902, at *4 (C.D.

Case No. 5:26-cv-04998-PCP

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

Cal. Nov. 19, 2025) (distinguishing *Carlin* where the defendant was a nonprofit athletics organization, "not a public utility"). More importantly, the rule that a party must comply with a subpoena is generally applicable law, such that a private entity is not responsible as a state actor when responding to a subpoena. *Abordo*, 684 F. App'x at 632 (9th Cir. 2017). LPCH is not acting based on threats and is not alleged to otherwise be coordinating or conspiring with the government. LPCH received a grand jury subpoena issued on the application of the U.S. Attorney's Office for the Northern District of Texas and under the seal of the U.S. District Court for the Northern District of Texas and is obligated to comply. As the Ninth Circuit made clear in *Sutton*, "the mere fact that the government compelled a result" is not enough; rather, "some other nexus between the private entity and the government" is required. 192 F.3d at 838. This might be a closer case if LPCH was alleged to be acting based on the mere threat of an investigation such that there is "something more" than governmental compulsion at issue, *Sutton*, 192 F.3d at 838, but Plaintiffs can allege no such facts.[5] LPCH, unlike the defendant in *Carlin*, has been served with a grand jury subpoena and is compelled to respond, and Plaintiffs, unlike the plaintiff in *Carlin*, may challenge that subpoena directly. The idea that, in lieu of moving to quash the Grand Jury Subpoena, Plaintiffs can instead sue LPCH in another Federal district under the theory that a private entity becomes a state actor when responding to a grand jury subpoena, is simply untenable.

Notably, Plaintiffs do not cite to a single case in which the private entity receiving a Federal grand jury subpoena or otherwise subject to compulsory legal process bears responsibility as a state actor when complying with the subpoena or other compulsory legal process. Instead, they elide this critical question with reassurance that not "*every* recipient of a grand jury subpoena

---

[5] Similarly, the out-of-circuit authority cited by Plaintiffs (at 12), *Khalil v. Trustees of Columbia University in the City of New York*, involved private entity actions based on a "veiled threat" from Federal codefendants. No. 25-CV-2079 (AS), 2026 WL 775813, at *12 (S.D.N.Y. Mar. 19, 2026). Importantly, in *Khalil*, the court emphasized that the case presented allegations that "the private party intended to deprive the plaintiff[s] of their constitutional rights or acted jointly with the government in doing so," which were not present in *Sutton*. *Id.*, at *14. These factors are not present in the case at bar. LPCH is alleged only to have received a grand jury subpoena and Plaintiffs have not and cannot allege that LPCH intended to deprive Plaintiffs of their constitutional rights or undertook any joint action.

11    Case No. 5:26-cv-04998-PCP

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

becomes a state actor for every purpose." *See* Pls.' Mem. of P. & A. in Supp. *Ex Parte* Mot. for TRO, ("Mem. Supp."), ECF 3-2, at 19. This reassurance is not backed by any principled distinctions between LPCH and other recipients of Federal grand jury subpoenas. Plaintiffs argue that "LPCH would be the instrument through which the government obtains records that courts have repeatedly concluded DOJ is not entitled to." *Id.* But this articulation confuses matters. It is the Federal Grand Jury Subpoena itself that is the instrument through which any records will be obtained by the government, and LPCH played no role in the issuance of the subpoena. LPCH has in no way participated in any scheme to invade Plaintiffs' privacy. Rather, LPCH merely provided critical medical care to its patients and is now subject to compulsory legal process. It would be a shocking departure from precedent to "dragoon[]" LPCH into defending the Grand Jury Subpoena. *Sutton*, 192 F.3d at 839 (quoting *Printz v. United States,* 521 U.S. 898, 928 (1997) (citation and internal quotation marks omitted)). In the end, Plaintiffs are seeking an outcome-driven exception to the general rule that private entities are not state actors without the support of precedent or discernible principles.

