# EXHIBIT B

**E**

**X**

**H**

**I**

**B**

**I**

**T**


**B**

.AO110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

# UNITED STATES DISTRICT COURT

## Northern District of Texas

TO:

Lucile Salter Packard Childrens Hospital at St

Attn: Custodian of Records

700 Welch Road
Suite 200
Palo Alto, CA 94304

**SUBPOENA TO TESTIFY
BEFORE GRAND JURY**

SUBPOENA FOR:

☐ PERSON        ☑ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| 501 W 10th St. Fort Worth, TX 76102-6882 | Grand Jury Room |
| | DATE AND TIME |
| | 6/10/2026          9:00 am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

PLEASE SEE ATTACHMENT

☐  *Please see additional information on reverse.*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | | DATE |
|---|---|---|
| *Karen Mitchell* (By) Deputy Clerk | | 5/6/2026 |

| This subpoena is issued on application of the United States of America | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY Ethan Womble Assistant United States Attorney 801 Cherry St., Suite 1700 Fort Worth, TX 76102-6882 (817) 252-5200 |
|---|---|

* If not applicable, enter "none".

Exh. B,
Page 2

AO110  (Rev. 12/89)  Subpoena to Testify Before Grand Jury

| RETURN OF SERVICE (1) | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |
| SERVED ON (PRINT NAME) | | |
| SERVED BY (PRINT NAME) | | TITLE |

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL 0.00 |

### DECLARATION OF SERVER (2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

ADDITIONAL INFORMATION

---

(1)   As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2)   "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

Exh. B,
Page 3

| Print | Save As... | |
|---|---|---|

**<u>ATTACHMENT A</u>**

**ATTACHMENT TO THE GRAND JURY SUBPOENA ISSUED TO**

Lucile Salter Packard Children's Hospital at Stanford
700 Welch Road
Suite 200
Palo Alto, CA 94304

## I. DEFINITIONS

1.   "You," "Your Company," and "the Company" means:

   a.   Lucile Salter Packard Children's Hospital at Stanford, a California nonprofit corporation, whose principal place of business is located at 700 Welch Road, Palo Alto, California, without regard to any name under which it has done business;

   b.   All of its predecessors, subsidiaries, affiliates, branches, divisions, groups, business units, business segments, operations, units, parent organizations, successors, assigns, plants, and any joint ventures of which they were or are a part, including, without limitation, the Pediatric and Adolescent Gender Clinic; and

   c.   Each of its present or former officers, directors, employees, attorneys, representatives, and agents acting or purporting to act or appearing to act on behalf of the Company, whether or not acting within the proper scope of his or her actual authority.

2.   "Employee" means any person including, but not limited to, any independent contractor or agent, all past and present directors, officers, agents, representatives, attorneys, accountants, advisors, and consultants who acted or purported to act on behalf of the Company or who have performed any service for the Company or under its name, whether on a full-time, part-time, piece-work, commission, volunteer, or other basis, and whether paid or unpaid.

3.   "Document" should be afforded the broadest possible meaning and includes every writing or record of whatever type or description, including but not limited to any electronically stored data or paper document, in the possession, custody, or control of the Company. This includes, but is not limited to:

   a.   All material that is handwritten, typed, printed, recorded, transcribed, taped, filmed, in graphic form, or in aural form;

   b.   Drawings, designs, manuals, memoranda, emails, reports, financial reports, notes, diaries, notations of any sort of conversations, working papers, letters, envelopes,

1

telegrams, messages, studies, analyses, books, articles, notebooks, booklets, circulars, bulletins, notices, instructions, pamphlets, pictures, films, videos, voice recordings, maps, work papers, arithmetical computations, calendars (including electronic calendars), date books, task lists, minutes, all communications of any type (e.g., e-mail, voice mail, text messaging, WhatsApp and similar applications), social media content (including posts, messages, comments, and metadata), audio and video files,

c.      Electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), including metadata;

d.      Any electronic files saved as a backup, including metadata;

e.      Any deleted but recoverable electronic files, including metadata;

f.      Any electronic file fragments (files that have been deleted and partially overwritten with new data), including metadata;

g.      Every copy of every document where such copy is not identical to the original because of any addition, deletion, alteration, or notation; and

h.      All attachments, enclosures, or other matter affixed to, transmitted with, or incorporated by reference within documents responsive to this Subpoena including, but not limited to, any pages showing who reviewed, approved, or rejected a particular document.

4.      "Relevant Time Period" means **January 1, 2020, through May 5, 2026**. All responsive documents that were prepared, dated, sent, received, altered, in effect, or which came into existence during this period are to be produced pursuant to this Subpoena.

5.      "Or" as well as "and" shall be construed interchangeably in a manner that gives this Subpoena the broadest possible meaning.

6.      "Any" shall be construed to include the word "all" and the term "all" shall be construed to include the word "any."

7.      "Relate to" means to make a statement about, refer to, discuss, describe, reflect, identify, deal with, consist of, or in any way pertain, in whole or in part to the subject.

