SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street #11548
Sacramento, California  94102
Telephone: (415) 392-6257
Email:      sminter@nclrights.org
              cstoll@nclrights.org
              awhelan@nclrights.org
              rberg@nclrights.org

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       ggrunfeld@rbgg.com
               kjanssen@rbgg.com

JOSHUA ROVENGER*
DONOVAN BENDANA*
GLBTQ LEGAL ADVOCATES & DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts  02108
Telephone: (617) 426-1350
Email:      jrovenger@gladlaw.org
              dbendana@gladlaw.org

ABBE DAVID LOWELL*
CALEB HAYES-DEATS*
SCHUYLER STANDLEY*
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
Facsimile:  (202) 964-6116
Email: ALowellpublicoutreach@lowellandassociates.com
         CHayes-Deats@lowellandassociates.com
         Sstandley@lowerllandassociates.com

*motion for admission *pro hac vice* granted

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A.; Z.B., a minor, by and through their parent, B.B.; Z.C., a minor, by and through their parent, C.C.; Z.D., a minor, by and through their parent, D.D.; Z.E., a minor, by and through their parent, E.E.; and F.F.,<br><br>        Plaintiffs,<br><br>   v.<br><br>LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, a California nonprofit public benefit corporation,<br><br>        Defendant. | Case No. 5:26-cv-04998<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Judge:   Hon. P. Casey Pitts<br>Date:    June 5, 2026<br>Time:    10:00 am<br>Crtrm.:  8, 4th Floor<br><br>Trial Date:  None Set |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.      STANFORD ACQUIESCED IN THE SUBPOENA'S IMPROPER PURPOSE .................2

II.     PLAINTIFFS WILL LIKELY SUCCEED ON THEIR CLAIM THAT
        DISCLOSURE BY STANFORD WILL VIOLATE THEIR RIGHT OF
        INFORMATIONAL PRIVACY ...............................................................................4

        A.      Stanford's Coerced Disclosures Will Constitute State Action ...................5

        B.      This Court is the Proper Venue. ...................................................................8

III.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A
        TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION .............8

IV.     THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN
        ORDER PRESERVING PLAINTIFFS' PRIVACY RIGHTS ...........................................11

CONCLUSION .................................................................................................................14

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abordo v. Mobi PCS*,
684 F. App'x 631 (9th Cir. 2017)...................................................................................... 7

*Abordo v. Mobi PCS*,
No. 1:15-cv-00279, Dkt. No. 33 (N.D. Cal. Feb. 25, 2016)................................................ 7

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ............................................................................................................. 5

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
827 F.2d 1291 (9th Cir. 1987)................................................................................... 5, 6, 7

*Church of Scientology of Cal. v. U.S. Dep't of Def.*,
611 F.2d 738 (9th Cir. 1979).............................................................................................. 12

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ........................................................................................................... 12

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ........................................................................................................... 10

*In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*,
2026 WL 1392565 (D.R.I. May 14, 2026)................................................................... 11, 13

*In re Admin. Subpoena 25-1431-032*,
No. 4:26-mc-00006-O (N.D. Tex. May 18, 2026) ............................................................. 13

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
No. MC 26-12 (JEB), 2026 WL 710202 (D.D.C. Mar. 13, 2026) ...................................... 2

*In re Horn*,
976 F.2d 1314 (9th Cir. 1992)............................................................................................. 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................................. 9

*In re Subpoena Duces Tecum No. 25-1431-016*,
No. 2:25-MC-00041-JHC, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025).................... 2, 7

*In re Subpoena No. 25-1431-014*,
810 F. Supp. 3d 555 (E.D. Pa. 2025) ...................................................................... 9, 10, 12

*In Re: Subpoena No. 25-1431-014*,
No. 26-01134 (3rd Cir. May 6, 2026) ................................................................................ 12

*Kalbers v. United States Dep't of Justice*,
166 F.4th 783 (9th Cir. 2026)............................................................................................ 10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

*Khalil v. Trs. of Columbia Univ. in City of New York*,
No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. Mar. 19, 2026) .............................................. 6

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ................................................................................. 12

*Massachusetts v. Trump*,
No. 25-cv-12162, 2026 WL 1584837 (D. Mass. June 3, 2026) .............................................. 6

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ................................................................................. 8, 14

*New York Times Co. v. Gonzales*,
459 F.3d 160 (2d Cir. 2006) ................................................................................. 8

*Nw. Mem'l Hosp. v. Ashcroft*,
362 F.3d 923 (7th Cir. 2004) ................................................................................. 10, 14

*Planned Parenthood Fed'n of Am., Inc. v. Ashcroft*,
No. 03-cv-4872 PJH, 2004 WL 432222 (N.D. Cal. Mar. 5, 2004) ...................................... 9

