UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Z.A., et al.,

          Plaintiffs,

      v.

LUCILE SALTER PACKARD
CHILDREN'S HOSPITAL AT
STANFORD,

          Defendant.

Case No.  26-cv-04998-PCP

**ORDER CONVERTING MOTION FOR
TEMPORARY RESTRAINING ORDER
INTO MOTION FOR PRELIMINARY
INJUNCTION AND DENYING
PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 2, 3

Defendant Lucile Salter Packard Children's Hospital at Stanford (LPCH) provides gender-affirming care to many young patients. In May, the Department of Justice issued a grand jury subpoena to LPCH demanding the production of sensitive medical records about those patients. The subpoena is part of a wider campaign to investigate medical centers across the nation in an effort to chill, if not completely halt, their provision of gender-affirming care to minors.

The plaintiffs in this action either received gender-affirming care at LPCH or are the parents of minors who received such care. They claim that the disclosure of the patient records that DOJ demands would violate their or their children's rights under the Fourth and Fifth Amendments. Rather than sue any government official or move to quash the subpoena in the district where it was issued, however, plaintiffs assert their constitutional claims only against LPCH, a private entity. To protect their private health information, plaintiffs now move for a temporary restraining order enjoining LPCH from producing their medical records to DOJ. Given that plaintiffs' motion has been fully briefed and argued by all parties, it is effectively a motion for a preliminary injunction and the Court treats it as such.

There is no doubt that plaintiffs face a serious risk of harm arising from LPCH's disclosure of private health information that, as plaintiffs note, concerns care that "every major medical

association recognizes as necessary … for transgender minors when medically indicated." And as numerous district court decisions have suggested when considering similar claims, the Constitution may well protect plaintiffs from the unauthorized disclosure of their medical records pursuant to the subpoena issued to LPCH. But such protections are enforceable only against either the government—which is not a party here—or against private actors whose conduct is fairly attributable to the government. Because the sparse record before the Court does not support a finding that DOJ's effort to compel the disclosure of plaintiffs' medical records (or its broader attack on gender-affirming care) is fairly attributable to LPCH, the Court is unable to grant the preliminary relief plaintiffs seek. Their motion is therefore denied.

## BACKGROUND

This case concerns the latest in a series of DOJ subpoenas seeking medical records from providers of gender-affirming care for minors as part of the federal government's ongoing efforts to halt such care. The relevant facts are largely undisputed.

On January 28, 2025, the President issued an executive order that expressly aimed to "end" gender-transition-related medical care for minors.[1] The executive order stated that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another, and it will rigorously enforce all laws that prohibit or limit these destructive and life-altering procedures."[2] Three months later, then-Attorney General Pamela Bondi issued a memorandum announcing various measures to combat the rise in youth "transgenderism" and to abate the provision of gender-affirming medical care to transgender minors, which the memorandum described as "radical gender experimentation."[3] As relevant here, the memorandum directed the Department of Justice's Civil Division to investigate "any violations of the Food, Drug, and Cosmetic Act by manufacturers and distributors engaged in

---

[1] Exec. Order No. 14187, 90 Fed. Reg. 8771, 8771 (2025).

[2] *Id.*

[3] Memorandum from Attorney General Pamela Bondi to Select Component Heads, "Preventing the Mutilation of American Children," at 1, 3–6 (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl.

2

misbranding by making false claims about … puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called 'gender transition,'" or by "promot[ing] … off-label uses of hormones."[4] The memorandum also instructed the Civil Division "to pursue investigations under the False Claims Act of false claims submitted to federal health care programs for any non-covered services related to radical gender experimentation," including the prescription of puberty blockers for a purportedly "illegitimate reason" like "gender dysphoria."[5]

Over the past year, the DOJ has followed that instruction with gusto. On June 11, 2025, the Civil Division issued a memorandum announcing that it would "use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with [the Attorney General's] directives."[6] Soon thereafter, DOJ issued more than 20 administrative subpoenas to medical centers providing gender-affirming care for minors pursuant to 18 U.S.C. § 3486(a)(1)(A)(i)(I), which authorizes subpoenas in aid of investigations of federal healthcare offenses.[7] The subpoenas sought, among other records, documents that would "identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy," as well as documents relating to such patients' "clinical indications" and "diagnoses."[8] On motions from the hospitals or

---

[4] *Id.* at 4.

