SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street #11548
Sacramento, California 94102
Telephone: (415) 392-6257
Email:       sminter@nclrights.org
             cstoll@nclrights.org
             awhelan@nclrights.org
             rberg@nclrights.org

JOSHUA ROVENGER*
DONOVAN BENDANA*
ABBE DAVID LOWELL (*pro hac vice*)
CALEB HAYES-DEATS (*pro hac vice*)
SCHUYLER STANDLEY (*pro hac vice*)
Lowell & Associates, PLLC
1250 HGLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, N.W., Suite 950250
Boston, Massachusetts 02108
Washington, DC 20005
Telephone: (617) 426-1350202) 964-6110
Email:       jrovenger@gladlaw.org
             dbendana@gladlaw.org
Facsimile: (202) 964-6116
Email:
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
Sstandley@lowerllandassociates.com

*motion for admission *pro hac vice* forthcoming

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       ggrunfeld@rbgg.com
             kjanssen@rbgg.com

JOSHUA ROVENGER (*pro hac vice*)
DONOVAN BENDANA (*pro hac vice*)
GLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts 02108
Telephone: (617) 426-1350
Email:       jrovenger@gladlaw.org
             dbendana@gladlaw.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A.; Z.B., a minor, by and through their parent, B.B.; Z.C., a minor, by and through their parent, C.C.; Z.D., a minor, by and through their parent, D.D.; Z.E., a minor, by and through their parent, E.E.; and F.F.,F.F.; and Z.G., a minor, by and through their parents, G.G. and A.G., on behalf of themselves and all those similarly situated, | Case No. 5:26-cv-499804998-PCP<br><br>**FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>Assigned to: Hon. P. Casey Pitts<br><br>Trial Date: None Set |

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; U.S. DEPARTMENT OF JUSTICE; and LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, a California nonprofit public benefit corporation,

Defendants.

**INTRODUCTION**

1. The federal government has pledged to shut down essential medical care for transgender minors. Days into office, the President issued Executive Order 14187, "Protecting Children from Chemical and Surgical Mutilation," which declared it is not U.S. policy to "fund, sponsor, promote, assist, or support" any child's "transition," branded such care for minors a "stain on our Nation's history" that "must end," and directed the Attorney General to "prioritize enforcement of protections against" such care.

2. As part of this campaign to end pediatric transgender medical care, the Department of Justice ("DOJ") initiallyhas spent the last year using "every weapon at its disposal" to end pediatric transgender healthcare,[1] including the initiation of a sprawling, nationwide investigation into providers, hospitals pharmaceutical companies, and other entities supporting this essential care.[2]

2.3. Beginning in June 2025, DOJ served "substantively identical" civil administrative subpoenas under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA subpoenas") on healthcare providers across the country demanding the identities and protected health information ("PHI") of every transgender patient who received care. *In re 2025 Subpoena to Children's Nat'l Hosp.*, No. 1:25-cv-03780, 2026 WL 160792, at *3-4 & n.12 (D. Md. Jan. 21, 2026), *appeal docketed*, No. 26-1104 (4th Cir. Feb. 2, 2026).

3.4. District courts across the country have condemned these identical administrativeHIPAA subpoenas demanding patient identities and PHI. *See, e.g., id.* at *9 (stating that administrativea HIPAA subpoena to Children's National Hospital "is an overreach untethered to any lawful purpose no matter who seeks protection from the

---

[1] *Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic*, Department of Justice (May 15, 2026), https://www.justice.gov/opa/pr/justice-department-secures-landmark-resolution-end-pediatric-gender-affirming-care-and.

[2] Brett Schumate, *Civil Division Enforcement Priorities*, Department of Justice (June 11, 2025), https://www.justice.gov/civil/media/1404046/dl?inline.

court," that "[t]he Government has made improper use of a § 3486 administrative subpoena to out Movants for receiving, and their Hospital for providing, healthcare the Executive characterizes as a 'stain on our Nation's history,'" that "[t]he Subpoena bears no credible connection to an investigation of any statutory violation by the Hospital" and that it "appears to have no purpose other than to intimidate and harass the Hospital and Movants, and those similarly situated.").

5. Faced with rejection of its improper administrativeHIPAA subpoenas from courts across the country, DOJ has now decided to sidestep those orders by openingconvening a criminalgrand jury investigation. On information and belief, itIt has served grand jury subpoenas on several of the same medical providers previously issued administrativeHIPAA subpoenas.

4.6. These subpoenas seek the same identifying information and PHI previously requested in the administrative subpoenas that have been quashed by court after court as lacking any proper investigative purpose. But simply re-labeling an administrativea HIPAA subpoena as a grand jury subpoena cannot transform an improper investigative purpose into a proper one. DOJ's improper effort to use the grand jury process to obtain identities and PHI of Plaintiffs—and the similarly situated members of the proposed class—violates their rights under the First, Fourth, and Fifth Amendments.

7. Plaintiffs and proposed class members are transgender minors and young adults who are receiving or have received pediatric transgender medical care in California, including individuals who received care in this District at the Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic. On information and belief, Defendant Lucile Salter Packard Children's Hospital at Stanford ("StanfordLPCH"), which operates the clinic, is one of the institutions that has received a federal grand jury subpoena seeking each Plaintiff's identifying information and PHI. Stanford's disclosure for transgender minors and young adults to whom it provided care.

8. On information and belief, DOJ has also issued grand jury subpoenas to other providers of pediatric transgender medical care in California.

5.9.   Disclosure of Plaintiffs' and proposed class members' private information in response to theblatantly unconstitutional and invalid grand jury subpoena   which it would be doing solely atsubpoenas, even considering the behest and coercion of this Administration government's coercive actions, would render itthose providers a tool of federal law enforcement and a participant in the federal government's campaign to unconstitutionally obtain Plaintiffs' and proposed class members' private information, which is protected by the First, Fourth, and Fifth Amendments.

6.10.   Production of Plaintiffs' information pursuant to the grand jury subpoena would commandeer Stanford into becoming a government agent, conveying its patients' most intimate and personally identifiable medical information to federal officials without its patients' knowledge or consent. The Constitution does not permit private medical providers from being used as instruments of the government in this manner. Government seizure of Plaintiffs' and proposed class members' identities and PHI would violate their rights under the First, Fourth and Fifth Amendments, regardless of whether that seizure is accomplished directly by government officials searching their homes and doctors' offices or is instead effectuated by employing their medical providers as agents of the federal government.

7.11.   The threatened violation of Plaintiffs' and proposed class members' constitutional rights is imminent. The subpoenasubpoenas to California providers, on information and belief, hashave a return date no later than June 10, 2026. The Court should act quickly to exercise its jurisdiction to enjoin StanfordDOJ from becoming a participant in the violation of violating Plaintiffs' and proposed class members' constitutional liberties by disclosing Plaintiffs'seizing their private medical records to federal officials.  .

8.12.   At bottom, the Administration is engaged in an effort to enlistwidely obtain the identities and PHI of transgender youth and young adults by targeting the medical providers who deliver that care. The government seeks to employ providers as its agents in disclosing to government officials the identities and private medical records of every

[6016268.1]                    3                    Case No. 5:26-cv-04998-PCP
FIRST AMENDED COMPLAINT

individual transgender child and adolescent they treat. The records the government seeks pertain to medical care that is and was lawful where provided. And, it is also is care that every major medical association recognizes as necessary care for transgender minors when medically indicated. These unlawful efforts should be halted.

## JURISDICTION AND VENUE

9.13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States.

10.14. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). This Court has authority to grant declaratory relief, injunctive relief, and other relief under both the Declaratory Judgment Act, 28 U.S.C. §§ 2201-220202, and the Court's equitable powers.