### 2.    Plaintiffs Have Sued the Wrong Party in the Wrong Court

A challenge to the Grand Jury Subpoena is properly cognizable against the DOJ in the court where the grand jury sits. Here, Plaintiffs have sued the recipient of the subpoena in a court more than 1,600 miles from the grand jury that issued the subpoena. That is improper. A motion to quash or modify a subpoena under Rule 17(c)(2) should be filed in the same court that supervises the grand jury. *See United States v. (Under Seal),* 714 F.2d 347, 350 (4th Cir. 1983) ("The power to quash a subpoena exists in the district court of the district where the grand jury sits by reason of its inherent authority to prevent misuse of its own process."); *In re Grand Jury Matters,* 751 F.2d 13, 16 (1st Cir. 1984) ("[T]he practical responsibility for controlling grand jury excesses lies with the district court, on which the grand jury must rely for subpoena enforcement and contempt procedures." (internal quotations and modifications omitted)); *Matter of Chinske*, 785 F.Supp. 130, 131-32 (D. Mont. 1991) ("The court has limited supervisory power over grand jury proceedings, including the power to quash a grand jury subpoena."). Plaintiffs should seek review

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

and relief against the government in the Northern District of Texas.[6]

### B.   Immediate Irreparable Harm

Plaintiffs argue that the alleged deprivation of constitutional rights constitutes harm that is both irreparable and immediate because the production of records on June 10, 2026 (the return date of the Grand Jury Subpoena) will cause Plaintiffs' "privacy interest in the information they contain [to be] permanently and irrevocably destroyed." Mem. Supp. at 23.

There is no doubt that the deprivation of constitutional rights constitutes irreparable harm. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). And, privacy concerns are certainly implicated by the Grand Jury Subpoena and the federal government's investigation into GAC. Courts weigh five factors in determining whether the interest in obtaining information outweighs the individual's privacy interest: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 551 (9th Cir. 2004), *abrogated by Dobbs v. Jackson Women's Health Org.¸*597 U.S. 215 (2022). This line of authority focuses on the *government's* interests and potential use of the information—not a private actor's—highlighting the mismatch between the Plaintiff's objection and the entity they have sued. *See Nelson v. Nat'l Aeronautics & Space Admin.*, 506 F.3d 713, 715 (9th Cir. 2007) ("To justify actions infringing upon the right [to information privacy], the *government* must show that its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet that

---

[6] Plaintiffs analogize to *New York Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006) to demonstrate that this Court has jurisdiction to hear a civil action for declaratory relief when a party's constitutional interests are threatened by a grand jury subpoena in another district, seeking records held by a third party. Mem. Supp. at 7–8. However, as even the Plaintiffs make clear, that action was brought against the United States and the U.S. Attorney General, not the third party subject to the subpoena. Even if it is appropriate for this Court to consider Plaintiffs' "challenges on the merits notwithstanding the pendency of the Texas grand jury proceeding," *id*. at 8, that challenge should be brought against the actor that holds the authority to amend or withdraw the Grand Jury Subpoena, not the third party involuntarily subject to it—LPCH.

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

interest." (emphasis added)). The test highlights why challenges to the legality of the government's compelled disclosure and the constitutional harm it may pose, are more appropriately directed towards the party seeking the information and causing the alleged harm.

LPCH takes patient privacy seriously. The hospital and its compassionate, expert clinicians understand that patients who come to LPCH seeking GAC are minors in a vulnerable state who expect and deserve to be treated with care and discretion. With its patients' privacy front of mind, LPCH has endeavored diligently for the better part of a year to respond to the government's requests while safeguarding patient confidentiality. While both the HIPAA and grand jury subpoenas call for identifying information, LPCH has been negotiating to undertake detailed redactions,[7] at extraordinary financial expense, of the patient records commanded by the Grand Jury Subpoena. Schumacher Decl. ¶ 8. The DOJ is open to this proposal. *See* Schumacher Decl. at ¶ 8. Such efforts are intended to mitigate harm to the Plaintiffs.

Moreover, the governing law both allows for disclosure pursuant to a grand jury subpoena and provides protections of any redacted patient records produced. Plaintiffs acknowledge that HIPAA permits disclosure pursuant to a grand jury subpoena. Mem. Supp. at 11 (citing 45 C.F.R. 164.512(f)(1)(ii)(B)). And, the DOJ is obligated, with sharply-circumscribed exceptions, to "not disclose a matter occurring before the grand jury" under Fed. R. Crim. P. 6(e)(2)(B)(vi). Indeed, "[c]ourts applying Rule 6(e) consistently find that items requested by the grand jury through subpoena are presumptively protected from disclosure." *Kalbers v. United States Dep't of Justice*, 166 F.4th 783, 791 (9th Cir. 2026) (reversing district court and ruling that the vast majority of documents produced pursuant to a grand jury subpoena are shielded from a FOIA request).