8.      "Communication" means any transmission or exchange of information, statements, ideas, inquiries, or data between two or more persons orally, in writing, digitally, visually, or electronically regardless of the medium or platform used, including social media interactions, voicemails, and virtual meetings (e.g., Zoom, WebEx, Microsoft Teams). The term includes all drafts, versions, replies, responses, forwards, and attachments associated with or forming part of the communication, as well as any

records or logs reflecting the time, date, participants, and content of such communications.

9.      "Sex-Rejecting Procedures" means any medical, surgical, pharmaceutical, or clinical intervention provided to an individual under eighteen years of age that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's biological sex. These include, for example, puberty suppression, hormone administration, surgical intervention, voice modification interventions, or other medical or clinical services that are functionally integral to, preparatory for, or undertaken in furtherance of such interventions or procedures. An intervention or treatment is considered a Sex-Rejecting Procedure based on its intended purpose and expected physiological or functional effect, and not on the terminology or classification used by a health care provider or facility.

10.     "Puberty blockers" means any gonadotropin-releasing hormone ("GnRH") agonists or related drugs (*e.g.,* leuprolide, triptorelin) used to delay the onset of puberty.

11.     "Hormones" includes testosterone, estrogen, and any other hormonal drugs used in hormonal treatments sometimes known as "gender affirming hormone therapy" ("GAHT") or transgender hormone therapy used to induce cross-sex characteristics. This includes hormone-blocking drugs, such as spironolactone, used to suppress naturally-occurring hormones for the facilitation of GAHT.

12.     "Minor" means any patient under the age of 18 at the time of consultation, treatment, or prescription.

## II.  DOCUMENTS TO BE PRODUCED

For the Relevant Time Period, please provide in electronic format:

1.      Complete personnel files for each employee, contractor, or affiliate of the Company in the following categories:  (a) those who held authority to perform or order Sex-Rejecting Procedures; (b) those who conducted clinical evaluations related to Sex-Rejecting Procedures; (c) those who engaged in billing or coding activities related to Sex-Rejecting Procedures; and (d) any individual within such person's supervisory or reporting chain.

2.      All documents, including billing records, insurance claims, internal protocols, or guidance, concerning the use of ICD (*i.e.*, International Classification of Diseases) diagnosis codes in connection with the treatment of minor patients receiving Sex-Rejecting Procedures.

3.      All documents that show or relate to any use of diagnosis codes for minors undergoing Sex-Rejecting Procedures other than codes specifically identifying

3

transsexualism, gender dysphoria, gender incongruence, or gender identity disorder (*e.g.*, codes for endocrine disorder, unspecified hormonal disorders, vocal disorders, medication management, etc.).

4.     All documents reflecting communications among Company employees (including physicians, billing staff, and administrators), or between the Company and any third party, relating to whether or how to code or bill for Sex-Rejecting Procedures.

5.     All communications with public or private health care benefit programs or plans regarding the use of ICD codes for Sex-Rejecting Procedures, including any inquiries, denials, or appeals related to claims for such procedures or treatment.

6.     Any training materials, coding manuals, presentations, or communications relating to billing or coding practices for Sex-Rejecting Procedures.

7.     All documents relating to communications between You and any pharmaceutical manufacturer of puberty blockers or hormones, or any compounding pharmacy providing puberty blockers or hormones, relating to the use of such drugs in Sex-Rejecting Procedures for minors.

8.     All documents relating to communications between any pharmaceutical manufacturer of puberty blockers or hormones and any of the individuals identified in response to specification 1, *supra*, regardless of whether the document or communication is facially related to Sex-Rejecting Procedures for minors.

9.     All documents relating to communications with pharmaceutical sales representatives, marketing departments, or medical science liaisons regarding the use of puberty blockers or hormones for use in or associated with Sex-Rejecting Procedures or the treatment of gender dysphoria, including with regard to the safety and efficacy of such drugs for those uses.

10.    All documents, including presentations and promotional materials, received from pharmaceutical manufacturers or compounding pharmacies concerning uses of their products in minors for Sex-Rejecting Procedures or for the treatment of gender dysphoria, including so-called "scientific exchange" materials.

11.    All documents relating to contracts, sponsorships, speaking engagements, consulting agreements, grants, or financial or promotional arrangements between You and any manufacturer or compounder of puberty blockers or hormones.

12.    Documents sufficient to identify each patient who underwent Sex-Rejecting Procedures.

13.    For each such patient identified in Subpoena specification 12, *supra*, documents relating to the clinical indications, diagnoses, or assessments that formed the basis for providing Sex-Rejecting Procedures, including the prescribing of puberty blockers or hormones, and all documents relating to the Sex-Rejecting Procedures care provided

to each patient identified in Subpoena specification 12 from initial consultation to the most recent treatment provided.

14.    All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in Subpoena specification 12, *supra*, including any disclosures about off-label use (*i.e.,* uses not approved by the United States Food and Drug Administration) and potential risks of puberty blockers and/or hormones.