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
807 F. Supp. 3d 1295 (W.D. Wash. 2025) ................................................. 2, 3, 5, 7

*Sammartano v. First Jud. Dist. Ct.*,
303 F.3d 959 (9th Cir. 2002) ................................................................................. 14

*Serv. Women's Action Network v. Mattis*,
320 F. Supp. 3d 1082 (N.D. Cal. 2018) ................................................................ 8

*Smith v. United States*,
599 U.S. 236 (2023) ................................................................................. 3

*Sutton v. Providence St. Joseph Med. Ctr*,
192 F.3d 826 (9th Cir. 1999) ................................................................................. 6, 7

*Tucson Woman's Clinic v. Eden*,
379 F.3d 531 (9th Cir. 2004) ................................................................................. 10, 14

*United States v. Comey*,
809 F. Supp. 3d 396 (E.D. Va. 2025) ................................................................ 11

*United States v. Powell*,
379 U.S. 48 (1964) ................................................................................. 2

*United States v. Star*,
470 F.2d 1214 (9th Cir. 1972) ................................................................................. 2

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ................................................................................. 11

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ................................................................................. 14

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

## CONSTITUTIONS

U.S. Const. amend. VI...........................................................................................................3

U.S. Const. art. III ...............................................................................................................3


## STATUTES

28 U.S.C. § 1391 .................................................................................................................8


## OTHER AUTHORITIES

*Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic*, Department of Justice (May 15, 2026)...................5

Lindsey Dawson & Scott Hulver, *New Trump Administration Proposals Would Further Limit Gender Affirming Care for Young People by Restricting Providers and Reducing Coverage*, KFF (Dec. 22, 2025).............................................................6

*Memorandum for Select Component Heads: Preventing the Mutilation of American Children*, U.S. Off. of the Att'y Gen. 3, 5, (Apr. 22, 2025)...................................9


## RULES

9th Cir. R. 36-3..................................................................................................................7

Fed. R. Crim. P. 6............................................................................................................11


## REGULATIONS

45 C.F.R. § 164.502 ......................................................................................................4, 7


## MISCELLANEOUS

Benjamin S. Weiss, *DOJ may have disclosed secret grand jury material to Congress, violated judicial gag order in Trump classified documents case*, Courthouse News Service (March 25, 2026)................................................................................11

Sara Tenenbaum & Todd Feurer, *All charges dismissed against "Broadview Six," defense says grand jury transcript revealed "gross misconduct,"* CBS News (May 22, 2026).....................................................................................................................11

**INTRODUCTION**

Facing an unprecedented intrusion into their personal medical information in response to an invalid grand jury subpoena, Plaintiffs sought a temporary restraining order and preliminary injunction enjoining Defendant Lucile Salter Packard Children's Hospital at Stanford ("Stanford") from disclosing their private medical records to federal officials.

Stanford's response is extraordinary. It does not dispute that compliance with the grand jury subpoena served by the Department of Justice ("DOJ") will violate Plaintiffs' constitutional rights. It does not deny that the Health Insurance Portability and Accountability Act ("HIPAA") requires it to protect Plaintiffs' privacy. It does not dispute that every court to consider the issue on the merits has concluded that DOJ's improper purpose renders substantively identical administrative subpoenas invalid. To the contrary, it pointedly "does not concede" that the subpoenas it received are "legitimate or proper." ECF 31 at 2 n.1. And yet, faced with improper subpoenas that violate Plaintiffs' constitutional rights, Stanford never notified Plaintiffs. It never asserted defenses it apparently believes are meritorious. Instead, it negotiated for nine months to render DOJ "open" to the possibility of accepting redacted records, at least in the "first instance," although no agreement has been reached and DOJ reserves its right to seek "unmasked patient records." *Id.* at 5, 14. That is little comfort to parents of patients whose care DOJ has described as child abuse.

Stanford's arguments against a temporary restraining order fail. Stanford contends that it is the "wrong defendant." But having cooperated with DOJ for nearly a year, without informing Plaintiffs or raising defenses that have consistently prevailed, Stanford can hardly dispute that it is a joint participant in any resulting disclosure. Nor can Stanford contend that its ongoing negotiations better protect Plaintiffs from irreparable harm than a court order declaring their constitutional rights, particularly when Stanford's negotiations have produced so little after so long. Finally, the Court should not accept Stanford's speculation about the possibility of conflicting court orders. No court has held that the mere possibility of a conflict prevents it from protecting the constitutional rights of parties before it. And recent history in the administrative subpoena context provides examples of how courts have navigated the complex, interjurisdictional

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

issues this case presents.