[5] *Id.* at 4.

[6] Memorandum from Assistant Attorney General Brett A. Shumate, "Civil Division Enforcement Priorities," at 2 (June 11, 2025), https://www.justice.gov/civil/media/1404046/dl.

[7] *See In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 570 (E.D. Pa. 2025); *see also In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, No. CV 1:26-MC-0007, 2026 WL 1392565, at *1 (D.R.I. May 14, 2026); *In re Children's Nat'l Hosp.*, No. 1:25-CV-03780, 2026 WL 160792, at *3 (D. Md. Jan. 21, 2026); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063, 2026 WL 33398, at *1 (D. Colo. Jan. 5, 2026); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 233 (D. Mass. 2025); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1298 (W.D. Wash. 2025); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-MC-00041, 2025 WL 3562151, at *2 (W.D. Wash. Sept. 3, 2025); Declaration of David S. Schumacher, Dkt. No. 31-1 ¶ 2.

[8] *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *4 (D. Md. Jan. 21, 2026); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 571; *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *2; *see also In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 238; *QueerDoc, PLLC*, 807 F. Supp. 3d at 1304; *In re Admin. Subpoena 25-1431-032*, 2026 WL 1392565, at *1; *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *1.

3

their patients, district courts across the country quashed many of these subpoenas, finding that DOJ had not established a proper investigative purpose.[9] Several courts also determined that disclosure of the sensitive medical records sought by the subpoenas would violate patients' constitutional right to privacy.[10]

LPCH, which operates a gender-affirming care clinic, was one of the medical centers that received such an administrative subpoena.[11] Like the administrative subpoenas issued to other hospitals, the "[s]ubpoena issued to LPCH included requests for records of all minor patients that received [gender-affirming care]" at the hospital.[12] After receiving the subpoena in July 2025, LPCH produced certain non-patient records to DOJ.[13] LPCH did not, however, produce any patient records after receiving the subpoena. Instead, LPCH spent the next nine months negotiating with DOJ over the possibility of "anonymiz[ing] the patient records" and preparing those anonymized records for possible production.[14] Before LPCH disclosed any anonymized patient records, however, the DOJ informed LPCH on May 6, 2026 that it was withdrawing the administrative subpoena.[15]

The next day, DOJ served a grand jury subpoena similar in scope to the withdrawn administrative subpoena on LPCH.[16] Although it demanded records from an entity based in the

---

[9] *See In re Admin. Subpoena 25-1431-032*, 2026 WL 1392565, at *6; *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *6–8 (D. Md. Jan. 21, 2026); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 236–39; *QueerDoc, PLLC*, 807 F. Supp. 3d at 1302–04; *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 575–87; *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *9–13 (W.D. Wash. Sept. 3, 2025); *In re 2025 UPMC Subpoena*, No. 2:25-MC-01069-CB, 2025 WL 3724705, at *1–3 (W.D. Pa. Dec. 24, 2025); *see also In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *4–5 (recommending the same).

[10] *See In re Admin. Subpoena 25-1431-032*, 2026 WL 1392565, at *8–10; *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8 (D. Md. Jan. 21, 2026); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d at 588–606.

[11] Schumacher Declaration, Dkt. No. 31-1 ¶ 2.

[12] *Id.*

[13] *Id.* ¶ 3.

[14] *Id.* ¶ 4.

[15] *Id.* ¶ 6.

[16] *Id.*; Subpoena to Lucile Packard Children's Hospital to Testify Before Grand Jury (May 6, 2026) ("Grand Jury Subpoena"), Dkt. No. 31-2, at 2–8.