11.15. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) and 28 U.S.C. § 1391), (c)(2).), and (e)(1), as one defendant, Defendant LPCH, is an entity with the capacity to sue and be sued in its common name that is subject to the personal jurisdiction of this Court with respect to this action, and accordingly is deemed to reside in this district. Additionally, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

16. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## DIVISIONAL ASSIGNMENT

12.17. Assignment to the San Jose Division of this Court is proper because this action arises in the County of Santa Clara.

## PARTIES

**Plaintiffs**

13.18. Z.A. is a 17-year-old transgender minor who received gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic from 2022 to the present and is proceeding in this case through parent A.A.

14.19. Z.B. is a 17-year-old transgender minor who received gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic from 2024 to 2025, has since received similar healthcare at a different California healthcare provider, and is proceeding in this case through parent B.B.

15.20. Z.C. is a 15-year-old transgender minor who received gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic from 2024 to the present and is proceeding in this case through parent C.C.

16.21. Z.D. is a 10-year-old transgender minor who received gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic from 2021 to the present and is proceeding in this case through parent D.D.

17.22. Z.E. is a 14-year-old transgender minor who received gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic from 2023 to the present and is proceeding in this case through parent E.E.

18.23. F.F. is a 19-year-old transgender woman who received gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic from 2023 to 2025.

**Defendant**

24.    Z.G. is a 13-year-old transgender minor who currently receives gender-related care at Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic and is proceeding in this case through parents G.G and A.G.

**Defendants**

25.    Defendant Todd Blanche is Acting Attorney General of the United States. He is sued in his official capacity. Attorney General Blanche is responsible for all aspects of the operation and management of the U.S. Department of Justice ("DOJ"), including implementing and fulfilling DOJ's duties under the U.S. Constitution and statutory law. As such, Attorney General Blache supervises and directs the administration and operation of the United States Attorneys' Offices. See 28 C.F.R. § 0.5.

26.    Defendant DOJ is a cabinet agency within the executive branch of the United

States government. 28 U.S.C. § 501. DOJ has several divisions, including the Civil and Criminal Divisions. DOJ also directs and oversees United States Attorneys' Offices, including the U.S. Attorney's Office for the Northern Districts of Texas and California.

27.    Defendants DOJ and Acting Attorney General Blanche are collectively referred to as "DOJ" or the "DOJ Defendants."

19.28. Defendant Lucile Salter Packard Children's Hospital at Stanford ("StanfordLPCH") is a California nonprofit public benefit corporation with its principal place of business in Palo Alto, California. On information and belief, StanfordLPCH owns and operates the Stanford Medicine Children's Health Pediatric and Adolescent Gender Clinic.

20.29. On information and belief, Stanford LPCH has received a Subpoena to Testify Before Grand Jury issued by the United States District Court for the Northern District of Texas demanding that StanfordLPCH produce documents disclosing the identities and protected health information ("PHI") of Plaintiffs and every other transgender patient to whom it provided such care— including "documents sufficient to identify each patient," diagnoses, parent/guardian information, and informed consent materials for minors.

## FACTUAL ALLEGATIONS

21.30. The Trump Administration has pledged to end pediatric transgender medical care. On January 28, 2025, the President issued Executive Order 14187, "Protecting Children from Chemical and Surgical Mutilation," which declared it is not U.S. policy to "fund, sponsor, promote, assist, or support" any child's "transition," branded such care for minors a "stain on our Nation's history" that "must end," and directed the Attorney General to "prioritize enforcement of protections against" such care. Exec. Order No. 14187, 90 Fed. Reg. 8771 (Feb. 3. 2025). Within days, the White House announced that the order was "already having its intended effect," listing hospitals that had paused or

ended treatment.[3]

**I.      DOJ Targets Pediatric Transgender Healthcare With Improper Subpoenas.**

31.      The United States Department of Justice ("DOJ") promptly took action. In April 2025, the Attorney General issued a memorandum, "Preventing the Mutilation of American Children," directing U.S. Attorneys to "partner with state attorneys general to identify leads, share intelligence, and build cases against hospitals and practitioners," and warning DOJ would "hold accountable those who mutilate [our children] under the guise of care."[4] ~~In~~

~~22.~~32. On June 11, 2025, the Civil Division ordered components to "prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities" providing such care to minors.[5] The Civil Division, also known as the Enforcement and Affirmative Litigation Branch, under the leadership of Brett Shumate, retains supervisory authority regarding criminal and civil investigations of pediatric transgender healthcare.[6]

~~23.~~33. The Administration initially pursued only civil remedies in its campaign to compel providers to stop offering this medically necessary care. On July 9, 2025, DOJ served more than 20 "substantively identical" ~~administrative~~HIPAA subpoenas under 18 U.S.C. § 3486 "to doctors and clinics involved in performing transgender medical

---

[3] President Trump Is Delivering on His Commitment to Protect Our Kids, The White House (Feb. 3, 2025), https://www.whitehouse.gov/releases/2025/02/president-trump-is-delivering-on-his-commitment-to-protect-our-kids/.

[4] Memorandum for Select Component Heads: Preventing the Mutilation of American Children at 3, 5, U.S. Off. Of the Att'y Gen. (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl (DOJ April 2025 Memorandum).

[5] Memorandum: Civil Division Enforcement Priorities at 2, U.S. Off. of the Assistant Att'y Gen. (June 11, 2025), https://www.justice.gov/civil/media/1404046/dl?inline.

[6] Ben Penn, *DOJ Rethinks Reorganization Tied to Gender-Affirming Care Probes*, Bloomberg Law (Sept. 22, 2025), https://news.bloomberglaw.com/us-law-week/doj-rethinks-reorganization-tied-to-gender-affirming-care-probes.

procedures on children."[7] -Several weeks later, the White House declared victory.[8]

24.34. Federal district courts around the country swiftly responded to DOJ's improper PHI demands. Nearly every court to consider DOJ's administrativeHIPAA subpoenas seeking patients' identifying information and PHI concluded that they are impermissible and must be quashed. -*In re 2025 Subpoena to Children's Nat'l Hosp.,* No. 1:25-cv-03780, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026) (quashing subpoena for its improper purpose), *appeal docketed,* No. 26-1104 (4th Cir. Feb. 2, 2026); *In re Admin. Subpoena No. 25-1431-019,* 800 F. Supp. 3d 229, 236--39 (D. Mass. 2025) (quashing Boston Children's Hospital subpoena as issued for an improper purpose and "virtually unlimited in scope"), *appeal docketed,* No. 26-1093 (1st Cir. Jan. 30, 2026); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303--04 (W.D. Wash. 2025) (quashing subpoena for improper purpose because DOJ "issued the subpoena first and searched for a justification second"), *appeal argued*, No. 25-7384 (9th Cir. Mar. 6, 2026); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 578--81, 588--607 (E.D. Pa. 2025) (striking requests to Children's Hospital of Philadelphia (("CHOP)") seeking patients' identities and medical data as beyond statutory authority and outweighed by minors' privacy interests); *In re Subpoena No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *13 (W.D. Wash. Sept. 3, 2025) (rejecting enforcement of Seattle Children's Hospital subpoena based on "DOJ's threadbare justification …, and strong evidence suggesting that the subpoena was issued for an improper purpose"), *motion to alter or amend judgment denied*, 2026 WL 1102159 (W.D. Wash. Apr. 23, 2026); *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2025 WL 3724705, at *2--*-*3 (W.D. Pa. Dec. 24, 2025) (holding subpoena "tramples the Commonwealth of Pennsylvania's power to police,

---

[7] *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children*, Off. of Pub. Affs., U.S. Dep't of Just.. (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical-.