---

[7] This Court and others in this Circuit have recognized redaction of personally-identifiable information from records before production to be "adequat[e] safeguard[s]" for the protection of third party privacy rights. *See, e.g., Conant v. McCoffey,* No. C 97-0139 FMS, 1998 WL 164946, at *4 (N.D. Cal. Mar. 16, 1998) (applying a balancing test and finding that "[a]lthough there is a significant privacy interest in medical information, the redaction will adequately safeguard the privacy rights of the non-plaintiff patients"); *Cooper v. Cty. of San Luis Obispo*, 350 F.R.D. 625, 634–35 (C.D. Cal. 2025) (explaining that courts use protective orders and redactions to protect third-party patients' privacy interests).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

14                                    Case No. 5:26-cv-04998-PCP
DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

### C.     Balance of Equities and Public Interest

Finally, the balance of equities and the public interest also weigh against an injunction. Plaintiffs' requested relief would cause a cascade of events that are likely to result in a direct conflict between this Court and the U.S. District Court for the Northern District of Texas. An injunction here would expose LPCH to substantial legal risk. It would also disrupt ongoing efforts to negotiate with the DOJ to protect patient privacy by producing anonymized records, effectively expediting the harm that Plaintiffs seek to avoid. And it would create a direct inter-court conflict that is best avoided.

LPCH faces concrete and significant harm if it is precluded from complying with the Grand Jury Subpoena. As Plaintiffs acknowledge, LPCH "retains no meaningful discretion to decline production." Compl. ¶ 57. Failure to comply could subject LPCH to civil contempt, including coercive sanctions and potential confinement, as well as criminal contempt, which may carry fines or imprisonment for LPCH officials. See 28 U.S.C. § 1826; Fed. R. Crim. P. 17(g) & 42. These risks are not speculative: the DOJ has indicated it will seek enforcement if LPCH fails to produce responsive materials by the June 10 return date. *See* Schumacher Decl. at ¶ 9. And, it is certainly not in the public interest to prompt immediate enforcement proceedings, potentially resulting in compelled disclosure of more intrusive information than is currently being negotiated.

Principles of federal comity also implicate the public interest here. Courts of coordinate jurisdiction should avoid interfering with the other's proceedings. *See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985); *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 749–50 (9th Cir. 1979). Enjoining compliance with a subpoena issued by another federal court would create precisely the type of inter-court conflict those principles are designed to prevent. *California ex rel. Lockyer v. U.S. Dep't of Agriculture,* 710 F.Supp.2d 916, 924 (N.D. Cal. 2008) (partially staying its injunction as to states outside the Ninth Circuit and New Mexico pending appeal "in the spirit of comity"); *United States v. AMC Entertainment, Inc.,* 549 F.3d 760, 773-74 (9th Cir. 2008) (principles of comity dictated that the district court's nationwide injunction had to exclude the Fifth Circuit because it had a different interpretation of the regulation at issue).

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067
TEL (310) 551-8111 • FAX (310) 551-0304

## IV.    CONCLUSION

Plaintiffs' action places LPCH in an impossible position. Rather than force LPCH to choose between potential competing judicial orders, this Court should decline to issue a TRO or a preliminary injunction, because the Plaintiffs have failed to demonstrate that they are entitled to this extraordinary relief.

DATED:  June 3, 2026                              HOOPER, LUNDY & BOOKMAN, P.C.


By:          /s/ Jordan Kearney
                  DAVID S. SCHUMACHER
                  ALICIA W. MACKLIN
                  JORDAN KEARNEY
                  KATRINA A. PAGONIS

Attorneys for Defendant Lucile Salter Packard
Children's Hospital at Stanford

16                                          Case No. 5:26-cv-04998-PCP

DEFENDANT'S RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE

10439166.6