15.    All documents reflecting communications with pharmaceutical manufacturers, compounding pharmacies, or government agencies relating to the safety and effectiveness of Sex-Rejecting Procedures for treatment of gender dysphoria, including the use of puberty blockers or hormones.

16.    All documents relating to any adverse event, side effect, or medically unfavorable consequence or outcome in a minor patient with regard to Sex-Rejecting Procedures.

17.    All communications with the World Professional Association for Transgender Health ("WPATH") or any of its members relating to Sex-Rejecting Procedures, including but not limited to communications regarding the safety and efficacy or Sex-Rejecting Procedures, the Standards of Care 8, and billing guidance for Sex-Rejecting Procedures

## III. FORM OF PRODUCTION

We request materials responsive to the above be made available in electronic format. Please forward the documents directly to the individual listed below on or before the return date of this subpoena:

**Special Agent Bradley Cooper**
**FDA Office of Criminal Investigations**
**Kansas City Field Office**
**(913) 396-2129**
**bradley.cooper@fda.hhs.gov**

5

## HIPAA STATEMENT

The U.S. Department of Justice (the "DOJ") is familiar with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the regulations providing guidance in the application of that statute.

The DOJ has considered the predicate requirements of 45 C.F.R., § 164.512 (f)(1(ii)(C)(1)-(3) and represents that

- The information requested in this grand jury subpoena attachment is relevant and material to a legitimate law enforcement inquiry;
    - The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
    - De-identified information could not reasonably be used in its stead.

The documents and records requested in this grand jury subpoena attachment requires you to produce are sought by the DOJ in its capacity as a health oversight agency, and this information is necessary to further health oversight activities. *See* 45 C.F.R. §§ 164.512(d) and 164.501. The information sought is the minimum necessary to accomplish the intended purpose of the subpoena. *See* 45 C.F.R. § 164.502(b)(1).

## PRIVILEGE LOG

This grand jury subpoena is not intended to call for the production of any material that is subject to a valid claim of attorney-client or other privilege recognized by the federal courts of the United States. To the extent you or some other party may seek to assert a claim of privilege, work product protection, or other legal claim to preclude production of material called for in this subpoena, a privilege log must be produced. Such a privilege log shall set forth:

a.  each document by date, transmittal detail (if any);
b.  type of document;
c.  author(s) and location (e.g., name of company, firm etc.);
d.  recipient(s) and location (e.g., name of company, firm etc.);
e.  general subject matter;
f.  number of pages;
g.  paragraph of the subpoena to which the document is responsive;
h.  indicated or known circulation, including the names and titles of all persons to whom the document, or a copy thereof, or any part thereof, was shown; and
i.  the privilege asserted with respect to each such document in sufficient detail to facilitate a determination by a reviewing party or court to assess the validity of the claim of privilege.

Failure to produce such a log with sufficient detail to allow a reviewing party or court to assess whether such a claim is valid may result in waiver of any such claim.

**NOTICE REGARDING LIABILITY FOR OBSTRUCTION OF JUSTICE**

- **18 U.S.C. § 1001 in relevant part provides –**

  (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
  > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
  > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
  > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

  shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

- **18 U.S.C. § 1503 in relevant part provides –**

  (a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

- **18 U.S.C. § 1512 in relevant part provides –**

  (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

7

(1) influence, delay, or prevent the testimony of any person in an official proceeding;
    (2) cause or induce any person to—
        (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
        (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
        (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
        (D) be absent from an official proceeding to which such person has been summoned by legal process; or
    (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

(c) Whoever corruptly—
    (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
    (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than 20 years, or both.

(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—
    (1) attending or testifying in an official proceeding;
    (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;
    (3) arresting or seeking the arrest of another person in connection with a Federal offense; or
    (4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;
or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

. . .

(k) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

8

- **18 U.S.C. § 1519 provides –**

  Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

- **18 U.S.C. § 1623(a) in relevant part provides –**

  (a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.

9

Exh. B,
Page 12

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

Pursuant to Federal Rules of Evidence 803(6) and 902(11) regarding certified domestic records of regularly conducted activity, I hereby certify:

1.  I am employed by _____ ("the Business") and my official title is _____. I am a person designated by the Business as a custodian of records with the authority to make this certificate.

2.  I state that each of the records attached hereto is the original record, or a true duplicate of the original record, in the custody of the Business, and that I am the custodian of the attached records, consisting of _____ total pages.

3.  I further certify that all records attached to this certificate were made at or near the time of the occurrence of the matters set forth, by or from information transmitted by, a person with knowledge of those matters.

4.  I further certify that that all records attached to this certificate were kept in the course of the regularly conducted activity of the Business.

5.  I further certify that it is the regular practice of the Business to make and retain each record attached to this certificate.

6.  I further state that this certificate is intended to satisfy the requirements of Rule 902(11) of the FEDERAL RULES OF EVIDENCE.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: _____        _____
                                                               Signature

                                                               _____
                                                               Print Name