At a minimum, this Court should temporarily restrain Stanford to maintain the *status quo* while these issues develop.  Plaintiffs have shown that production in response to an improper grand jury subpoena threatens to violate their constitutional rights and cause them irreparable harm.  The release of Plaintiffs' information occurs in an instant and can never be repaired.  The Court can, and should, prevent it until it is satisfied that no constitutional violations will result.

**ARGUMENT**

**I.     STANFORD ACQUIESCED IN THE SUBPOENA'S IMPROPER PURPOSE**

Stanford portrays itself as a "*victim*" with no choice, and no obligation, other than to produce Plaintiffs' documents.  ECF 31.  But that is far from the case.  When the government issued over 20 HIPAA subpoenas seeking a "staggering amount of personal health data" concerning transgender patients, hospitals other than Stanford challenged those subpoenas.  *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303-04 (W.D. Wash. 2025); *see* ECF 3-2 at 3-4 (collecting cases).  Court after court found the Department of Justice ("DOJ") had the "improper purpose" of seeking to "end the very practice it claims to be merely investigating."  *QueerDoc*, 807 F. Supp. 3d at 1303-04.  Stanford's HIPAA subpoena was "virtually-identical" to those courts quashed.  ECF 31 at 3.  But for months after courts recognized DOJ's "improper purpose," *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-MC-00041-JHC, 2025 WL 3562151, at *13 (W.D. Wash. Sept. 3, 2025), Stanford continued its "comprehensive search for responsive information and produced records," ECF 31-1 ("Schumacher Decl.") ¶ 3.

When the government "out of the blue" withdrew the HIPAA subpoena and served a "substantially similar" grand jury subpoena, Stanford could have moved to quash.  ECF 31 at 9.  A "unanimous chorus" of courts of appeals, including the Ninth Circuit, "agrees that courts may quash [grand jury] subpoenas that the Government issued for an improper purpose."  *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, No. MC 26-12 (JEB), 2026 WL 710202, at *5 (D.D.C. Mar. 13, 2026) (citing *United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972)); *see United States v. Powell*, 379 U.S. 48, 58 (1964) (summons issued for "improper purpose, such as to harass," is an "abuse").  The government's tactical shift changed the type of process, but not the

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

subpoenas' purpose.

The government's improper purpose appears on the face of the grand jury subpoena (to say nothing of the context in which these subpoenas were issued, as documented in Plaintiffs' motion). The subpoena demands "[d]ocuments sufficient to identify each patient who underwent Sex-Rejecting Procedures," the patients' "clinical indications, diagnoses, or assessments that formed the basis for providing Sex-Rejecting Procedures," and their "informed consent, patient intake, and parent or guardian authorization." ECF 31-2 at 7-8. Each Plaintiff has unique circumstances and received care tailored to their differences. It is impossible that every Plaintiff's file—much less every single Stanford patient's file—has information relevant to some crime the government is investigating.[1] The government's unwillingness to limit its request for patient information is powerful evidence that it seeks to harass patients and "end" their participation in care "it claims to be merely investigating." *QueerDoc*, 807 F. Supp. 3d at 1303.

The government also lacks any proper purpose for launching an investigation *in Texas* of crimes that supposedly occurred in Palo Alto. Article III requires that any criminal trial "shall be held in the state where the said crimes shall have been committed." U.S. Const. art. III. The Sixth Amendment guarantees an "impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Constitution twice enshrines the right to trial in the State where a supposed crime occurred because the Founders "forcefully objected" to England's efforts to "circumvent local trials before colonial juries" in favor of "trials in England before loyalist juries." *Smith v. United States*, 599 U.S. 236, 246-47 (2023). It is unthinkable that every Stanford patient receiving transgender healthcare could have evidence related to a crime that occurred *in Texas*. Plaintiffs sought and received care in California. They are unaware of any potential connection between their care and the Northern District of Texas. Some have never even *been* to Texas. The government is doing precisely what the Constitution prohibits, attempting to "circumvent" local courts in favor of a forum it regards as favorable. *See Smith*, 599 U.S. at 246-

---

[1] The government's refusal to impose any limitation on the subpoena, even after similar requests have been repeatedly held invalid, is even further evidence that it targets the very practice of transgender healthcare, not some suspected crime.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