United States District Court
Northern District of California

Northern District of California, the grand jury subpoena was issued under the seal of the Northern District of Texas.[17] The subpoena requests a wide range of documents from LPCH, including records concerning minor patients who received medical care "for the purpose of … affirming [their] asserted gender identity," i.e., gender-affirming care.[18] (The subpoena refers to this care as "Sex-Rejecting Procedures.") Specifically, the grand jury subpoena demands:

> Documents sufficient to identify each patient who underwent Sex-Rejecting Procedures[;] …
>
> [D]ocuments relating to the clinical indications, diagnoses, or assessments that formed the basis for providing Sex-Rejecting Procedures, including the prescribing of puberty blockers and hormones, and all documents relating to the Sex-Rejecting Procedures care provided to each [such] patient … from initial consultation to the most recent treatment provided[; and]
>
> All documents relating to informed consent, patient intake, and parent or guardian authorization for [such] minor patients….[19]

The return date on the subpoena is June 10, 2026.[20]

Following service of the grand jury subpoena, counsel for LPCH "met and conferred with … DOJ," and DOJ "indicated that it expected substantial compliance … by [the return date]."[21] DOJ also "indicated that … it would accept anonymized patient records in the first instance" but "reserved the right to request unmasked patient records," subject to challenge in court by LPCH.[22] Based on those representations, LPCH "has been negotiating … to undertake detailed redactions of the patient records commanded by the [g]rand [j]ury [s]ubpoena."[23]

LPCH is not the only hospital outside Texas that DOJ has targeted from within that state. In April, DOJ sought (and received) an order from a court in the Northern District of Texas

---

[17] Schumacher Declaration, Dkt. No. 31-1 ¶ 6; *see also* Grand Jury Subpoena, Dkt. No. 31-2, at 2.

[18] Grand Jury Subpoena, Dkt. No. 31-2, at 6–8.

[19] *Id.* at 7–8.

[20] *Id.* at 2; Schumacher Declaration, Dkt. No. 31-1 ¶ 6.

[21] Schumacher Declaration, Dkt. No. 31-1 ¶ 7.

[22] *Id.* ¶ 8.

[23] *Id.*

compelling Rhode Island Hospital to disclose the patient records of transgender minors in response to an administrative subpoena.[24] And on the same day DOJ issued the grand jury subpoena at issue in this case, it issued a nearly identical subpoena to NYU Langone Hospitals in New York.[25]

Hoping to challenge the disclosure of their medical records in the district where both they and the records reside, plaintiffs filed suit against LPCH in this Court on May 27, 2026. Their complaint alleges that the grand jury subpoena is "part of [a] campaign to end pediatric … care" that "every major medical association recognizes as necessary care for transgender minors when medically indicated." According to the complaint, DOJ is attempting to "sidestep" the many district-court orders "condemn[ing] the[] … administrative subpoenas demanding patient identities … by opening a criminal investigation." Plaintiffs claim that LPCH's compliance with the subpoena and release of their private health information would violate their right to informational privacy under the Fifth Amendment, constitute an unreasonable search and seizure under the Fourth Amendment, and deny them the equal protection of the law. The complaint names only LPCH, not any government entity or official, as a defendant.

Counsel for LPCH has attested that, after plaintiffs filed their complaint, he "updated the DOJ regarding the lawsuit."[26] In response, DOJ stated that if LPCH failed to produce anonymized records by the return date on the grand jury subpoena due to an injunction from this Court, it would "move to compel full compliance with the subpoena in the Northern District of Texas, to include patient-identifying information."[27]

Concurrent with their complaint, plaintiffs filed a motion for a temporary restraining order

[24] *See In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (N.D. Tex. Apr. 30, 2026), Dkt. No. 2.

[25] *See* Subpoena to NYU Langone Hospitals to Testify Before Grand Jury (May 6, 2026), Dkt. No. 1, at 25–36.