[8] *President Trump Promised to End Child Sexual Mutilation—and He Delivered*, The White House (July 25, 2025), https://www.whitehouse.gov/releases/2025/07/president-trump-promised-to-end-child-sexual-mutilation-and-he-delivered/.

and legislate, matters of medical care"), *appeal docketed*, No. 26-1401 (3d Cir. Feb. 20, 2026); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, Misc. No. 25-mc-00063, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026) (report and recommendation) (concluding Children's Hospital Colorado subpoena was a "smokescreen" for ending transgender care); *In re Administrative Subpoena 25-1431-032 to Rhode Island Hospital*, No. 1:26-mc-0007-MSM-AEM, 2026 WL 1392565, at *8-10 (D.R.I. May 14, 2026) (quashing Rhode Island Hospital subpoena and collecting other decisions finding improper purpose), *appeal docketed*, No. 26-1568 (1st Cir. May 18, 2026).

35. DOJ responded to these unfavorable court decisions by accelerating its improper efforts to obtain PHI and expanding them to include criminal grand jury proceedings. InOne hospital in California, Children's Hospital of Los Angeles, moved to quash the HIPAA subpoena, but voluntarily dismissed the action after entering into a settlement agreement with DOJ. *See* No. 25-cv-11183-MWC-JDE, ECF No. 25-1 (C.D. Cal. Jan. 22, 2026). Under the terms of that agreement, DOJ averred that it was "not currently aware of information that would support the federal prosecution of parents or guardians who have sought and consented to receiving gender-related care for their children at Children's Hospital of Los Angeles." *Id.* at *2. The parties agreed to redacted medical records under the requirements of the HIPAA Privacy Rule, 45 C.F.R. § 164.514(b)(2)(i), and DOJ withdrew requests seeking patient identifying information, patient medical records, and records related to parental authorization and consent. *Id.* This agreement does not appear to apply to new subpoenas issued by a grand jury. *Id.* at *5.

25.36. Some hospitals decided to negotiate their productions, rather than move to quash. One such hospital, Rhode Island Hospital ("RIH"), was in the midst of months of ongoing negotiations with DOJ when, in late April 2026, DOJ filed a civil enforcement petition against Rhode Island Hospital in the Northern District of Texas, asserting that its investigation was "being carried out in the Northern District of Texas." Gov't Pet. to Enforce at 2, *In re Admin. Subpoena 25-1431-032*, No. 4:26-mc-00006 (N.D. Tex. Apr. 30, 2026). Within hours—and without notice to any affected patient—the Texas district court

granted the petition. Order, *id.* (N.D. Tex. Apr. 30, 2026) (ECF 2).

37.    ~~In~~ As revealed in this case, LPCH similarly negotiated, rather than moving to quash, the HIPAA subpoena it received in July 2025. Between August 2025 and May 2026, LPCH initiated a ~~parallel development, DOJ,~~ comprehensive search for responsive information and produced records in response to certain requests in the HIPAA subpoena. While LPCH did not produce any patient records, it was engaging in negotiations with DOJ regarding anonymization of those records and exploring the possibility of conducting those redactions. DOJ had indicated that it would accept anonymized records in the first ~~time since the start of its months-long campaign to target transgender youth and their medical providers, opened a criminal grand jury proceeding, also~~ instance. LPCH was exploring the possibility of this anonymization when, on May 6, 2026, the DOJ informed counsel for LPCH via email that DOJ was withdrawing LPCH's HIPAA subpoena "[e]ffective immediately."

38.    ~~in the Northern District of Texas. While the~~ On information and belief, DOJ Defendants initiated the investigation in the Northern District of Texas to ensure a favorable forum to enforce HIPAA subpoenas. When asked by the court in Rhode Island to explain the origins of the Texas investigations, "counsel for DOJ represented that the investigation began in Washington D.C. but could not specify when it transferred this investigation to the Northern District of Texas." *In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, No. 1:26-mc-0007, 2026 WL 1392565, at *3 (D.R.I. May 14, 2026).

**II.    DOJ Swaps Improper HIPAA Subpoenas for Grand Jury Subpoenas**

39.    In late April or early May 2026, DOJ opened a criminal grand jury investigation in the Northern District of Texas.

40.    ~~The~~ nature of any alleged criminal conduct under investigation is unknown, ~~a statement~~ but on information and belief, it is substantively similar or the same as the investigation underlying the HIPAA subpoenas.

41.    On May 6, 2026, the U.S. Attorney's Office in the Northern District of Texas issued ~~by~~ grand jury subpoenas to several hospitals.

[6016268.1]                                    10                     Case No. 5:26-cv-04998-PCP

26.42. NYU Langone Hospitals ("Langone") in New York City disclosed that on May 7, 2026,("Langone") was the first institution to disclose that it received a subpoena. It stated that it "was one of several institutions that received a grand jury subpoena from the U.S. Attorney's Office in the Northern District of Texas."[9] The statement included a copy of the subpoena. A copy of the Langone subpoena is attached to this Complaint as **Exhibit A. On information and belief, Stanford was one of the institutions that received a substantively identical grand jury subpoena.**

43.    On June 3, 2026, LPCH disclosed that it had received a substantively identical subpoena on May 7, 2026, a day after the abrupt rescinding of the HIPAA subpoena. A copy of the LPCH subpoena is attached to this Complaint as **Exhibit A**.

44.    On June 5, Mt. Sinai Hospital revealed that it, too, had received a grand jury subpoena calling for patient PHI.[10]

45.    On information and belief, other healthcare providers who provided pediatric transgender medical care in California received substantively identical grand jury subpoenas.

46.    The grand jury subpoenas issued to LangoneLPCH, and, on information and belief, other California healthcare providers, are hereinafter referred to Stanford,as the "Grand Jury Subpoenas."

27.47. The Grand Jury Subpoenas seek patient identifying information and PHI that is substantially similar to the information sought by the administrativeHIPAA subpoenas previously quashed by multiple district courts as lacking any proper investigative purpose. Specifically, the following demands from the LangoneLPCH subpoena directly seek identifying information and PHI:

- Subpoena specification 12 seeks "[d]ocuments sufficient to identify each

---

[9] *Information for NYU Langone Health Patients,* NYU Langone Health, https://nyulangone.org/public-notices/TYHPsubpoena.

[10] *See* Joseph Goldstein, *Trump Administration Investigating Gender Treatments at Mount Sinai,* N.Y. Times (June 5, 2026), https://www.nytimes.com/2026/06/05/nyregion/trump-administration-investigating-gender-treatments-at-mount-sinai.html.

[6016268.1]                                11                    Case No. 5:26-cv-04998-PCP
FIRST AMENDED COMPLAINT

patient who underwent Sex-Rejecting Procedures."

- Subpoena specification 13 seeks, for each patient so identified, "documents relating to the clinical indications, diagnoses, or assessments that formed the basis for providing Sex-Rejecting Procedures, including the prescribing of puberty blockers or hormones, and all documents relating to the Sex-Rejecting Procedures care provided to each patient identified in Subpoena specification 12 from initial consultation to the most recent treatment provided."

- Subpoena specification 14 seeks "[a]ll documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in Subpoena specification 12, *supra*, including any disclosures about off-label use (*i.e.*, uses not approved by the United States Food and Drug Administration) and potential risks of puberty blockers and/or hormones."

28.48. ~~The grand jury subpoenas issued to Langone, and, on information and belief, to Stanford,~~ The Grand Jury Subpoenas define "Sex-Rejecting Procedures" covered by the subpoenas to include "any medical, surgical, pharmaceutical, or clinical intervention provided to an individual under eighteen years of age that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's biological sex. These include, for example, puberty suppression, hormone administration, surgical intervention, voice modification interventions, or other medical or clinical services that are functionally integral to, preparatory for, or undertaken in furtherance of such interventions or procedures."

29.49. ~~The grand jury subpoenas issued to Langone, and, on information and belief, to Stanford,~~ The Grand Jury Subpoenas include a three-page "Notice Regarding Liability for Obstruction of Justice" detailing potential criminal liability these institutions may face

in connection with their response to the subpoenas.