47. That effort underscores its improper purpose.

Faced with clear evidence of the government's improper purpose, Stanford acquiesced in it. It did not have to. Stanford has an obligation under HIPAA not to disclose Protected Health Information ("PHI") without patient authorization or an appropriate exception. 45 C.F.R. § 164.502(a). It specifically "does not concede that the Grand Jury Subpoena is legitimate or proper." ECF 31 at 2 n.1. That reservation calls into question whether Stanford has *any* obligation to produce records and *any* ability to skirt HIPAA's clear command. An "invalid" grand jury subpoena "may not be used for any purpose," *In re Horn*, 976 F.2d 1314, 1319 (9th Cir. 1992), including to establish an exception to HIPAA. Stanford thus has an obligation to protect Plaintiffs—whom it admits are in a "vulnerable state" and relied on Stanford to be "treated with care and discretion," ECF 31 at 1, 14—and disputes it has any obligation under the subpoena that it characterizes as "substantially similar" to subpoenas that courts have repeatedly held invalid and improper, *id.* at 4. Notwithstanding its HIPAA obligations, the adjudicated impropriety of the government's demands, or its professed "sympathy" for Plaintiffs, Stanford has determined that the best it can do is to produce "anonymized patient records in the first instance," with no assurance that DOJ will not demand "unmasked records," particularly since DOJ has previously changed its demands "out of the blue." Schumacher Decl. ¶¶ 6, 8. Stanford's obligations to Plaintiffs are not so easily compromised. It is precisely that acquiescence in DOJ's improper purpose that Plaintiffs seek to enjoin.

## II. PLAINTIFFS WILL LIKELY SUCCEED ON THEIR CLAIM THAT DISCLOSURE BY STANFORD WILL VIOLATE THEIR RIGHT OF INFORMATIONAL PRIVACY

Stanford does not dispute that Plaintiffs have standing or that its compliance with the subpoena will violate their Fifth Amendment right to informational privacy. Its analysis of likelihood of success focuses entirely on whether Plaintiffs can sue Stanford for that violation in California. ECF 31 at 7-12. But Stanford admits that, when the government uses "threats" to induce private actors to join in improper action, those private actors can be enjoined no less than the government. *Id.* at 10. And this District is the proper forum for asserting Plaintiffs' rights. Plaintiffs live here. They sought and received care here. The records at issue are here. And the

impending disclosure they seek to enjoin would occur here.

### A.     Stanford's Coerced Disclosures Will Constitute State Action

Plaintiffs' opening brief explained that government coercion of a private party transforms private actions into state actions where government officials have "exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); ECF 3-2 at 10-12. *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987), makes that clear. There, a deputy state attorney "threatened to prosecute" a telephone company if it did not "terminate" Carlin's phone service. *Id.* at 1295. That "threat of prosecution provided the requisite 'nexus' between the state and the challenged action," and made the telephone company liable for its unconstitutional state action. *Id.*

The same is true here. The government has demanded that Stanford furnish a "staggering amount of personal health data" concerning its transgender patients, *QueerDoc*, 807 F. Supp. 3d at 1303-04, a production that Stanford does not dispute will violate Plaintiffs' Fifth Amendment right to informational privacy. And DOJ has used threats to induce Stanford's compliance. When DOJ believed Stanford had not produced sufficient records after nine months of cooperation, it "out of the blue" served a grand jury subpoena with a "**NOTICE OF LIABILITY FOR OBSTRUCTION OF JUSTICE**." Schumacher Decl. ¶¶ 3-6; ECF 31-2 at 10-11. Stanford agrees that subpoena is a threat of prosecution. ECF 31 at 15 (citing risk of "fines or imprisonment for LPCH officials"). When Plaintiffs filed this suit, DOJ again threatened Stanford, stating it would "immediately move to compel" if Stanford failed to defeat an injunction. Schumacher Decl. ¶ 9. And these specific threats occurred in the context of more general threats, such as DOJ's continued public threats to "use every weapon at its disposal to end the destructive and discredited practice of so-called 'gender-affirming care' for children," *Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic*, Department of Justice (May 15, 2026), https://perma.cc/52UQ-RRWS, and the government's ongoing effort suspend federal funding for entities that engage in transgender healthcare, such as proposing a prohibition on entities that provide transgender healthcare for

youth from participating in Medicare and Medicaid.  *See* Lindsey Dawson & Scott Hulver, *New Trump Administration Proposals Would Further Limit Gender Affirming Care for Young People by Restricting Providers and Reducing Coverage*, KFF (Dec. 22, 2025), https://perma.cc/4NQP-Q6DF.  Such threats have an obvious impact on institutions like Stanford.