[26] Schumacher Declaration, Dkt. No. 31-1 ¶ 9.

[27] *Id.* As the Texas judge presiding over matters relating to DOJ's subpoenas has explained, DOJ is "a frequent forum shopper." THE FEDERALIST SOCIETY, *Opening Remarks from Judge Reed O'Connor [2024 TX Chapters Conference]*, at 7:46–7:53 (YouTube, Oct. 22, 2024), https://www.youtube.com/watch?v=HMTt9pxWBhA [https://perma.cc/GR7A-H6N8].

United States District Court
Northern District of California

(TRO) asking the Court to enjoin LPCH from producing their identifying information and medical records to DOJ. LPCH received notice of that motion, which has since been fully briefed. The Court heard argument from all parties on June 5, 2026.

**LEGAL STANDARDS**

The standard for issuing a temporary restraining order is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Plaintiffs seeking either form of relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a [temporary restraining order or] preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to ... preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). The procedural requirements also differ. While a "court may issue a preliminary injunction only on notice to the adverse party," a court "may issue a temporary restraining order without written or oral notice to the adverse party" if the movant satisfies certain requirements. *See* Fed. R. Civ. P. 65(a)(1), (b)(1). "Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002).

Although plaintiffs originally moved for a temporary restraining order, LPCH received

United States District Court
Northern District of California

notice and an opportunity to respond to the motion, both in writing and orally at the hearing. "[G]iven the nature of the relief [denied] by this [o]rder and so as to appropriately permit [plaintiffs] the ability to appeal should they choose to do so, the Court converts" plaintiffs' motion to one for a preliminary injunction. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1090 (E.D. Cal. 2025).

## ANALYSIS

### I.    The Court grants plaintiffs' unopposed motion to proceed pseudonymously.

Plaintiffs have moved to proceed in this action via pseudonym. "In this circuit, [courts] allow parties to use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (citation modified). "Because there is a presumption that parties' identities are public information, anonymity is only proper under 'special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity.'" *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016) (quoting *Advanced Textile*, 214 F.3d at 1068).

This case involves such special circumstances. Plaintiff F.F. requests to proceed under a pseudonym because she is transgender. Plaintiffs A.A., B.B., C.C., D.D., and E.E. wish to proceed under pseudonyms because they are the parents of transgender children, and because "their identities track their children's identities, … their children's identities can be readily surmised." *Int'l Partners for Ethical Care Inc. v. Inslee*, No. 3:23-CV-05736, 2023 WL 7017765, at *1 (W.D. Wash. Oct. 25, 2023). Plaintiffs fear that the public disclosure of their identities will result in discrimination and harassment based on their or their children's transgender status and receipt of gender-affirming medical care. Courts in this circuit have frequently found that individuals reasonably feared harm from the disclosure of their transgender identity, *see, e.g.*, *Doe v. Progressive Cas. Ins. Co.*, No. 21-CV-02602, 2023 WL 5960772, at *1 (N.D. Cal. Aug. 21, 2023); *Karnoski v. Trump*, No. C17-01297, 2017 WL 11431253, at *1 (W.D. Wash. Oct. 10, 2017), particularly in cases involving transgender minors, *see, e.g.*, *Int'l Partners for Ethical Care*, 2023 WL 7017765, at *1; *D.T. v. Christ*, 552 F. Supp. 3d 888, 892 n.5 (D. Ariz. 2021). Because an

United States District Court
Northern District of California

individual's gender identity and medical history are "matter[s] of sensitive and highly personal nature," *Advanced Textile Corp.*, 214 F.3d at 1068 (citation omitted), and because plaintiffs reasonably fear discrimination or harassment if those matters are publicly disclosed, the Court concludes that they have established a strong need for anonymity.