50. On information and belief, the Grand Jury Subpoenas are substantively identical to those issued across the United States. The grand jury subpoenas received by LPCH and NYU Langone are so similar that both contain the *same* typo, a reference to "45 C.F.R., § 164.512 (f)(1(ii)(C)(1)-(3)," with no closing parenthesis after "1." *Compare* ECF 31-2 at 9, *with* ECF 1 at 32. (That citation in fact refers to HIPAA regulations concerning administrative subpoenas, rather than grand jury subpoenas, suggesting it was incorporated from the HIPAA subpoenas courts have invalidated. *See* 45 C.F.R., §§ 64.512(f)(1)(ii)(B)-(C).

**III.    Disclosure of This Information Is Harmful to Plaintiffs.**

30.51. The information sought by the ~~grand jury subpoenas issued to Langone, and, on information and belief, to Stanford,~~Grand Jury Subpoenas is among the most sensitive information a medical provider can possess. Plaintiffs' ~~Stanford~~and proposed class members' records contain patient-identifying information; information revealing Plaintiffs' and proposed class members' transgender status; diagnoses and assessments; information concerning puberty, physical development, fertility, sexuality, mental health, family dynamics, school experiences, and treatment decisions; records of ~~communications~~communications with physicians, mental health professionals, nurses, and other providers; and records concerning parental consent and family decision-making. Those records concern children and adolescents who disclosed intimate information to medical providers and mental-health professionals for the purpose of receiving health care, with the understanding that such information would remain confidential and would not be disclosed to the federal government.

31.52. Plaintiffs and ~~their parents~~proposed class members reasonably relied on their expectation of privacy and confidentiality within the doctor-patient relationship when seeking care ~~at Stanford.~~from their providers. Plaintiffs and proposed class members disclosed information to ~~Stanford~~providers solely for the purpose of receiving medical care, and they did so with the expectation that their information would be used for

treatment and shared only with providers involved in their care.

32.53. Plaintiffs and proposed class members and their parents did not consent to Stanford's their providers' disclosure of Plaintiffs' their patient-identifying medical records to the federal government, and Stanford their providers did not provide them with notice or an opportunity to be heard before the government obtained those records. Disclosure would seriously damage Plaintiffs' and proposed class members' trust in Stanford providers and in the medical system, chill Plaintiffs' their willingness to seek necessary care, and deter Plaintiffs them and other patients from speaking candidly with providers about sensitive medical, mental health, and other information necessary for diagnosis and treatment.

33.54. Disclosure would also expose Plaintiffs and proposed class members to serious and irreparable harm. Several minor Plaintiffs are not publicly known to be transgender, and disclosure of their records would risk involuntarily outing them to the government and potentially to others. The risk of harm is especially acute because the records concern minors; reveal stigmatizing and highly personal information about gender identity, medical treatment, mental health, puberty, sexuality, and family decision-making; and are sought in the context of a federal campaign that has publicly characterized charac-terized the medical care Plaintiffs and proposed class members received as "mutilation," "child abuse," and a "warped ideology." Plaintiffs and proposed class members fear harassment, discrimination, family separation or prosecution, damage to education and employment opportunities, loss of access to care, and physical and emotional harm. Redaction of obvious identifiers would not eliminate these risks because the details contained in Plaintiffs' and proposed class members' medical records—including age, dates and location of care, treatment history, providers, diagnoses, family circumstances, school information, employment information, and other contextual details—could still identify Plaintiffs them and their families.

34.55. By using its criminal investigation authority to compel Stanford LPCH and other California healthcare providers to produce Plaintiffs' constitutionally and class

members' constitutionally-protected identifying information and PHI, and by raising the specter of obstruction of justice charges should ~~Stanford~~they fail to comply to DOJ's satisfaction, DOJ is attempting to conscript ~~a~~ private, third-party ~~intermediary — Stanford~~intermediaries— LPCH and other health care providers—as its ~~agent~~agents in violating the constitutional and statutory rights of Plaintiffs and proposed class members. There is no legitimate constitutional or investigatory purpose for disclosure of the identifying information and PHI sought by the ~~grand jury subpoenas.~~Grand Jury Subpoenas. The Court should issue appropriate declaratory relief that disclosure to DOJ would violate Plaintiffs and putative class members' rights and promptly enjoin ~~Stanford~~DOJ from ~~complying with the grand jury subpoenas to the extent they would require disclosure of~~obtaining, and LPCH from producing, Plaintiffs' private information.

**CLASS ALLEGATIONS**

56.     Plaintiffs, on behalf of themselves and all similarly situated individuals, bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

57.     **Class Definition.** The proposed Class under Federal Rule of Civil Procedure 23(b)(2) for which Plaintiffs seek certification is defined as:

> All individuals who received any medical treatment for gender dysphoria, including any medical, surgical, pharmaceutical, or clinical intervention that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's birth sex, while they were under eighteen years of age, from January 1, 2020, through May 5, 2026, at a healthcare institution located in the State of California, including Lucile Salter Packard Children's Hospital at Stanford.

58.     **Subclass Definition.** Plaintiffs also propose and seek certification of a subclass (the "LPCH Subclass") under Federal Rule of Civil Procedure 23(b)(2) defined as follows:

> All individuals who received any medical treatment for gender dysphoria, including any medical, surgical, pharmaceutical, or clinical intervention that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's

asserted gender identity rather than the minor's birth sex, while they were under eighteen years of age, from January 1, 2020, through May 5, 2026, at Lucile Salter Packard Children's Hospital at Stanford.

59.    **Impracticability of joinder of all Class Members.** The proposed class and subclass are expected to be sufficiently numerous and geographically dispersed that joinder of all members is impracticable. On information and belief, at least ten hospitals in California, including LPCH, could have received a Grand Jury Subpoena. On information and belief, the number of class members is well over a thousand, and the number of subclass members is in the hundreds. The nature of this action also impacts the ability of claimants to institute individual suits given the confidentiality concerns at its center and putative class members' fears of being targeted by the DOJ Defendants.

60.    **Class Representatives.** Plaintiffs Z.A., Z.B., Z.C., Z.D., Z.E., Z.G., by and through their respective parents, and F.F. are members of the proposed class and subclass. Each Plaintiff is willing to serve as a class representative and act on behalf of others similarly situated to themselves. Each has committed to looking out for the interests of all class members and is unaware of any conflict of interest with any proposed class members.

61.    **Common Questions of Law and Fact.** This action requires a determination of whether disclosure to the government of the identifying information and PHI sought by the Grand Jury Subpoenas violates the Class's rights under the United States Constitution. Adjudication of these issues will in turn determine whether DOJ may seek the Class members' identifying information and PHI or be enjoined from receiving such information through the Grand Jury Subpoenas, and whether or to what extent LPCH may disclose such information to the government.

62.    **Separate suits would create risk of varying conduct requirements.** The prosecution of separate actions by proposed class members against DOJ and/or LPCH would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

63.    **Defendants' actions rest on grounds generally applicable to the relevant**

**class and the resulting legal violations can be remedied by unified relief**. By seeking, collecting, and/or disclosing the same identifying and sensitive health information for each class member, Defendants act on grounds generally applicable to the relevant class, rendering declaratory and injunctive relief appropriate respecting the entirety of the class for the particular claim. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

64.    **Venue.** This action can be most efficiently prosecuted as a class action in the Northern District of California, where Plaintiffs reside, where Plaintiffs and proposed class members received care, where LPCH and, on information and belief, other California healthcare providers that may have received subpoenas, reside and do business, and where the records at issue are kept.

65.    **Class Counsel.** Plaintiffs have retained experienced and competent class counsel. Plaintiffs are represented by the National Center for LGBTQ Rights ("NCLR"), GLBTQ Legal Advocates & Defenders ("GLAD Law"), Rosen Bien Galvan & Grunfeld LLP, and Lowell & Associates PLLC.  Each of these firms has extensive federal court experience, including as class counsel and putative class counsel in multiple cases. Proposed class counsel includes attorneys with decades of experience litigating on behalf of LGBTQ people, including regarding transgender people's access to healthcare.