Stanford attempts to distinguish *Carlin* on two grounds, both of which lack merit.  First, it argues that *Carlin* applies only to public utilities.  ECF 31 at 10.  But *Carlin* expressly declined to find "state action simply because of the phone company's public utility status"—in fact, it did not consider the defendant's public utility status at all.  *Carlin*, 827 F.2d at 1295.  While *Sutton v. Providence St. Joseph Med. Ctr*, 192 F.3d 826, 843 (9th Cir. 1999), briefly mentioned that *Carlin* involved a "utility," it held the "[m]ore important[]" consideration was whether the "government directed a specific entity to take a specific (allegedly unconstitutional) action against a specific person."  That is precisely what happened here.  The government directed Stanford to violate the informational privacy rights of an identified group of people the government disfavors.  Even if the defendant's "utility" status had mattered to *Carlin*, healthcare is no less important than telephone service.  *See Massachusetts v. Trump*, No. 25-cv-12162, 2026 WL 1584837, at *3 (D. Mass. June 3, 2026) (transgender healthcare deemed "medically necessary" in California).  Stanford and the government's joint conduct threatens Plaintiffs' ability to obtain care anywhere, because any other doctor Plaintiffs see could receive a grand jury subpoena tomorrow.

Second, Stanford contends that this case involves only "generally applicable laws (or customs)," again relying on *Sutton*.  ECF 31 at 10 (quoting *Sutton*, 192 F.3d at 843).  But in *Sutton*, the "generally applicable" law was a federal statute: the plaintiff asserted that his employer's compliance with federal laws requiring employees to provide social security numbers discriminated against his deeply held religious beliefs.  192 F.3d at 829-30.  That holding has no application here, where the government directed specific action against specific people, as *Sutton* itself recognized.  *Id.* at 843; *see Khalil v. Trs. of Columbia Univ. in City of New York*, No. 25-cv-2079 (AS), 2026 WL 775813, at *14 (S.D.N.Y. Mar. 19, 2026) (distinguishing *Sutton* on these grounds).  The government did not enact a statute requiring all hospitals to furnish it information about transgender healthcare.  To the contrary, HIPAA requires hospitals *not* to disclose such

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

information.  45 C.F.R. § 164.502(a).  Stanford claims an *exception* to that generally applicable prohibition because DOJ has served a grand jury subpoena.  ECF 31 at 14.  But that same subpoena directs a "specific entity to take a specific (allegedly unconstitutional) action against a specific person."  *Sutton*, 192 F.3d at 843.[2]  Such "'particularized state participation,' . . . is fairly attributable to the state."  *Id.* (quoting *Carlin*, 827 F.2d at 1295).

Stanford insists that *Sutton* requires proof of "something more."  ECF 31 at 10-11.  But that "something more" can "vary with the circumstances of the case," and is frequently satisfied by a showing of a private entity's "joint activity" with the government.  *Sutton*, 192 F.3d at 836, 839.  Stanford's own declaration shows that it is no mere passive subpoena recipient.  Stanford has been "negotiating" with the government since "July 2025"—almost a year—over the "extremely complicated" question of what from Plaintiffs' personal healthcare records should be produced.  Schumacher Decl. ¶¶ 2-8.  It did so without notifying Plaintiffs that their information had been subpoenaed, and without ever raising a defense that has prevailed before *every* court to consider it on the merits—a defense Stanford seeks to preserve even as it allows it to languish.  *See*, p 1. *supra*.[3]  Stanford cannot cooperate with the government for nearly a year to make decisions of critical importance to Plaintiffs, without their input, and then turn around and deny that it is a "*willful participant[] in joint activity* with the State."  *Sutton*, 192 F.3d at 839.  Nor can it disclaim responsibility for intrusion on Plaintiffs' privacy rights that will result from its cooperation with a plainly illegal subpoena.  It is that willful participation in DOJ's violation of Plaintiffs' privacy rights—resulting from Stanford's individual interests and the threats against it—that Plaintiffs

---

[2] Stanford cites *Abordo v. Mobi PCS*, a non-precedential case involving a pro se plaintiff, for the proposition that a subpoena is a generally applicable law.  ECF 31 at 8 (citing 684 F. App'x 631, 632 (9th Cir. 2017)).  But *Abordo* is "not precedent" and does not bind this Court.  684 F. App'x at 632; 9th Cir. R. 36-3(a).  Even if it were, it is easily distinguished.  *Abordo* did not "allege any material facts showing that Defendants, in responding to the OCP's subpoenas, violated any of his rights or acted under color of state law."  *Abordo v. Mobi PCS*, No. 1:15-cv-00279, Dkt. No. 33 at *13 (N.D. Cal. Feb. 25, 2016).  Stanford cannot portray compliance with the subpoena it received as "generally applicable" when other, similarly situated hospitals in this Circuit have successfully resisted compliance with identical subpoenas based on the exact constitutional concerns Plaintiffs assert.  E.g., *QueerDoc*, 807 F. Supp. 3d at 1303-04; *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *13.

[3] Stanford cites an adverse decision from the Northern District of Texas, but admits that decision issued "before the hospital had an opportunity to respond."  ECF 31 at 4; Schumacher Decl. ¶ 5.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

seek to enjoin.