LPCH does not oppose the motion, so no "prejudice to the opposing party" outweighs that need for anonymity. *Id.* Nor does "the public's interest in knowing [plaintiffs'] identit[ies]." *Id.* Allowing plaintiffs to proceed via pseudonym in this action will not "obstruct public scrutiny of the important issues," i.e., whether LPCH is a government actor whose disclosure of plaintiffs' and their children's medical records to DOJ would violate the Constitution. *Id.* at 1072. Further, the public has an interest in allowing claims to proceed to resolution on the merits without chilling effects. *See Doe v. Valley Ctr.-Pauma Unified Sch. Dist.*, No. 3:25-CV-03686, 2026 WL 622689, at *2 (S.D. Cal. Mar. 5, 2026). Plaintiffs' reasonable fears of discrimination and harassment may "chill [their] willingness to challenge … violations of their rights," so "permitting plaintiffs to use pseudonyms will serve the public's interest in this lawsuit by enabling it to go forward." *Advanced Textile Corp.*, 214 F.3d at 1073.

Accordingly, plaintiffs' motion to proceed pseudonymously is granted.

## II.    The Court denies plaintiffs' motion for preliminary relief.

As noted above, a plaintiff seeking preliminary relief must satisfy each of the four *Winter* factors. Here, however, the Court need only consider "the most important … factor": plaintiffs' likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Because plaintiffs have not demonstrated a likelihood of success or raised "serious questions going to the merits," the Court "need not consider the other factors." *Id.* (citation modified).

The dispositive issue is not the "what"—that is, the existence of potential constitutional violations—but the "who." "The Constitution's protections … apply in general only to action by the government." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991). As plaintiffs acknowledge, LPCH is a private nonprofit corporation, not a government entity. That fact alone "does not quite end [the] inquiry because, in certain 'exceptional cases,' a private party 'will be

9

treated as a [government] actor for constitutional purposes.'" *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024) (quoting *O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023)), *cert. denied*, 145 S. Ct. 2846 (2025). But the scant record before the Court does not create a serious question as to whether LPCH should be treated as such.

A private party may be considered a government actor only if it "meet[s] two distinct requirements[.]" *Id.* First, the party's alleged deprivation of plaintiffs' constitutional rights "must result from the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government] or by a person for whom the [government] is responsible." *Id.* (citation modified). This "governmental policy" requirement is easily satisfied here. All parties agree that LPCH's challenged conduct is the result of a government-imposed mandate: DOJ's grand jury subpoena.

Second, the private party "must fairly be said to be a [government] actor, which requires that it meet one of four tests: (1) the private actor performs a traditionally public function; (2) the private actor is a willful participant in joint activity with the government; (3) the government compels or encourages the private actor to take a particular action; or (4) there is a sufficiently close nexus between the government and the challenged action." *Id.* (citation modified).

Plaintiffs rely on the coercion test.[28] Under that test, "the government must have 'exercised coercive power or provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government].'" *Id.* at 759 (citation modified) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). But not all uses of government authority to compel a private party's action convert the party into a government actor. As the Ninth Circuit held in *Sutton v. Providence St. Joseph Medical Center*, "the mere fact that the government compel[s] a result does not suggest that the government's action is 'fairly attributable' to the private defendant." 192 F.3d 826, 838 (9th Cir. 1999). Were it otherwise, a private corporation

---

[28] Plaintiffs style their motion as relying on both the coercion *and* nexus tests because the Ninth Circuit has sometimes described the nexus test as encompassing the coercion test. *See O'Handley*, 62 F.4th at 1157 (reciting the standard quoted above as a "second version" of the nexus test, rather than as a separate coercion test). The label does not matter. By whatever name, the substance of the test plaintiffs invoke concerns DOJ's exercise of coercive power.

10

would be treated as a government actor "every time it complies with a presumptively valid, generally applicable law." *Id.* For that reason, the Ninth Circuit has distinguished "governmental compulsion in the form of a generally applicable law" or other "generally applicable requirement[s]" from compulsion involving "particularized" threats "directed [at] a specific entity" to compel "a specific (allegedly unconstitutional) action against a specific person." *Id.* at 841, 843 (quoting *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.,* 827 F.2d 1291, 1295 (9th Cir. 1987)). The former is not "sufficient to deem a truly private entity a governmental actor" without "something more." *Id.* at 840, 843. Evidence of the latter form of compulsion, however, may sometimes suffice to convert a private defendant into a government actor. *See id.* at 843.