**CLAIMS FOR RELIEF**

**COUNT I**

**United States Constitution, Amendment V**

**Denial of Due Process — Right to Informational Privacy**

**(By All Plaintiffs and Class Members against DOJ Defendants)**

35.66. Plaintiffs and proposed class members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

67.    The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," U.S. Const., amend. V, which includes a right to privacy.

[6016268.1]                     17                    Case No. 5:26-cv-04998-PCP
FIRST AMENDED COMPLAINT

36.68. The constitutional right to privacy encompasses the individual interest in avoiding disclosure of personal matters to the government. *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977).

37.69. The Ninth Circuit has expressly recognized that right and has applied it to compelled disclosures of medical information by health-care providers. *See, e.g., Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551–53 (9th Cir. 2004).

38.70. By purporting to compel production of documents sufficient to identify Plaintiffs and proposed class members and their PHI, the grand jury subpoena issued to Stanford seeksGrand Jury Subpoenas seek disclosure of information at the core of the interests protected by Plaintiffs' and class members' rights under the Fifth Amendment, including their transgender status, the comprehensive details of their medical and psychological conditions, evaluations, treatments, procedures, family relationships, counseling, diagnoses, and confidential communications with healthcare providers and other professionals.

71. The Grand Jury Subpoenas are not limited to information relevant to any specific transaction, event, or subject matter. They are a categorical demand for years of Plaintiffs' and proposed class members' most sensitive personal records, without disclosure of their purported relevance to any lawful or legitimate grand jury inquiry.

39.72. Plaintiffs and proposed class members had a well-founded and objectively reasonable expectation that this information would not be disclosed to the government absent judicial process affording Plaintiffsthem prior notice, an opportunity to be heard, and a particularized showing that the government's need for the specific information sought is sufficient to override Plaintiffs'their constitutional privacy interest.

73. The subpoena is not limited to DOJ Defendants have no compelling, important, legitimate, or even reasonable basis, for obtaining the requested PHI and information relevant to any specific transaction, event, or subject matter. It is a categorical demand for years of.

74. There is no legitimate governmental interest in the compelled disclosure of

Plaintiffs' and proposed class members' private information that is sufficient to override their constitutional right to informational privacy. Indeed, there is no legitimate constitutional or investigative purpose for disclosure of this information whatsoever.

75. ~~most~~The DOJ Defendants issued the Grand Jury Subpoenas for the improper purpose of seeking to end gender-affirming medical care—which states like California have chosen to provide and protect—through intimidation and abuse of the federal criminal process.

76. The DOJ Defendants issued the Grand Jury Subpoenas to prevent transgender people from expressing a gender identity different from their sex designated at birth—and expressing governmental disapproval of people who do so—which are not legitimate governmental interests under any standard of review.

77. The Grand Jury Subpoenas' request for the identifying and sensitive ~~personal records, without disclosure of its purported relevance to~~ health information of Plaintiffs and proposed class members is so arbitrary that it shocks the conscience.

78. The threatened disclosure of Plaintiffs' and proposed class members' private information constitutes an irreparable injury. Once production occurs, their privacy interest in the disclosed information will be permanently destroyed. No damages award can restore the constitutional rights that will have been extinguished.

79. The collection and nonconsensual disclosure of the Plaintiffs' PHI would erode the provider-patient relationship and discourage Plaintiffs and members of the proposed Class from seeking the healthcare they need, which will negatively impact their health and wellbeing.

80. The potential harm from the collection and nonconsensual disclosure of Plaintiffs' and putative class members' PHI is extraordinary, as the information is the exceedingly sensitive information on the health and wellbeing of children—information discussing healthcare that the government has sworn to end. Their interests in privacy in this information far outweigh any asserted interest by DOJ in receiving this information in a grand jury ~~inquiry. The subpoena contains no use limitations, no restrictions on further~~

[6016268.1]                              19                    Case No. 5:26-cv-04998-PCP
                                FIRST AMENDED COMPLAINT

~~disclosure of the information obtained, and~~ investigation.

81. There are no safeguards to protect Plaintiffs and the proposed class from the harm of such disclosure, nor would such safeguards prevent the harm to Plaintiffs and the proposed class.

82. The threatened disclosure of Plaintiffs' and proposed class members' private information constitutes an irreparable injury. Once production occurs, their privacy interest in the disclosed information will be permanently destroyed. No damages award can restore the constitutional rights that will have been extinguished.

83. Plaintiffs and proposed class members have no adequate remedy at law. The injury they seek to prevent is the disclosure itself—an injury that is by its nature incapable of monetary compensation after it has occurred.

84. Plaintiffs and proposed class members are therefore entitled to injunctive and declaratory relief barring disclosure of their identifying information or PHI in response to the Grand Jury Subpoenas or any substantially similar request from the DOJ Defendants.

85. Plaintiffs are entitled to a declaration that Grand Jury Subpoenas' request for their identifying and sensitive health information violates the right to informational privacy under the Due Process Clause of the Fifth Amendment.

**COUNT II**

**United States Constitution, Amendment V**

**Denial of Due Process - Right to Informational Privacy**

~~40.~~ **(By LPCH Subclass against ~~dissemination of the information beyond the grand jury itself.~~LPCH)**

86. Plaintiffs and proposed subclass members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

~~41.~~87. Although ~~Stanford~~LPCH is a private entity, its production of Plaintiffs' and proposed subclass members' information pursuant to the subpoena constitutes action under color of federal law. The subpoena is a legal command issued under the authority of a United States District Court and enforceable through its contempt power. Defendant

~~Stanford~~LPCH faces legal sanctions including criminal contempt, civil contempt, and substantial monetary sanctions if it fails to comply. ~~It~~On information and belief, LPCH has been subject to such extensive coercive power by the United States government that it retains no meaningful discretion to decline production. In addition, or in the alternative, and on information and belief, LPCH knowingly and willingly complied with an unlawful, unenforceable subpoena, knowing that it violated Plaintiffs' constitutional rights to do so. As such, ~~it~~LPCH is a governmental actor for purposes of the claims alleged in this Complaint.

~~42.~~88. Because the constitutional injury to Plaintiffs and proposed subclass members—the involuntary disclosure of constitutionally protected private information to the federal government set forth in paragraphs 67-82—flows directly and proximately from ~~Stanford's~~LPCH's government-compelled act of production, that act is fairly attributable to the United States~~.~~, and would violate their Fifth Amendment rights.

~~43.1.   There is no legitimate governmental interest in the compelled disclosure of Plaintiffs' private information that is sufficient to override Plaintiffs' constitutional right to informational privacy. Indeed, there is no legitimate constitutional or investigative purpose for disclosure of this information whatsoever.~~

~~44.1.   The threatened disclosure of Plaintiffs' private information constitutes an irreparable injury. Once production occurs, Plaintiffs' privacy interest in the disclosed information will be permanently destroyed. No damages award can restore the constitutional rights that will have been extinguished.~~

~~45.~~89. Plaintiffs and proposed subclass members have no adequate remedy at law. The injury ~~Plaintiffs~~they seek to prevent is the disclosure itself——an injury that is by its nature incapable of monetary compensation after it has occurred.

~~46.~~90. Plaintiffs and proposed subclass members are therefore entitled to injunctive and declaratory relief barring ~~Stanford~~LPCH from producing ~~Plaintiffs'~~their identifying information or PHI in response to the ~~grand jury~~ subpoena, or any future, substantively similar subpoenas.