**B.    This Court is the Proper Venue.**

Plaintiffs properly filed suit in this Court.  Under 28 U.S.C. § 1391, which governs "venue of all civil actions," suit should be brought where the "defendant resides" or where a "substantial part of the events or omissions giving rise to the claim occurred."  There is no dispute that Stanford has its principal place of operations in this District.  ECF 1 ¶ 19.  This is where Plaintiffs reside, where they sought care, and where their healthcare records were created, accessed, and currently remain.  That renders this District the appropriate venue.  28 U.S.C. § 1391.  Moreover, when "addressing constitutional claims, courts have indeed looked to the place of injury in assessing venue."  *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018).

Stanford urges that a motion to quash a subpoena under Federal Rule of Criminal Procedure 17 "should be filed in the same court that supervises the grand jury."  ECF 31 at 12. But this is *not* a motion to quash under Rule 17.  It is an equitable suit seeking to enjoin Stanford from cooperating in DOJ's ongoing violation of Plaintiffs' constitutional rights.  Stanford cannot change § 1391's straightforward application by recharacterizing this suit as a procedural mechanism Stanford would have preferred.

If any further proof were necessary, *New York Times Co. v. Gonzales* provides it. 459 F.3d 160 (2d Cir. 2006).  There, the *New York Times* sued in New York to challenge subpoenas issued by a "federal grand jury in Chicago."  *Id.* at 163.  The Second Circuit held that the mere possibility of a motion to quash under Rule 17 in Chicago did not preclude a declaratory judgment action asserting the *Times*' particular interests in New York.  *Id.* at 166.  The Court should reach the same conclusion here.

**III.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Stanford does not dispute that "deprivation" of Plaintiffs' "constitutional rights constitutes irreparable harm."  ECF 31 at 13 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). That principle applies with special force where, as here, the constitutional right at issue is the right

to privacy in highly personal information, because information, once disclosed, cannot be made secret again. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022) (ongoing disclosure of medical information "is precisely the kind of intangible injury that cannot be remedied by damages."); *see Planned Parenthood Fed'n of Am., Inc. v. Ashcroft*, No. 03-cv-4872 PJH, 2004 WL 432222, at *2-3 (N.D. Cal. Mar. 5, 2004) (granting protection against disclosure of patient records responsive to federal subpoena). Once Stanford produces the records, Plaintiffs' Fifth Amendment privacy interest will have been extinguished, and no remedy can change that Plaintiffs' identities and medical histories will have been disclosed to prosecutors who have been directed to investigate and prosecute the care they received as abuse. *See Memorandum for Select Component Heads: Preventing the Mutilation of American Children*, U.S. Off. of the Att'y Gen. 3, 5, (Apr. 22, 2025), https://perma.cc/T4FN-6W5R.

Stanford agrees that "patient privacy" must be taken "seriously," especially for the "vulnerable" group of minors at issue. ECF 31 at 14. But the proposal it offers is not serious. After working "diligently for the better part of a year," Stanford can promise only that DOJ is "open" to a "proposal" where it accepts "anonymized patient records in the first instance," while reserving the right to compel "unmasked records" later. *Id.*; Schumacher Decl. ¶ 8. It is cold comfort to parents being accused of abuse that DOJ might not learn their identities in the "first instance." And there is every reason to believe that DOJ will not accept anonymized records at all. The subpoena demands documents "sufficient to identify each patient." ECF 31-2 at 7. There is no such thing as "anonymized" documents "sufficient to identify." Moreover, the subpoena's HIPAA statement explicitly states that "[d]e-identified information could not reasonably be used" in place of the information sought. *Id.* at 9. There is every reason to take DOJ at its word. DOJ's conduct throughout this subpoena campaign strongly suggests that it will not stop at de-identified records unless this Court orders relief barring Stanford from producing them.[4] Plaintiffs should not

---

4 *See In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 603 (E.D. Pa. 2025) ("The Department of Justice offers nothing to mitigate a concern for these children and their families given [its public] pronouncements. And we do not find a basis to risk harm absent concrete assurances from the Department of protections and penalties for those who disclose this information without authorization, and who might share the Attorney General's condemnation of these patients.").

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

be forced to rely on Stanford's informal, non-final, non-binding negotiations with the very officials that have repeatedly sought their identities and adopted new strategies to avoid judicial oversight to obtain that information when their original plans failed.