Cases involving coercion of the second category are, at least in this circuit, rare. Plaintiffs cite only one published opinion in which the Ninth Circuit has held that coercive threats alone were sufficient to make a private defendant a state actor for constitutional purposes. *See Carlin*, 827 F.2d at 1295. In *Carlin*, the Ninth Circuit held that the coercion test was satisfied "when a deputy county attorney threatened to prosecute a regional telephone company if it continued to carry a third party's dial-a-message service." *O'Handley*, 62 F.4th at 1158 (characterizing *Carlin*). Even then, the Ninth Circuit ultimately denied relief based on the telephone company's insistence that its later policy change to exclude the message service represented the company's "independent business judgment." *Id.* at 1297. On that basis, the Ninth Circuit vacated the district court's injunction against the private-defendant telephone company. *Id.* When asked at the hearing, plaintiffs could not identify any in-circuit authority affirming injunctive relief solely against a private defendant alleged to be a government actor based on threats or coercion alone. That is likely because "[t]he compulsion analysis originated in cases in which the government itself, not a private entity, was the defendant." *Sutton*, 192 F.3d at 836. Thus, while "*the government* cannot escape liability when it compels a result," *id.* at 838, "there is reason to doubt that a purely private actor …, which was the *victim* of the alleged coercion, would be the appropriate defendant" in most constitutional cases, *Children's Health Defense*, 112 F.4th at 759.

Plaintiffs nevertheless argue that this case involves "particularized" threats "directed [at] a specific entity" to compel "a specific (allegedly unconstitutional) action against a specific person"

United States District Court
Northern District of California

that render LPCH a government actor. *Sutton*, 192 F.3d at 841, 843. They argue that DOJ's issuance of the grand jury subpoena, its subsequent statement that it would move to enforce the subpoena in Texas absent the production of anonymized records by the return date, and its broader efforts to investigate providers of gender-affirming care constitute such threats. The Court disagrees that this conduct creates a serious question as to LPCH's status as a government actor.

As an initial matter, the issuance of a subpoena is a "generally applicable" form of compulsion. While a subpoena is necessarily directed to a particular recipient, the coercive force at work is the general requirement that a recipient must comply with a subpoena absent quashal. Other courts to have considered the issue have reached the same conclusion. In *Abordo v. Mobi PCS*, for example, a plaintiff asserted claims against a private mobile-communications company and its employees under 42 U.S.C. § 1983, which requires a showing of government action, for allegedly disclosing his privileged communications to state authorities in response to several subpoenas. No. 15-CV-00279, 2016 WL 777921, at *2 (D. Haw. Feb. 25, 2016). The district court concluded that the plaintiff's complaint "fail[ed] to allege *any* material facts showing that [d]efendants, in responding to the [State]'s subpoenas, … acted under color of state law." *Id.* at *5 (emphasis added). In other words, the bare fact that the State had issued subpoenas to the private defendants did not constitute coercion sufficient to render the defendants' responsive productions government action. On appeal, a panel of the Ninth Circuit affirmed, similarly reasoning that the plaintiff "failed to raise a genuine dispute of material fact as to whether any defendant was acting under color of state law in responding to subpoenas issued by the State…." *Abordo v. Mobi PCS*, 684 F. App'x 631, 632 (9th Cir. 2017). While not binding, the Court finds these decisions persuasive. And even plaintiffs concede in their motion that "not … *every* recipient of a grand jury subpoena becomes a [government] actor" simply by virtue of complying with the subpoena. Accordingly, all parties agree that the coercive effect of the grand jury subpoena, standing alone, is insufficient to render LPCH a government actor here.[29]

---

[29] The appendage of a notice listing the generally applicable federal statutes that DOJ believes might compel compliance with its criminal investigatory efforts does not, in the Court's view, change the analysis.