**COUNT III**

~~**COUNT II**~~

**United States Constitution, Amendment IV**

**Unreasonable Search and Seizure**

**(By All Plaintiffs and Class Members against DOJ Defendants)**

~~47.~~91. Plaintiffs and proposed class members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

~~48.~~92. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

~~49.~~93. A grand jury subpoena issued to a third-party custodian of records is a form of government process that compels production of information to the federal government and constitutes a seizure of those records within the meaning of the Fourth Amendment. Although the Supreme Court held in *United States v. Miller*, 425 U.S. 435 (1976), that a person ordinarily lacks a cognizable Fourth Amendment interest in records voluntarily conveyed to a third party, the Court in *Carpenter v. United States*, 585 U.S. 296 (2018), recognized that the third-party doctrine does not apply categorically to all records held by third parties, and that its application must account for the nature, comprehensiveness, and intimacy of the information at issue.

~~50.~~94. *Carpenter* held that when the government compels production of a "detailed chronicle of a person's physical presence compiled every day, every moment, over several years," the act of production implicates the Fourth Amendment notwithstanding the fact that the records are held by a third party, because the person neither truly volunteers such information nor can reasonably avoid its collection. 585 U.S. at 315, 320.

~~51.~~95. The identifying information and PHI subject to the ~~subpoena~~subpoenas is precisely the kind of comprehensive, intimate, and involuntarily conveyed information that

*Formatted: Underline*

*Formatted: _Hdg Center Bold*

*Carpenter* places beyond the reach of the third-party doctrine. Plaintiffs' and proposed class members' medical records were not voluntarily disclosed to ~~Stanford~~their California healthcare providers in any meaningful constitutional sense. The provision of medical care requires disclosure of private information of the most intimate sort, and federal and state law impose on providers duties of collection, retention, and documentation that Plaintiffs and class members had no power to refuse or limit. Disclosure to a treating provider is not a free choice to expose one's medical information to the world or to the government.

~~52.~~96. The PHI at issue constitutes a deeply private and comprehensive record of Plaintiffs' and proposed class members' physical and psychological condition, including diagnoses, treatments, prescriptions, mental health history, reproductive health, genetic information, and communications made in confidence to treating physicians and health professionals. This information, taken in aggregate is a "detailed chronicle" of ~~Plaintiffs'~~their physical and mental health and medical history. The compelled production of such records to the federal government ~~without a warrant supported by probable cause~~ is constitutionally indistinguishable, in its degree of intrusion, from a physical search of Plaintiffs' and class members' homes or personal records. A person's complete medical history discloses the most private facts of human life——facts that the Constitution, federal and state law, and common understanding have always treated as among the most sensitive and highly protected. Just as the cell phone records in *Carpenter* were distinguished from the bank records in *Miller* by their comprehensiveness, intimacy, and the practical impossibility of avoiding their creation, Plaintiffs' and class members' medical records are distinguished from ordinary third-party business records by all of the same characteristics. No person can receive necessary medical care without creating such records, and no person can reasonably be said to have assumed the risk of government seizure merely by seeking treatment.

~~53.~~97. ~~Stanford holds~~ Plaintiffs' and proposed class members' healthcare providers hold their identifying information and PHI subject to express statutory and regulatory duties of confidentiality imposed by federal and state law, including the Health Insurance

Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 ("HIPAA"), and its implementing regulations, 45 C.F.R. Parts 160 and 164. These duties of confidentiality reinforce Plaintiffs' and class members' reasonable expectation of privacy in the information. The government's own statutory framework recognizes that health information of this character is not freely available and is not the kind of information a person is deemed to have surrendered to federal law enforcement officials.

54. Because Plaintiffs' identifying information and PHI held by Stanford is protected by the Fourth Amendment under the principles articulated in *Carpenter*, the federal government was required, before compelling its production, to obtain a warrant supported by probable cause, issued by a neutral and detached magistrate, and particularly describing the records to be seized.

55. The subpoena is not a warrant. It was not issued by a neutral magistrate. It is not supported by any showing of probable cause. It does not particularly describe the specific records to be seized, but instead demands categorical production of Plaintiffs' identifying information and PHI held by Stanford across a period of more than five years. It therefore does not satisfy the requirements of the Fourth Amendment's Warrant Clause.

56. Not only does the subpoena fail to comply with the Warrant Clause, it is also constitutionally unreasonable. It is unlimited in scope, unsupported by any particularized showing of relevance or need, directed at the most sensitive categories of personal information, and issued without any procedural mechanism affording Plaintiffs notice or an opportunity to be heard before the search is effected.

98. At all relevant times, Plaintiffs and proposed class members had and have a subjectively manifested and objectively reasonable expectation of privacy in the identifying information and PHI at issue. Plaintiffs and class members disclosed this information to their healthcare providers solely for the purpose of receiving medical care, under conditions of legally-protected professional confidentiality, and did not thereby assume any risk that the information would be seized and produced to the federal government absent a proper or lawful purpose.

99.    The compelled production of Plaintiffs' and proposed class members' identifying information and PHI pursuant to the subpoenas violates their rights under the Fourth Amendment.

100.    As a direct and proximate result of this violation, Plaintiffs and proposed class members suffer and will continue to suffer irreparable injury—the permanent and irremediable destruction of their privacy interest in the most intimate details of their physical and mental health and medical history. This injury is not compensable in damages and entitles them to injunctive and declaratory relief.

101.    Plaintiffs and proposed class members are therefore entitled to injunctive and declaratory relief barring disclosure of their identifying information or PHI in response to the grand jury subpoenas or any substantially similar request from the DOJ Defendants.

## COUNT IV

### United States Constitution, Amendment IV

### Unreasonable Search and Seizure

### (By LPCH Subclass against LPCH)

102.    Plaintiffs and proposed subclass members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

57.103.    Although StanfordLPCH is a private entity, its production of Plaintiffs' and proposed subclass members' information pursuant to the subpoena constitutes action under color of federal law. The subpoena is a legal command issued under the authority of a United States District Court and enforceable through its contempt power. Defendant StanfordLPCH faces legal sanctions including criminal contempt, civil contempt, and substantial monetary sanctions if it fails to comply. It retains no meaningful discretion to decline production. As suchFor the same reasons as asserted in paragraph 87, it is a governmental actor for purposes of the claims alleged in this Complaint.

58.104.    In the alternative, Stanford'sLPCH's act of producing Plaintiffs' and proposed subclass members' health records to the federal government, in response to a constitutionally defective subpoena and without interposing any challenge on

[6016268.1]                    25                Case No. 5:26-cv-04998-PCP

FIRST AMENDED COMPLAINT

Plaintiffs'their behalf, constitutes an unreasonable search and seizure of Plaintiffs' and subclass members' private records and information effected through private hands under government compulsion, in violation of the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989) (private party conducting search at government direction is state actor for Fourth Amendment purposes).

59.105.    At all relevant times, Plaintiffs and proposed subclass members had and have a subjectively manifested and objectively reasonable expectation of privacy in the identifying information and PHI at issue. Plaintiffs and subclass members disclosed this information to StanfordLPCH solely for the purpose of receiving medical care, under conditions of legally-protected professional confidentiality, and did not thereby assume any risk that the information would be seized and produced to the federal government in bulk, without notice, without a warrant, and without a particularized showing of needwithout proper purpose or lawful basis.

60.106.    The compelled production of Plaintiffs' and proposed subclass members' identifying information and PHI pursuant to the subpoena, absent a warrant supported by probable cause and particularly describing the records to be produced, violates Plaintiffs'their rights under the Fourth Amendment.

61.107.    As a direct and proximate result of this violation, Plaintiffs and proposed subclass members suffer and will continue to suffer irreparable injury—the permanent and irremediable destruction of Plaintiffs'their privacy interest in the most intimate details of their physical and mental health and medical history. This injury is not compensable in damages and entitles Plaintiffsthem to injunctive and declaratory relief.

62.108.    Plaintiffs and proposed subclass members are therefore entitled to injunctive and declaratory relief barring StanfordLPCH from producing Plaintiffs'their identifying information or PHI in response to the grand jury subpoena, absent the government's obtaining a valid warrant issued by a detached and neutral magistrate upon probable cause, supported by oath or affirmation, and particularly describing the records to be seized.