Moreover, even if Stanford and DOJ had actually reached a binding agreement for redaction or de-identification, it would not cure the imminent injury.  Courts have recognized that redacted medical records can still expose patient identities and chill access to care.  *See, e.g.*, *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929-30 (7th Cir. 2004) (rejecting compelled disclosure of redacted abortion records where reidentification remained possible and disclosure could chill care); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 599-601 (E.D. Pa. 2025) (finding redaction inadequate to protect transgender minors' privacy given the intimate and identifying details contained in medical records).  Stanford agrees that anonymizing patient records "would be extremely complicated."  Myriad pieces of information—appointment dates, medical conditions, biometric data such as height and weight, prescriptions—could identify Plaintiffs when combined with information from other sources.  Plaintiffs have no insight into what Stanford believes it can disclose without revealing their identities, or whether Stanford is correct.  They have not been consulted at all.  That leaves Plaintiffs with no assurance that Stanford's efforts to secure a redacted production, even if successful, will address the threat of impending, irreparable constitutional injury they face.

Stanford next argues that records produced under a grand jury subpoena are "presumptively protected from disclosure."  ECF 31 at 14 (quoting *Kalbers v. United States Dep't of Justice*, 166 F.4th 783, 791 (9th Cir. 2026)).  But Plaintiffs are harmed by disclosure of their information *to* DOJ, not just further disclosure of their information *by* DOJ.  *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551-55 (9th Cir. 2004) (applying constitutional privacy protections to *government access* of medical records), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).  DOJ attorneys have been directed to investigate transgender healthcare as a form of abuse.  Plaintiffs' opening brief explained that Federal Rule of Criminal Procedure 6(e) permits broad disclosures to government attorneys, including State attorneys, for whatever purposes they "consider necessary to assist" with federal law enforcement.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

ECF 3-2 at 17-18 (quoting Fed. R. Crim. P. 6(e)(3)).  Stanford does not respond.  It never explains why, in these circumstances, such exceptions to secrecy should be deemed "sharply-circumscribed."  ECF 31 at 14.  Regardless, even if grand jury secrecy would ordinarily provide some reassurance, DOJ has recently shown no reluctance to abuse the grand jury process.  *See United States v. Comey*, 809 F. Supp. 3d 396, 414 (E.D. Va. 2025) (ordering release of grand jury materials after "a disturbing pattern of profound investigative missteps . . . that led an FBI agent and a prosecutor to potentially undermine the integrity of the grand jury proceeding"); Sara Tenenbaum & Todd Feurer, *All charges dismissed against "Broadview Six," defense says grand jury transcript revealed "gross misconduct,"* CBS News (May 22, 2026), https://perma.cc/4JPF-TM6D (prosecutors dismissed charges after the revelation of myriad abuses of the grand jury system, including "improper prosecutorial communications of a substantive nature with the grand jurors outside of the grand jury room"); Benjamin S. Weiss, *DOJ may have disclosed secret grand jury material to Congress, violated judicial gag order in Trump classified documents case*, Courthouse News Service (March 25, 2026), https://perma.cc/9N69-BNKD (reporting that, on March 13, 2026, DOJ produced information to the House Committee on the Judiciary that contained grand jury material); *see also In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 2026 WL 1392565, at *10 (D.R.I. May 14, 2026) ("[T]he discrepancy between the honorable conduct expected of federal prosecutors and DOJ's tactics in this case is unsettling.").

## IV.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN ORDER PRESERVING PLAINTIFFS' PRIVACY RIGHTS

A TRO is necessary to maintain the status quo while the Court considers Plaintiffs' claims on a full record.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (purpose of preliminary relief is to preserve the parties' positions pending adjudication on the merits).  Plaintiffs' interest in protecting their constitutional rights far outweighs any interest Stanford may have in producing Plaintiffs' information on the return date.  Stanford's contrary arguments rely on a chain of inferences that is divorced from the record before the Court and recent history.

Stanford purports to identify two harms it will suffer from any TRO.  First, it urges that a TRO will "disrupt ongoing efforts to negotiate with DOJ," cause DOJ to seek enforcement of the

grand jury subpoena, and lead to "compelled disclosure of more intrusive information than is currently being negotiated," "effectively expediting the harm that Plaintiffs seek to avoid." ECF 31 at 15. But there is no reason to believe that an order from this Court declaring that disclosure of Plaintiffs' PHI to DOJ would likely violate constitutional rights would "expedit[e]" such a disclosure. DOJ might not follow through on its threat to seek enforcement. Schumacher Decl. ¶ 9. It has dismissed its appeal from another court's order finding its subpoenas had an improper purpose. *In Re: Subpoena No. 25-1431-014*, No. 26-01134, ECF 24 (3rd Cir. May 6, 2026), *withdrawing appeal from In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555 (E.D. Pa. 2025). Even if DOJ sought enforcement, there is no guarantee that Stanford's "ongoing efforts to negotiate" would have prevented that result. *See* p. 1, *supra*. If anything, an order from this Court barring production renders production less likely, because it would provide Stanford with an additional defense in any enforcement proceeding. A denial of relief, in contrast, might embolden DOJ to seek enforcement in Texas and invite arguments that challenges had already been rejected.