12

For similar reasons, DOJ's statement that it intends to move to compel full compliance with the subpoena if LPCH does not produce records by the return date—e.g., if this Court enjoins such production—also does not create a serious question as to plaintiffs' satisfaction of the coercion test. Moving to compel compliance with a subpoena is an ordinary step when a recipient does not disclose the requested records by the return date. If a subpoena cannot transform a private party into a government actor, neither can the government's pursuit of the available means of enforcing the subpoena.

Finally, plaintiffs point to DOJ's broader efforts to criminally investigate and prosecute providers of gender-affirming care. To be sure, DOJ has threatened providers of gender-affirming care with criminal investigations.[30] And the Ninth Circuit held in *Carlin* that a private defendant operates as a government actor where it takes the specific (and allegedly unconstitutional) action directed by the government in response to an express threat of prosecution. *See* 827 F.2d at 1295; *Sutton*, 192 F.3d at 843. But there is a disjunct here between DOJ's threats against hospitals and the specific action plaintiffs challenge as unconstitutional. The evidence plaintiffs have submitted demonstrates that DOJ's specific statements threatening criminal investigations and prosecutions are attached to demands for providers to stop offering gender-affirming care for minors, not to DOJ's demands for the disclosure of patient records.[31] Of course, those background threats have an indirect coercive effect on LPCH's response to DOJ's subpoenas—the Court is not blind to that reality, nor does it countenance indirect coercion. DOJ's extreme hostility to providers of gender-affirming care is not, however, a sufficient basis to make *LPCH* a government actor without evidence of a more direct tie between DOJ's threats of prosecution and LPCH's disclosure of patient records.

The limited record before the Court establishes DOJ's direct coercion of LPCH's

---

[30] *See, e.g.*, Memorandum from Attorney General Pamela Bondi to Select Component Heads, "Preventing the Mutilation of American Children," at 3–6 (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl.

[31] *See, e.g.*, "Justice Department Secures Landmark Resolution to End Pediatric 'Gender-Affirming Care' and Create Detransition Clinic," Department of Justice (May 15, 2026), https://perma.cc/52UQ-RRWS (threatening to "use every weapon at [DOJ's] disposal to end the destructive and discredited practice of so-called 'gender-affirming care' for children").

production of patient records only through generally applicable means. As a result, "something more" is needed to establish that LPCH might be a government actor. In *Sutton*, the Ninth Circuit noted that "more" will "[t]ypically … consist[] of some willful participation in a joint activity by the private entity and the government." 192 F.3d at 843.

That is what plaintiffs claim occurred here. In essence, plaintiffs argue that LPCH has willfully participated in DOJ's allegedly unconstitutional activity by failing to fight the grand jury subpoena with sufficient vigor. They lament that LPCH has never moved to quash either of DOJ's subpoenas despite the success of other medical providers in doing so and LPCH's acknowledgement of potentially meritorious grounds in its briefing to this Court. They castigate LPCH for instead choosing to negotiate with DOJ to limit the scope of its production to anonymized records. But they cite no authority suggesting that a private defendant's less-than-total opposition to government overreach provides the "something more" that *Sutton* requires. *Sutton* itself does not stand for that proposition. There, summarizing prior Supreme Court opinions, the Ninth Circuit provided examples of joint activity supplying "something more" that included a defendant's initiation of a state attachment proceeding, a request for state authorities' help in enforcing a defendant's own discriminatory by-laws, and a defendant's conspiracy with local authorities to discriminatorily deny a plaintiff service or to cause her arrest. *See* 192 F.3d at 839–41. All of these examples involve affirmative conduct by private defendants that actively sought to enable the government's unconstitutional ends.