COUNT III

COUNT V

**United States Constitution, Amendment V**

**Denial of Equal Protection of the Laws**

**(By All Plaintiffs and Class Members against DOJ Defendants)**

63.109.    Plaintiffs and proposed class members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

64.110.    The Fifth Amendment's Due Process Clause prohibits the federal government from denying any person the equal protection of the laws. The constitutional guarantee of equal protection applies with full force to federal action, including federal investigative process directed at individuals on the basis of protected characteristics.

65.111.    The identifying information and PHI subject to the subpoenasubpoenas relate specifically and exclusively to Plaintiffs' and proposed class members' receipt of transgender medical care, including hormone therapy, puberty delaying medications, voice modification, mental health treatment, and any other treatments that are "functionally integral to, preparatory for, or undertaken in furtherance of" medical care undertaken "for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's biological sex." The subpoena doessubpoenas do not seek Plaintiffs' and class members' health records generally; it targetsthey target records pertaining specifically to transgender medical care.

66.112.    The subpoenasubpoenas thus singlessingle out Plaintiffs and proposed class members for compelled government disclosure of private medical information because they are transgender and have lawfully exercised their right to obtain medically necessary care that enables them to live consistently with their transgender identity.

67.113.    Government action that subjects individuals to differential treatment because they are transgender, or because they have obtained medical care associated with transgender identity, is sex-based discrimination subject to heightened scrutiny under the equal protection component of the Fifth Amendment.

Formatted: Underline

68.114.    Additionally, government action that subjects individuals to differential treatment because they are transgender, or because they have obtained medical care associated with transgender identity, constitutes discrimination against a quasi-suspect class that is subject to heightened scrutiny independent of the sex-discrimination framework. *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019).

69.115.    The subpoena issubpoenas are not a facially neutral instrumentinstruments of general law enforcement applied without regard to the identity of its targets. It isThey are directed specifically at records of transgender medical care received by Plaintiffs. and proposed class members. In targeting this specific category of medical treatment—treatment that is received exclusively or primarily by transgender individuals—the subpoena classifiessubpoenas classify on the basis of transgender status and thus on the basis of sex.

70.116.    The subpoena wassubpoenas were issued as part of an expressly-declared nationwide policy by the Trump Administration to target individuals who have received, provided, or facilitated access to pediatric transgender medical care. On information and belief, the government has not issued comparable subpoenas broadly seeking the private medical records of non-transgender individuals who have received identical or similar medical treatments—including hormone therapies, surgeries affecting sex characteristics, or mental health treatment.

71.117.    The government's selective targeting of medical records associated with transgender medical care, while not seeking comparable records associated with analogous medical treatment received by non-transgender individuals, constitutes facial, purposeful discrimination on the basis of sex and transgender status in violation of the equal protection component of the Fifth Amendment.

72.118.    Government action that discriminates based on sex or another quasi-suspect basis is subject to heightened scrutiny; in order to survive such scrutiny, it must be substantially related to an important government interest. *United States v. Virginia*, 518 U.S. 515, 533 (1996). To the extent strict scrutiny applies the government'sgovernment's

action must be narrowly tailored to serve a compelling government interest. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

119. The subpoenas cannot survive any level of equal protection scrutiny. The government has articulated no legitimate investigative purpose that is served by compelling disclosure of Plaintiffs' and proposed class members' private records that would not be equally served by means do not require wholesale seizure of their most private medical information. Even if there were a legitimate government interest in the subject matter of the underlying investigation, the targeting of Plaintiffs' and class members' identities and PHI relating to their transgender medical care is not substantially related — let alone narrowly tailored — to that interest, because the government has made no showing that these records are necessary or material to any legitimate investigative purpose.

120. The subpoena's targeting of transgender individuals' records reflects and perpetuates the Administration's repeatedly articulated view that transgender medical care is inherently suspect, immoral, or subject to special government scrutiny. It therefore is explicitly premised on constitutionally impermissible animus against transgender individuals. Government action motivated by animus toward a particular group cannot survive any level of heightened scrutiny. *United States v. Windsor*, 570 U.S. 744, 769–70 (2013); *Romer v. Evans*, 517 U.S. 620, 632 (1996).

121. The targeting of records of transgender medical care also burdens Plaintiffs' and proposed class members' exercise of constitutionally protected liberty interests — including the right to make intimate medical decisions, the right to bodily autonomy recognized in *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), and the right to define one's own identity and intimate life recognized in *Lawrence v. Texas*, 539 U.S. 558 (2003) and *Obergefell v. Hodges*, 576 U.S. 644 (2015) — which independently require that any government burden on those interests be narrowly tailored to a compelling interest.

122. The discriminatory purpose and effect of the subpoena is

independently established by the pattern of government action of which it is a part. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977) (discriminatory purpose may be established by circumstantial and direct evidence including departures from normal procedural sequences, historical background, and legislative or administrative history). The government's broader pattern of targeting transgender individuals and providers, recipients, and facilitators of transgender medical care through law enforcement and investigative process establishes that the targeting of Plaintiffs' and proposed class members' records is not coincidental or neutral but reflects a deliberate policy of subjecting transgender individuals and their healthcare providers to heightened government surveillance and investigation.

77. Although Stanford is a private entity, its production of Plaintiffs' information pursuant to the subpoena constitutes action under color of federal law. The subpoena is a legal command issued under the authority of a United States District Court and enforceable through its contempt power. Defendant Stanford faces legal sanctions including criminal contempt, civil contempt, and substantial monetary sanctions if it fails to comply. It retains no meaningful discretion to decline production. As such, it is a governmental actor for purposes of the claims alleged in this Complaint.

78.123. Plaintiffs and proposed class members will suffer irreparable injury if Stanford producestheir California healthcare providers produce the targeted identifying information and PHI. The compelled disclosure to the federal government of records specifically identified as records of transgender medical care—pursuant to a discriminatorily motivated subpoenasubpoenas and without any lawful justification— inflicts harm on Plaintiffs, chills their exercise of their constitutional rights, and permanently destroys Plaintiffs' privacy interest in information that the government has targeted for disclosure precisely because Plaintiffs are transgender. These injuries are not compensable in damages.

124. Plaintiffs and proposed class members are therefore entitled to injunctive and declaratory relief barring Stanford from producing Plaintiffs' disclosure of their identifying

[6016268.1]                                    30                    Case No. 5:26-cv-04998-PCP
FIRST AMENDED COMPLAINT

information or PHI in response to the grand jury subpoenas or any substantially similar request from the DOJ Defendants.

## COUNT VI

### United States Constitution, Amendment V

### Denial of Equal Protection of the Laws

### (By LPCH Subclass against LPCH)

125. Plaintiffs and proposed subclass members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

79.126. Although LPCH is a private entity, its production of Plaintiffs' and proposed subclass members' information pursuant to the subpoena constitutes action under color of federal law, as set forth in paragraph 87.

127. For the reasons set forth in paragraphs 110-23, LPCH's production of Plaintiffs' and propose subclass members' information pursuant to the subpoena constitutes a violation of their Fifth Amendment rights to equal protection under the laws.

128. Plaintiffs and proposed subclass members will suffer irreparable injury if LPCH produces the targeted identifying information and PHI. The compelled disclosure to the federal government of records specifically identified as records of transgender medical care—pursuant to a discriminatorily motivated subpoena and without any lawful justification—inflicts harm on Plaintiffs, chills their exercise of their constitutional rights, and permanently destroys Plaintiffs' and proposed subclass members' privacy interest in information that the government has targeted for disclosure precisely because they are transgender. These injuries are not compensable in damages.

129. Plaintiffs and proposed subclass members are therefore entitled to injunctive and declaratory relief barring LPCH from producing their identifying information or PHI in response to the grand jury subpoena.