Second, Stanford argues that a TRO would "create a direct inter-court conflict," implicating principles of "federal comity." ECF 31 at 15. But comity concerns point in the opposite direction. Comity is implicated only when "two actions involving overlapping issues and parties are pending in two federal courts," in which case courts apply a "strong presumption" in favor of the first-filed forum. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citing *Church of Scientology of Cal. v. U.S. Dep't of Def.*, 611 F.2d 738, 750 (9th Cir. 1979)). That presumption favors proceeding here. This is the first case concerning Stanford's obligation to protect Plaintiffs' privacy rights, and this Court has a "virtually unflagging obligation" to exercise its jurisdiction to resolve Plaintiffs' constitutional concerns. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The grand jury subpoena, though issued "under the seal of the U.S. District Court for the Northern District of Texas," ECF 31 at 7, was not considered or approved by any judge. If DOJ subsequently seeks enforcement in the Northern District of Texas, comity concerns would favor deference to this proceeding as the first filed absent "compelling circumstances." *Manuel*, 430 F.3d at 1135. Speculation about what DOJ or the Northern District of Texas may do in such a case is not a basis to deny Plaintiffs the only

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

relief that can preserve their constitutional privacy before it is irreversibly lost.

The recent proceedings regarding the substantively identical administrative subpoena issued to Rhode Island Hospital confirm that courts can protect patients' privacy interests while respecting another court's authority.  There, DOJ had already obtained an enforcement order from the Northern District of Texas before the state's Child Advocate sought relief from the District of Rhode Island.  Even in that posture, the Rhode Island court rejected DOJ's collateral-attack objection, explaining that the Rhode Island Child Advocate was not party to the Texas enforcement proceedings and that the affected children's privacy interests had not been considered or adjudicated.  *In re Admin. Subpoena 25-1431-032*, 2026 WL 1392565, at *4-5.  Subsequent proceedings in the Northern District of Texas likewise show that any overlap can be managed. The Northern District of Texas took steps to prevent disclosure to DOJ, recognizing that the Rhode Island order prohibited DOJ from obtaining patients' medical records.  *See In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006-O, ECF No. 26 (N.D. Tex. May 18, 2026).  Plaintiffs likewise would not be parties to any hypothetical Texas enforcement proceeding and their independent privacy claims would not be adjudicated there.  Adjudicating those claims in this District therefore respects, rather than disrupts, the Texas court's authority.

Stanford asks this Court to abandon the field entirely based on a hypothetical future conflict.  Comity does not require that result.  To the contrary, this Court and the Northern District of Texas can tailor their orders to the specific concerns before them and preserve the status quo while allowing any disagreements to be litigated to final resolution, precisely as is already occurring in the proceedings involving Rhode Island Hospital.  Plaintiffs do not ask this Court to quash the subpoena, enjoin the grand jury, or supervise proceedings in another district.  They ask only that Stanford—a party before this Court—be temporarily restrained from producing Plaintiffs' constitutionally protected medical information while their Fifth Amendment claim is adjudicated.  Stanford's contrary proposal that this Court forgo protecting Plaintiffs' constitutional rights, in deference to "ongoing," private negotiations in which Stanford admits it has little leverage, ECF 31 at 15, is no remedy at all.

The public interest points the same way.  "It is always in the public interest to prevent the

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). The public has a strong interest in preserving the confidentiality of medical care and protecting patients from compelled disclosure of sensitive information. *See Tucson Woman's Clinic*, 379 F.3d at 554-55 (recognizing serious privacy concerns and chilling effect from government access to patient records); *Nw. Mem'l Hosp.*, 362 F.3d at 929-30 (recognizing that compelled disclosure of sensitive medical records can deter patients from seeking lawful care).

Stanford warns that a TRO may prompt DOJ to seek production of Plaintiffs' and others' identities. But, again, speculation that DOJ may accelerate its efforts to violate Plaintiffs' constitutional rights is not a reason to deny constitutional protection; it is a reason to prevent that threatened harm. If disclosure of Plaintiffs' identities and PHI is lawful, Stanford and the government suffer only a brief delay. If disclosure is unlawful, denial of relief would mean that Plaintiffs unjustly lose their constitutional privacy forever. The balance of equities and public interest thus starkly favor Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a temporary restraining order and preliminary injunction enjoining Stanford from producing Plaintiffs' identifying information and protected health information in response to the federal grand jury subpoena issued by the United States District Court for the Northern District of Texas, or any substantially similar subpoena, request, or order issued by any court, official, or agency.

DATED:  June 4, 2026

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:   */s/ Kara J. Janssen*
Kara J. Janssen

Attorneys for Plaintiffs