Here, by contrast, the record does not show that LPCH acted in concert with DOJ to abet its alleged constitutional violations. There is no evidence, for example, that LPCH conspired with DOJ to procure withdrawal of the administrative subpoena and issuance of a grand jury subpoena from the Northern District of Texas in order to prevent plaintiffs from moving to quash in their home district. Nor did LPCH simply roll over in the face of DOJ's demands. Rather than "willful[ly] participat[e]" in DOJ's efforts to procure plaintiffs' private medical records, *id.* at 843, the sparse record before the Court suggests that LPCH made a strategic choice to pursue more limited forms of opposition (i.e., negotiating to limit its disclosure to anonymized records) in lieu of providing the kind of full-throated resistance engaged in by other medical providers (e.g.,

14

United States District Court
Northern District of California

moving to quash the subpoenas in full). Were that enough to render LPCH a government actor, every recipient of a grand jury subpoena for third-party information would be forced to file a motion to quash or risk being sued for constitutional violations. That cannot be the law. *See Sconiers v. Cal. Dep't of Soc. Servs.*, No. 07-CV-00972, 2008 WL 4196599, at \*4 (E.D. Cal. Sept. 11, 2008) (concluding that defendants' "voluntary" disclosure of plaintiff's medical information to a district attorney constituted state action but suggesting that the result would differ if defendants "were presented with a subpoena … to produce [the] records, and obliged").

"It is ... a truism by now that there is no rigid formula for measuring [government] action for purposes of [constitutional] liability. Rather, it is a process of 'sifting facts and weighing circumstances' which must lead [the Court] to a correct determination." *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 550 (9th Cir. 1974) (quoting *Reitman v. Mulkey*, 387 U.S. 369, 378 (1967)). "At bottom," the Court must "evaluate whether the nature of the relationship between [LPCH] and the government is such that the alleged infringement of federal rights is fairly attributable to the government." *Children's Health Def.*, 112 F.4th at 754 (citation modified). The record as a whole, at least at this early stage, suggests that it is not. For almost a year, LPCH has refrained from producing the patient records DOJ demands and continues to resist disclosing non-anonymized records. It certainly could have taken—or could now take—more robust actions to vindicate the patient privacy rights it purports to value. But however inadvisable, LPCH's choice not to do so is LPCH's alone, not the government's.

The Court does not doubt the strength of plaintiffs' constitutional interest in the preservation of their privacy or the gravity of harm that might result from the unauthorized disclosure of their medical information (or their inability to access medically indicated care going forward). On the record before the Court, however, plaintiffs have not raised serious questions going to the merits of their argument that LPCH is a government actor. Because all of their claims depend on such a finding, they cannot satisfy the threshold *Winter* factor, precluding preliminary injunctive relief.[32]

_____

[32] The Court need not address LPCH's arguments that enjoining disclosures in response to a grand jury subpoena issued from the Northern District of Texas would raise comity concerns. The Court

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court grants plaintiffs' motion to proceed via pseudonym (Dkt. No. 2) and denies their motion for preliminary relief (Dkt. No. 3). The denial is without prejudice to the filing of a renewed motion for a preliminary injunction in the event of materially changed facts or further development of the record.

**IT IS SO ORDERED.**

Dated: June 6, 2026

_____
P. Casey Pitts
United States District Judge

---

notes, however, that there is some authority suggesting that a plaintiff may challenge a grand jury subpoena in the plaintiff's home district instead of moving to quash the subpoena in the district where it was issued (although that case involved a threatened subpoena rather than an already-issued one). *See New York Times Co. v. Gonzales*, 459 F.3d 160, 166–67 (2d Cir. 2006) (holding that a plaintiff's ability to move to quash a federal grand jury subpoena in the issuing district "does not preclude *per se* a declaratory judgment" action against DOJ in another district); *but see IO Grp. v. J.W.*, No. 10-cv-05821, 2011 WL 237673, at *1 (N.D. Cal. Jan. 24, 2011) ("[O]nly the issuing court has the power to act on its subpoenas." (quoting *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998)).