## COUNT VII

### United States Constitution, Amendment I

### Violation of the First Amendment Right to Speech

### (By All Plaintiffs and Class Members against DOJ Defendants)

130.   Plaintiffs and proposed class members reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

131.   Free and open communications between medical providers, patients, and their families is protected by the First Amendment. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 771 (2018); *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002).

132.   A First Amendment violation exists where "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

133.   The issuance of far-reaching subpoenas, like the Grand Jury Subpoenas, can violate the First Amendment, in part through chilling the speech of their targets. *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114, (2026).

134.   Plaintiffs have standing to enjoin violations of their First Amendment rights as recipients of protected speech, including the protected speech of doctors and other healthcare professionals. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("[W]here a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both.").

135.   The Grand Jury Subpoenas seek information containing, summarizing, or discussing the verbal communications between doctors and healthcare providers with Plaintiffs and members of the proposed class.

136.   These communications embody the candor and honesty that the First Amendment seeks to protect in doctor-patient communications and include highly personal and sensitive information.

137.   By requiring disclosure of the communications and the identities of the

speakers and listeners, the Grand Jury Subpoena encourage Plaintiffs, members of the proposed class, and their healthcare providers to cease or modify protected First Amendment communications, both at LPCH and at any other healthcare provider, out of fear of disclosure of those communications, their identities, or their viewpoints, to the government.

138.    The issuance of the Grand Jury Subpoenas has chilled and silenced the protected communications of Plaintiffs and proposed class members, in their communications with their medical providers, and would do so for an individual of ordinary firmness.

139.    Disclosure of their sensitive information in response to the Grand Jury Subpoenas would chill and silence the protected communications of Plaintiffs and proposed class members, in their communications with their medical providers, and would do so for an individual of ordinary firmness.

140.    Moreover, the issuance of the Grand Jury Subpoenas, and any disclosures in response to its requests regarding patient information and communications, on information and belief, have chilled and silenced the protected communications of doctors and healthcare providers that speak to Plaintiffs and proposed class members, and would do the same to doctors and healthcare providers of ordinary firmness.

141.    In addition, the Grand Jury Subpoenas are viewpoint discriminatory in violation of the First Amendment. The subpoenas' definition of "Sex Rejecting Procedures" includes medical procedures only when they have the "purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's biological sex." Whether communications fall within the subpoenas' scope thus depends on whether the minor "assert[s]" a "gender identity" that differs from their "biological sex," or a providers' viewpoint on this issue. The subpoenas are clear that an "intervention is considered a Sex-Rejecting Procedure based on its intended purpose." *Id.* Two identical prescriptions can be treated differently under the subpoena based entirely on the patient's and the doctor's viewpoint about potential differences between gender and sex.

142.    These subpoenas are forms of compulsory process include a "threat of legal sanctions" and "prior restraints," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180 (2024), seeking to suppress the viewpoints of doctors, providers, and other healthcare professionals that espouse viewpoints on pediatric transgender healthcare that are contrary to the position of DOJ and the Administration.

143.    DOJ Defendants have been clear that their intention is "to achieve the suppression," *id.* at 202, of this viewpoint.

144.    Because DOJ's actions constitute viewpoint discrimination, strict scrutiny applies. *See Reed v. Town of Gilbert*, 576 U.S. 155, 168-71 (2015). The Grand Jury Subpoenas fail under this exacting standard, as they are not "narrowly tailored to serve compelling state interests." *Id.* at 163. DOJ cannot have a compelling interest in the suppression of viewpoints with which the government disagrees, nor in issuing a subpoena for an improper purpose.

145.    Plaintiffs and proposed class members will suffer irreparable injury if the targeted identifying information, PHI, and communications are disclosed. The compelled disclosure to the federal government of records specifically identified as records of transgender medical care—pursuant to a discriminatorily motivated subpoena and without any lawful justification—inflicts harm on Plaintiffs, chills their exercise of their constitutional rights, and permanently destroys Plaintiffs' privacy interest in information that the government has targeted for disclosure precisely because Plaintiffs are transgender. These injuries are not compensable in damages.

146.    Plaintiffs and proposed class members are therefore entitled to injunctive and declaratory relief barring DOJ from requesting or receiving their identifying information or PHI in response to the grand jury subpoena.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and against Defendant StanfordLPCH, and grant the following relief:

1.    A temporary restraining order, preliminary injunction, and permanent

injunction enjoining StanfordDefendants and all persons acting in concert with it or on itstheir behalf, from requesting, obtaining, receiving, producing, transmitting, disclosing, or otherwise making available to the United States, the Department of Justice, the grand jury sitting in the United States District Court for the Northern District of Texas, or any agent or representative of any of these entities, any records, documents, or information responsive, on information and belief, to specifications 12-14 of the grand jury subpoena issued to LPCH or any substantially similar subpoena issued to any California health care provider, or otherwise providing Plaintiffs' identifying information or protected health information to any of these persons or entities;

2.    A temporary restraining order, preliminary injunction, and permanent injunction maintaining the status quo with respect to all records and information responsive to the grand jury subpoena issued to LPCH or any substantially similar subpoena issued to any California health care provider that contain Plaintiffs' identifying information or protected health information, including by requiring StanfordLPCH to preserve all such records in their current form and to refrain from altering, destroying, or transferring them to any party.

3.    A declaratory judgment, pursuant to 28 U.S.C. §§ 2201—2202 and Federal Rule of Civil Procedure 57:

a.    Declaring that Plaintiffs and class members have a constitutionally protected right to informational privacy under the Fifth Amendment in the identifying information and protected health information subject to the grand jury subpoenaGrand Jury Subpoenas, and that compelled disclosure of such information to the federal government necessity violates that right;

b.    Declaring that Plaintiffs and class members have a reasonable expectation of privacy protected by the Fourth Amendment in the identifying information and protected health information subject to the grand jury subpoena and that the government is required to obtain

~~a warrant issued by a detached and neutral magistrate upon probable cause, supported by oath or affirmation, and particularly describing the records to be seized before compelling their production~~Grand Jury Subpoenas;

    c.    Declaring that the ~~grand jury subpoena~~Grand Jury Subpoenas, as issued and as applied to Plaintiffs' and class members' identifying information and protected health information relating to transgender medical care, constitutes discrimination on the basis of sex and transgender status in violation of the equal protection component of the Fifth Amendment's Due Process Clause and has no lawful justification that survives constitutional scrutiny;

    d.    Declaring that ~~Stanford's~~compelled disclosure of Plaintiffs' and class members' identifying information and protected health information to the federal government in response to the Grand Jury Subpoenas violates their rights under the First Amendment;

    ~~d.~~e.    Declaring that LPCH's production of Plaintiffs' and the LPCH Subclass's records responsive to the grand jury subpoena, under government compulsion, would constitute action under color of federal law fairly attributable to the United States, and would render ~~Stanford~~LPCH a state actor and participant in the constitutional violations alleged herein; and

    ~~e.~~f.    Declaring that any records or information obtained by the United States through enforcement of the ~~grand jury subpoena~~Grand Jury Subpoenas, or through any alternative process issued in furtherance of the same discriminatorily motivated investigative program, may not be used in any criminal, civil, or administrative proceeding against Plaintiffs or class members or any third party who provided or participated in ~~Plaintiffs'~~their transgender medical care;

4.    Award PlaintiffPlaintiffs and class members reasonable attorneys' fees and litigation costs.

///

///

5.    Grant such other and further relief as this Court deems just, equitable, and proper, including any relief necessary to remedy the constitutional violations alleged herein and to prevent their recurrence.

DATED:  May 27June 8, 2026          Respectfully submitted,

NATIONAL CENTER FOR LGBTQ RIGHTS
GLBTQ LEGAL ADVOCATES & DEFENDERS (GLAD LAW)
ROSEN BIEN GALVAN & GRUNFELD LLP
LOWELL & ASSOCIATES PLLC

By:  /s/ Kara J. Janssen
     Kara J. Janssen

Attorneys for Plaintiffs