SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street #11548
Sacramento, California  94102
Telephone: (415) 392-6257
Email:      sminter@nclrights.org
            cstoll@nclrights.org
            awhelan@nclrights.org
            rberg@nclrights.org

ABBE DAVID LOWELL (*pro hac vice*)
CALEB HAYES-DEATS (*pro hac vice*)
SCHUYLER STANDLEY (*pro hac vice*)
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Telephone:   (202) 964-6110
Facsimile:   (202) 964-6116
Email:
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com

Attorneys for Plaintiffs

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:         ggrunfeld@rbgg.com
              kjanssen@rbgg.com

JOSHUA ROVENGER (*pro hac vice*)
DONOVAN BENDANA (*pro hac vice*)
GLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts  02108
Telephone: (617) 426-1350
Email:      jrovenger@gladlaw.org
            dbendana@gladlaw.org

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

Z.A., a minor, by and through their parent, A.A.; Z.B., a minor, by and through their parent, B.B.; Z.C., a minor, by and through their parent, C.C.; Z.D., a minor, by and through their parent, D.D.; Z.E., a minor, by and through their parent, E.E.; F.F; Z.G., a minor, by and through their parents, G.G. and A.G.,on behalf of themselves and all those similarly situated,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; U.S. DEPARTMENT OF JUSTICE; and LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, a California nonprofit public benefit corporation,

Defendants.

Case No. 5:26-cv-04998

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION**

Assigned to: Hon. P. Casey Pitts

Case No. 5:26-cv-04998

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

    I.     The Proposed Class and LPCH Subclass Satisfy Rule 23(a). .......................................... 5

        A.   Numerosity .............................................................................................................. 5

        B.   Commonality ........................................................................................................... 7

        C.   Typicality .............................................................................................................. 10

        D.   Adequacy .............................................................................................................. 11

    II.    The Proposed Class and LPCH Subclass Satisfy Rule 23(b)(2). .................................. 13

    III.   In the Alternative, Certification Is Proper Under Rule 23(b)(1)(A). ............................ 16

    IV.   The Court Should Provisionally Certify the Class and LPCH Subclass
        Now to Preserve Effective Relief. ............................................................................... 17

CONCLUSION ..................................................................................................................... 18

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hawaii State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) ............................................................................................. 6, 7, 8

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ................................................................................................... 4

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................... 15, 19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ............................................................................................. 10, 13

*Arnott v. U.S. Citizenship & Immigration Servs.*,
290 F.R.D. 579 (C.D. Cal. 2012) ............................................................................................ 7

*B.K. ex rel. Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ................................................................................................. 17

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ................................................................................................. 17, 19

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
317 F.R.D. 91 (N.D. Cal. 2016) .............................................................................................. 7

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................................................................... 5, 9, 14

*Evon v. Law Offs. of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ............................................................................................... 14

*Gilbert v. MoneyMutual, LLC*,
318 F.R.D. 614 (N.D. Cal. 2016) ............................................................................................ 7

*Gonzalez v. ICE*,
975 F.3d 788 (9th Cir. 2020) ................................................................................................... 9

*Gray v. County of Riverside*,
No. 13-cv-444, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ................................................. 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 9, 12, 13

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ............................................................................................. 12, 15

*In re 2025 UPMC Subpoena*,
No. 2:25-mc-01069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) ........................................... 3

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

*In re Admin. Subpoena No. 25-1431-019*,
   800 F. Supp. 3d 229 (D. Mass. 2025) ............................................................................... 2

*In re CNH Subpoena*,
   No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026) ........................................ 2

*In re iPhone 4S Consumer Litig.*,
   No. 12-cv-1127, 2012 WL 12960637 (N.D. Cal. July 5, 2012) ..................................... 15

*In re Subpoena Duces Tecum No. 25-1431-016*,
   No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) ........................... 3

*In re Subpoena No. 25-1431-014*,
   810 F. Supp. 3d 555 (E.D. Pa. 2025) ............................................................................... 3

*In re Subpoena*, No. 1:26-mc-0007,
   2026 WL 1392565 (D.R.I. May 14, 2026) ...................................................................... 3

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ......................................................................................... 9

*Johnson v. California*,
   543 U.S. 499 (2005) ...................................................................................................... 10

*Kincaid v. City of Fresno*,
   244 F.R.D. 597 (E.D. Cal. 2007) .................................................................................... 7

*Kingdom v. Trump*,
   No. 1:25-cv-691, 2025 WL 1568238 (D.D.C. June 3, 2025) ....................................... 10

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ....................................................................................... 15

*Lyon v. U.S. Immigr. & Customs Enf't*,
   308 F.R.D. 203 (N.D. Cal. 2015) .............................................................................. 17, 18

*Mercado v. Noem*,
   800 F.Supp. 3d 526 (S.D.N.Y. Sept. 17, 2025) .............................................................. 4

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ......................................................................................... 9

*Nat'l TPS All. v. Noem*,
   No. 25-cv-05687-TLT, 2025 WL 4110426, at *11 (N.D. Cal. Oct. 2, 2025)................... 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ........................................................................................... 4

*Orr v. Trump*,
   786 F. Supp. 3d 397 (D. Mass. 2025) ........................................................................... 10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

*Pablo Sequen v. Albarran*,
    810 F. Supp. 3d 1084 (N.D. Cal. 2025) .................................................................................. 4

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ......................................................................................... *passim*

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
    807 F. Supp. 3d 1295 (W.D. Wash. 2025)............................................................................. 2

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...................................................................................... *passim*

*Rosas v. Baca*,
    No. 12-cv-428, 2012 WL 2061694 (C.D. Cal. June 7, 2012)...................................................... 10

*Sali v. Corona Reg'l Med. Ctr.*,
    909 F.3d 996 (9th Cir. 2018) ..................................................................................... 14

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) .......................................................................... 7, 17

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) .................................................................................. 12

*Schwartz v. Upper Deck Co.*,
    183 F.R.D. 672, (S.D.Cal.1999) .................................................................................. 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................... 14

*Villalpando v. Exel Direct Inc.*,
    303 F.R.D. 588 (N.D. Cal. 2014)................................................................................... 6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................ *passim*

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ............................................................................ 10, 15, 17

**Treatises**

7AA Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1773 (3d ed.) ......................................................... 16

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

**INTRODUCTION**

This case concerns the Department of Justice's ("DOJ") attempt to obtain the identities and deeply sensitive medical records of transgender minors and young adults who received transgender-related medical care in California. DOJ first sought this same category of patient-identifying information and protected health information ("PHI") through civil administrative subpoenas, under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA subpoenas"), that courts across the country rejected as improper, overbroad, and unsupported by a legitimate investigative purpose. DOJ has now shifted to grand jury subpoenas seeking the same information from hospitals across the country, including Lucile Salter Packard Children's Hospital at Stanford ("LPCH") and, on information and belief, other California providers ("Grand Jury Subpoenas").

Plaintiffs are a group of minors, their parents, and former minor patients of LPCH whose highly sensitive personal information is at risk from disclosure in response to the patently unlawful Grand Jury Subpoenas. DOJ has requested records sufficient to identify *every* patient who received the targeted care during a period of six years, together with clinical indications, diagnoses, assessments, treatment records, informed-consent materials, patient-intake records, and parent or guardian authorization materials.

This Court has already recognized the seriousness of the threatened harm. In denying Plaintiffs' prior motion without prejudice, the Court explained that there is "no doubt" Plaintiffs face "a serious risk of harm" from disclosure of private health information concerning care that "every major medical association recognizes as necessary . . . for transgender minors when medically indicated." ECF No. 40 at 1-2. The Court also recognized that the LPCH subpoena is "part of a wider campaign to investigate medical centers across the nation in an effort to chill, if not completely halt, their provision of gender-affirming care to minors." *Id.* at 1. The Court denied relief only because DOJ was not then a party before the Court and because the record did not establish that LPCH's conduct was fairly attributable to the government. *Id.* at 2, 9-16. The Court expressly denied relief without prejudice to a renewed motion "in the event of materially changed facts or further development of the record." *Id.* at 16. Plaintiffs have now amended their complaint

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION

to add DOJ and the Acting Attorney General as defendants. They seek provisional certification so that any preliminary injunction protects the full group of patients whose constitutional privacy rights are threatened by the virtually identical subpoenas. The threatened injury from this disclosure is classwide, imminent, and irreversible. Rule 23(b)(2) is designed for precisely this kind of case: Defendants have acted on grounds generally applicable to the class and subclass. The legality of DOJ's demand, and the constitutionality of disclosing these records, can be resolved through common answers applicable to the class and subclass as a whole, and a single injunction or declaration can protect all members from the same threatened disclosure. Plaintiffs therefore respectfully request provisional certification of the class and subclass for purposes of preliminary injunctive and declaratory relief.

**BACKGROUND**

The federal government has expressly announced a policy to end pediatric transgender medical care. Executive Order 14187 declared that the United States would not "fund, sponsor, promote, assist, or support" such care and directed federal agencies, including DOJ, to take enforcement action against it. 90 Fed. Reg. 8771 (Feb. 3, 2025). DOJ then issued more than twenty HIPAA subpoenas to providers across the country seeking patient-identifying information and PHI related to transgender healthcare. Courts repeatedly rejected those HIPAA subpoenas as improper, overbroad, and unsupported by a legitimate investigative purpose. *See In re CNH Subpoena*, No. 1:25-cv-03780, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026) (quashing subpoena for improper purpose); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025) (quashing Boston Children's Hospital subpoena as issued for an improper purpose and "virtually unlimited in scope"), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303-04 (W.D. Wash. 2025) (quashing subpoena for improper purpose because DOJ "issued the subpoena first and searched for a justification second"), *appeal argued*, No. 25-7384 (9th Cir. Mar. 6, 2026); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 578-81, 588-607 (E.D. Pa. 2025) (striking requests to Children's Hospital of Philadelphia ("CHOP") seeking patients' identities and medical data as beyond statutory authority and outweighed by minors' privacy interests); *In re Subpoena Duces*

2             Case No. 5:26-cv-04998

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

*Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *13 (W.D. Wash. Sept. 3, 2025) (rejecting enforcement of Seattle Children's Hospital subpoena based on "DOJ's threadbare justification . . . , and strong evidence suggesting that the subpoena was issued for an improper purpose"); *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069, 2025 WL 3724705, at *2-3 (W.D. Pa. Dec. 24, 2025) (granting patient movants' request for relief), *appeal docketed*, No. 26-1401 (3d Cir. Feb. 20, 2026); *In re Subpoena*, No. 1:26-mc-0007, 2026 WL 1392565, at *8-10 (D.R.I. May 14, 2026) (quashing Rhode Island Hospital subpoena and collecting other decisions finding improper purpose), *appeal docketed*, No. 26-1568 (1st Cir. May 18, 2026).

DOJ then shifted tactics. It began issuing grand jury subpoenas from the Northern District of Texas seeking the same patient-identifying information and PHI. LPCH received one such subpoena. ECF 41 ¶ 43. On information and belief, DOJ has issued similar subpoenas to other California providers. *Id.* ¶ 45. The Grand Jury Subpoenas demand documents sufficient to identify patients who received the targeted care, along with clinical indications, diagnoses, assessments, treatment records, informed-consent materials, intake documents, and parent or guardian authorization materials.

The records at issue are among the most sensitive records a medical provider can hold. They reveal class members' transgender status, diagnoses, treatment histories, mental-health information, puberty and development-related information, family decision-making, and confidential communications with physicians and mental-health professionals. Many proposed class members are minors. Many are not publicly known to be transgender.

## LEGAL STANDARD

"Courts routinely grant provisional class certification for purposes of entering injunctive relief prior to a final ruling on class certification." *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1121 (N.D. Cal. 2025); *see Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) (noting that the Ninth Circuit has "approved provisional class certification for purposes of preliminary injunction proceedings").

Plaintiffs seeking provisional class certification must satisfy Federal Rule of Civil Procedure 23. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651,

3                                                                    Case No. 5:26-cv-04998

663 (9th Cir. 2022) (en banc). Provisional certification indicates that "the certification will dissolve [with] the injunction," but still requires a fulsome Rule 23 analysis. *Pablo Sequen*, 810 F. Supp. 3d at 1121 (quoting *Mercado v. Noem*, 800 F.Supp. 3d 526, 559 (S.D.N.Y. Sept. 17, 2025)).

Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs must also satisfy one subsection of Rule 23(b). *See id.* Plaintiffs seek certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[1] In the alternative, Plaintiffs seek certification under Rule 23(b)(1)(A), which applies where separate actions would create a risk of "inconsistent or varying adjudications" that would establish "incompatible standards of conduct" for Defendants. Fed. R. Civ. P. 23(b)(1)(A). Although the Rule 23 analysis may overlap with the merits, the Court need not make final decisions on the merits to provisionally certify the Class and Subclass. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981-82 (9th Cir. 2011) (district court must conduct a "rigorous analysis" but may consider merits only as necessary to decide Rule 23 requirements). Here, the Court need not finally decide whether DOJ's subpoenas and any subsequent disclosure of sensitive medical records violate Plaintiffs' constitutional rights to provisionally certify the Class and LPCH Subclass.

**ARGUMENT**

Plaintiffs satisfy Rule 23(a), Rule 23(b)(2), and, in the alternative, Rule 23(b)(1)(A). This case presents a common course of government conduct: DOJ's effort to obtain the identities and PHI of transgender minors and young adults who received the same category of medical care during the same period. It presents common legal questions: whether DOJ may constitutionally seek, receive, use, retain, or disseminate those records and whether LPCH or other healthcare entities in California that received materially identical requests may produce those records. And it

---

[1] "[C]ourts in the Ninth Circuit have concluded that the implied ascertainability requirement does not apply to Rule 23(b)(2) classes." *Nat'l TPS All. v. Noem*, No. 25-cv-05687-TLT, 2025 WL 4110426, at *11 (N.D. Cal. Oct. 2, 2025).

4                                                      Case No. 5:26-cv-04998

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

presents a common remedy: an injunction preventing DOJ from obtaining, using, retaining, or disseminating class members' patient-identifying information and PHI. For these reasons, Plaintiffs respectfully request provisional certification of the following Class:

> All individuals who received any medical treatment for gender dysphoria, including any medical, surgical, pharmaceutical, or clinical intervention that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's birth sex, while they were under eighteen years of age, from January 1, 2020, through May 5, 2026, at a healthcare institution located in the State of California, including Lucile Salter Packard Children's Hospital at Stanford.

Plaintiffs also request provisional certification of the following LPCH Subclass:

> All individuals who received any medical treatment for gender dysphoria, including any medical, surgical, pharmaceutical, or clinical intervention that is intended or reasonably expected to suppress, alter, or eliminate endogenous pubertal development, or to modify primary or secondary sex characteristics, for the purpose of aligning with or affirming a minor's asserted gender identity rather than the minor's birth sex, while they were under eighteen years of age, from January 1, 2020, through May 5, 2026, at Lucile Salter Packard Children's Hospital at Stanford.

Classwide relief is necessary because Defendants' conduct threatens all members in the same way. DOJ seeks the same categories of records for the same class of patients through the same subpoena campaign. LPCH holds and may produce records for the LPCH Subclass in response to that campaign. The legal questions are common, the threatened harm is common, and the requested relief is the same for everyone.

## I.  The Proposed Class and LPCH Subclass Satisfy Rule 23(a).

### A.  Numerosity

Plaintiffs have satisfied the requirement that their proposed classes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Ninth Circuit, a proposed class meets this requirement where "joinder of all class members is not reasonably capable of being accomplished because it would impose very substantial logistical burdens for little, if any, benefit." *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022) (internal quotation marks omitted). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *accord Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016) (explaining that joinder has

been deemed impracticable in cases involving as few as 25 class members).

Plaintiffs need not identify every class member or prove the exact class size at this stage. They need only "'show some evidence of or reasonably estimate the number of class members.'" *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007) (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D.Cal.1999)). And where, as here, Plaintiffs seek declaratory and injunctive relief, "'the numerosity requirement is relaxed and plaintiffs may rely on reasonable inferences arising from plaintiffs' other evidence that the number of unknown and future members is sufficient to make joinder impracticable.'" *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016) (quoting *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. 2012)) (cleaned up); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017), *aff'd*, 867 F.3d 1093 (9th Cir. 2017). Indeed, where the class seeks only prospective injunctive and declaratory relief, "the practical value of joining each of the [numerous] class members as a formal party is slim to non-existent and is plainly outweighed by the substantial logistical burdens that would entail." *Haw. State Dep't of Educ.*, 30 F.4th at 837.

Numerosity is satisfied here. On information and belief, at least ten hospitals in California, including LPCH, could have received a Grand Jury Subpoena. *See* Am. Compl. ¶ 59. Given that the number of patients' records sought in the HIPAA subpoena sent to Children's Hospital Los Angeles numbered in the thousands, Plaintiffs estimate that the proposed class will include at least a thousand individuals, and the subclass include at least one hundred.[2] The subpoena itself confirms the breadth of the threatened disclosure: it demands documents sufficient to identify all patients who received the targeted care from January 1, 2020, through May 5, 2026, together with their clinical indications, diagnoses, assessments, treatment records, informed-consent materials, intake documents, and parent or guardian authorization materials. That categorical demand supports the reasonable inference that the Class and LPCH Subclass are sufficiently numerous. And to the extent the Class includes individuals whose records may be sought through similar

---

[2] Ana B. Ibarra, *Feds drop effort to get trans patients' records from LA children's hospital*, Cal Matters (Jan. 24, 2026), https://calmatters.org/health/2026/01/childrens-hospital-transgender-patients-california/

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION

subpoenas, the fluid or evolving nature of class membership further supports numerosity. *See Haw. State Dep't of Educ.*, 30 F.4th at 838 ("[W]hen . . . a class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable.").

Joinder is also impracticable because of the circumstances of this case. Class members are minors, parents, and young adults whose claims concern transgender status, highly sensitive medical information, family decision-making, and fear of government targeting. Many class members are not publicly known to be transgender. Because transgender individuals face heightened risks of harassment and discrimination, many class members would understandably be reluctant to join a lawsuit that could reveal their transgender status or medical history. Requiring each patient or family to file an individual lawsuit would impose precisely the privacy burden this action seeks to prevent. Courts recognize that practical barriers to individual litigation—including the vulnerability of class members, limited ability to sue individually, and the sensitive nature of the claims—support numerosity. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010). Moreover, without class certification, many class members would be unable to adjudicate their claims before their records are disclosed—rendering their individual claims effectively moot before any court could rule. *See id.* (noting that class treatment is often "necessary to provide the remedy sought" where individual claims would become moot before resolution). The confidentiality concerns at the heart of this case therefore strongly support certification. The numerosity requirement is satisfied.

### B.    Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is construed permissively. *Ellis*, 657 F.3d at 981. "Even a single common question" will suffice. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). The relevant question is whether the proceeding can generate a common answer "apt to drive the resolution of the litigation." *Id.* at 350. "All questions of fact and law need not be common to satisfy the commonality requirement," *Gonzalez v. ICE*, 975 F.3d 788, 807 (9th Cir. 2020) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)

7                                                        Case No. 5:26-cv-04998

(cleaned up)), as shared legal issues with divergent factual predicates are enough. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same).

Commonality is readily satisfied where plaintiffs challenge government policies, practices, or courses of conduct that affect all class members. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (commonality satisfied where plaintiffs challenged systemwide policies and practices), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014) (finding that "'where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members,'" individual factual differences "'pose no obstacle to commonality.'" (quoting *Rosas v. Baca*, No. 12-cv-428, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012)); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (class treatment appropriate where common allegation was that INS procedures provided insufficient notice). Commonality does not require that class members "share every fact in common or completely identical legal issues"; it "asks us to look only for some shared legal issue or a common core of facts." *Rodriguez*, 591 F.3d at 1122. Courts have routinely found the commonality requirement satisfied where a proposed class seeks to challenge governmental policies that discriminate against transgender individuals. *See, e.g.*, *Orr v. Trump*, 786 F. Supp. 3d 397 (D. Mass. 2025); *Kingdom v. Trump*, No. 1:25-cv-691, 2025 WL 1568238 (D.D.C. June 3, 2025).

The commonality requirement is satisfied here. Plaintiffs and proposed class members are subject to the same challenged course of conduct: DOJ's demand for patient-identifying information and PHI concerning transgender minors and young adults who received transgender medical care, and for the LPCH Subclass, DOJ's threatened acquisition of that information from LPCH. The Grand Jury Subpoenas seek the same categories of records from the same defined group of patients, for the same asserted investigative purpose, as part of the same federal campaign. That is enough to create common questions whose answers will drive resolution of the litigation. Even for the purposes of preliminary relief, those questions include:

- Whether DOJ's demand for class members' identifying information and PHI violates the

Fifth Amendment right to informational privacy;

- Whether DOJ's subpoenas burden class members' First Amendment rights to seek medical care, communicate with providers, and associate with others in connection with that care;

- Whether DOJ has any legitimate, particularized need for class members' identities and full medical records sufficient to outweigh their constitutional privacy interests;

- Whether grand jury secrecy, anonymization, or other asserted safeguards are adequate to protect class members' rights; and

- Whether classwide declaratory and injunctive relief is necessary to prevent imminent and irreversible disclosure.

These questions are common even though class members' medical histories are not identical. Individual medical details may determine class membership, but they do not alter the core legal inquiry: whether DOJ may obtain the categories of patient-identifying information and PHI sought by the subpoenas. That question can be answered for the Class and LPCH Subclass as a whole "in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also Parsons*, 754 F.3d at 680 (the question "whether [the challenged] policies pose a risk of serious harm to all [class members] can thus be answered as to the entire class 'in one stroke'"). The factual and legal questions Plaintiffs present "can be answered 'yes' or 'no' in one stroke as to the entire class, dissimilarities among class members do not impede the generation of common answers to those questions, and the capacity of classwide proceedings to drive the resolution of this litigation cannot be doubted." *Parsons*, 754 F.3d at 684. Here, unlike in *Wal-Mart*, there is no discretion exercised at the local level; only a uniform federal demand that applies identically to every class member. That categorical demand provides the "glue" that *Wal-Mart* found missing. *See id.* at 352 (requiring "some glue holding the alleged reasons for all those decisions together").

Nor does the constitutional balancing required by Plaintiffs' informational-privacy and First Amendment claims defeat commonality. DOJ's demand is categorical; the types of information sought are categorically sensitive; the alleged governmental purpose is common; the asserted safeguards are common; and the threatened disclosure is to the same federal agency as part of the same subpoena campaign; and the harm and chilling effect are common. Courts do not

deny certification merely because class members' factual circumstances vary where the challenged government practice exposes them to the same legal injury. *Parsons*, 754 F.3d at 675, 682. A classwide proceeding can generate common answers about whether the Constitution permits DOJ to obtain the targeted category of records and whether any asserted governmental interest or safeguard justifies the disclosure. That is sufficient under Rule 23(a)(2). The commonality requirement is therefore satisfied.

### C.    Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Typicality "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* The typicality requirement is, again, permissive: representative claims need only be "reasonably co-extensive with those of absent class members," not "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Typicality is satisfied where the named plaintiffs challenge the same course of conduct and rely on the same legal theories as absent class members. *Parsons*, 754 F.3d at 685 (typicality satisfied where named plaintiffs challenged same statewide practices and sought same relief as class).

The commonality and typicality requirements "tend to merge" in cases like this one. *Wal-Mart*, 564 U.S. at 352 n.5. "Where the challenged conduct is a policy or practice that affects all class members," the typicality inquiry "involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Armstrong*, 275 F.3d at 868-69. Courts "do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.*; *see also Parsons*, 754 F.3d at 685-86 ("[I]t does not matter that the named plaintiffs may have in the past suffered varying

10

injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member.").

Plaintiffs' claims are typical. Like all Class members, Plaintiffs received transgender medical care while they were minors at medical providers in California. Like all Class members, they face the threat that DOJ will obtain their patient-identifying information and PHI through subpoenas targeting that care. Plaintiffs assert the same constitutional theories and seek the same injunctive and declaratory relief as absent class members.

Any factual variations among class members—age, date of treatment, diagnosis, provider, precise course of care, or whether a particular patient is publicly known to be transgender—do not defeat typicality. *See Hanlon*, 150 F.3d at 1020 (typicality is "permissive" and does not require substantially identical claims); *Rodriguez*, 591 F.3d at 1124 (typicality satisfied despite differences among class members where they raised similar constitutional arguments and challenged the same detention practice); *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (factual differences do not defeat typicality where claims arise from same course of conduct). "Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Ellis*, 657 F.3d at 985 n.9. Those differences do not change the legal theory or the nature of the threatened injury. Plaintiffs and absent class members all seek to prevent DOJ from obtaining the same protected category of patient-identifying information and PHI because they received the targeted care as minors. Their claims therefore arise from the same course of conduct and are reasonably coextensive with the claims of absent class members.

The same is true for the LPCH Subclass. The Subclass members' records are held by the same provider, threatened by the same subpoena, and subject to the same threatened disclosure. The named LPCH patients' claims are not unique; they are representative of the legal injury faced by every LPCH patient whose records fall within the subpoena's demands. The typicality requirement is therefore satisfied.

### D.    Adequacy

Rule 23(a)(4) requires that representative parties fairly and adequately protect the interests

of the class. Fed. R. Civ. P. 23(a)(4). Adequacy turns on two questions: whether the named plaintiffs and counsel have conflicts with the class, and whether they will prosecute the action vigorously. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (identifying conflicts and vigorous prosecution as the two adequacy inquiries); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (same). Counsel are adequate where they have experience in class actions or the relevant area of law. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (experience in prior class actions supports adequacy); *In re iPhone 4S Consumer Litig.*, No. 12-cv-1127, 2012 WL 12960637, at *1 (N.D. Cal. July 5, 2012) (class counsel adequate where they had "experience in class actions and complex litigation, knowledge of the applicable law and adequate resources").

Plaintiffs are adequate representatives. They seek no individualized damages and no preferential relief. They seek only classwide declaratory and injunctive relief that would protect all class members from the same threatened disclosure of patient-identifying information and PHI. Their interests are aligned with absent class members: all seek to prevent DOJ from obtaining, using, retaining, or disseminating the targeted records. Plaintiffs have no incentive to sacrifice the interests of absent class members because the relief they seek is the same relief the Class and LPCH Subclass need. Nor are Plaintiffs subject to any unique defenses that "threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. The constitutional questions—whether DOJ may obtain the targeted records—do not turn on any individual plaintiff's circumstances but apply identically to all class members.

Adequacy is reinforced by the nature of Rule 23(b)(2) relief. Where, as here, Plaintiffs seek only common injunctive and declaratory relief, there is no risk that representatives will prefer their own interests over the class's interests. "[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what Rule 23(b)(2) is meant to capture precisely because a single injunction benefits the entire class equally. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Walters*, 145 F.3d at 1047 ("[Rule 23(b)(2)] was adopted in order to permit the prosecution of civil rights actions."). The commonality and typicality requirements also "tend to merge with the adequacy-of-representation requirement."

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION

*Wal-Mart*, 564 U.S. at 352 n.5. Because Plaintiffs' claims are common to and typical of the class, their vigorous prosecution of those claims necessarily advances the interests of all class members.

Adequacy is especially strong here because class treatment protects, rather than compromises, absent class members' privacy. Absent class members need not publicly identify themselves to receive the benefit of classwide injunctive relief. That is important in a case where disclosure of identity is part of the threatened harm. Proceeding through class representatives who have been permitted to litigate pseudonymously allows the Court to adjudicate common constitutional questions without forcing every affected patient or family to come forward individually. Courts recognize that class treatment is particularly appropriate where class members face practical barriers to individual litigation—including vulnerability, reluctance to publicize sensitive circumstances, and the nature of the claims. *See Rodriguez*, 591 F.3d at 1123 (practical barriers to individual litigation support certification).

Proposed class counsel are also adequate. Counsel from the National Center for LGBTQ Rights, GLBTQ Legal Advocates & Defenders, Rosen Bien Galvan & Grunfeld LLP, and Lowell & Associates PLLC have investigated and litigated the claims at issue, prepared the operative pleadings and emergency motions, coordinated with Plaintiffs and proposed class representatives, and committed substantial resources to this matter. Proposed class counsel have extensive experience in complex federal civil-rights litigation, LGBTQ+ rights litigation, transgender healthcare litigation, constitutional litigation, and class actions. They will vigorously prosecute the action on behalf of the Class and LPCH Subclass. The Court should appoint them as provisional class counsel under Rule 23(g).

The adequacy requirement is satisfied.

## II.     The Proposed Class and LPCH Subclass Satisfy Rule 23(b)(2).

Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class," making classwide injunctive or declaratory relief appropriate. Fed. R. Civ. P. 23(b)(2). "The primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. "The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge

widespread rights violations of people who are individually unable to vindicate their own rights." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994).

In the Ninth Circuit, it is sufficient that "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart*, 564 U.S. at 360. Rule 23(b)(2) is satisfied when class members seek uniform relief from a practice applicable to all of them. *Rodriguez*, 591 F.3d at 1125; *see also Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 213-14 (N.D. Cal. 2015) (certifying Rule 23(b)(2) class where plaintiffs sought relief applicable to the entire class); *Saravia*, 280 F. Supp. 3d at 1205 (Rule 23(b)(2) satisfied because "a single injunction can protect all class members' procedural due process rights"); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015) (under Rule 23(b)(2), focus is on whether defendant engaged in a common policy, not on individual claims). Rule 23(b)(2) is "'unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.'" *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (quoting *Parsons*, 754 F.3d at 688).

That standard is met here. DOJ has acted on grounds generally applicable to the Class by issuing and threatening to enforce subpoenas seeking the same categories of patient-identifying information and PHI for individuals who received transgender medical care as minors, and for the LCPH Subclass, from LPCH.

The requested relief is the same for all Plaintiffs. Plaintiffs seek an order preventing DOJ from seeking, receiving, using, retaining, or disseminating patient-identifying information and PHI obtained through the challenged subpoenas or substantially similar demands. That relief would protect all members of the Class and LPCH Subclass in the same way. This case does not seek individualized damages or individualized remedial determinations. If DOJ's acquisition of the records is unlawful, the injunction protects all Class members. If DOJ may not obtain the records from LPCH, the injunction protects the LPCH Subclass as a whole.

Rule 23(b)(2) "does not require that the issues common to the class satisfy a Rule 23(b)(3)-

14

like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688. Nor does it require the Court to "examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125. "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* at 1125-26.

Individual factual differences do not defeat Rule 23(b)(2) certification. The focus is not whether every patient's record is identical, but whether Defendants have acted on grounds generally applicable to the class and whether a single injunction or declaration would provide relief to the class. *See Lyon*, 308 F.R.D. at 214 (differences among facilities did not defeat certification where plaintiffs sought relief applicable to the entire class). Here, the subpoena campaign targets a defined category of patients, seeks defined categories of records, and threatens the same constitutional injury: disclosure of patient-identifying information and PHI to DOJ. An injunction preventing DOJ from obtaining the targeted records would protect all class members equally. "[R]elief for some [class members] would necessarily result in injunctive relief for all [class members]." *Parsons*, 754 F.3d at 688.

Classwide relief is also necessary to avoid undermining the very privacy interests Plaintiffs seek to protect. Relief limited to the named Plaintiffs would require Defendants or providers to identify and segregate only a handful of patient records, risking the identification of those Plaintiffs and leaving absent patients exposed to the same harm. Rule 23(b)(2) avoids that problem by allowing a single injunction to protect all similarly situated patients without forcing each one to reveal their identity and sue individually. This case exemplifies exactly what Rule 23(b)(2) was designed for: "suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights." *Baby Neal*, 43 F.3d at 63. Transgender minors seeking to protect their sensitive medical information and PHI from government acquisition are precisely such individuals—vulnerable, reluctant to come forward publicly, and facing a common threat that can only be addressed through classwide relief.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION

**III.    In the Alternative, Certification Is Proper Under Rule 23(b)(1)(A).**

Certification is also proper under Rule 23(b)(1)(A). That provision applies when prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications" that would establish "incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) is appropriate "where the party is obliged by law to treat the members of the class alike." *Amchem Prods.*, 521 U.S. at 614; *see also Wal-Mart*, 564 U.S. at 361 n. 11 ("Classes certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment—that individual adjudications would be impossible or unworkable."). The Rule addresses cases where separate suits seeking injunctive or declaratory relief could subject the defendant to conflicting obligations about the same conduct.

This case presents that risk. The challenged conduct is DOJ's single subpoena campaign seeking the same categories of patient-identifying information and PHI from the same defined group of patients. DOJ is obliged by law to treat class members alike with respect to the constitutional question at issue: whether the Fourth Amendment and informational privacy rights permit DOJ to obtain their patient-identifying and PHI records through administrative subpoenas. If class members were required to proceed separately, different courts could impose inconsistent obligations on DOJ and subpoenaed providers. One court could enjoin DOJ from obtaining patient-identifying records; another could permit DOJ to receive them; another could require different redactions, notice, limitations on use, or retention safeguards. That is precisely the type of incompatible standards problem Rule 23(b)(1)(A) is meant to prevent.

Courts have recognized that Rule 23(b)(1)(A) is appropriate where many individuals challenge the same government policy or practice and seek injunctive relief that would regulate the defendant's conduct going forward. *See Gray v. County of Riverside*, No. 13-cv-444, 2014 WL 5304915, at *37 (C.D. Cal. Sept. 2, 2014) (describing as a "core example" of Rule 23(b)(1)(A) a case in which "many individuals, all challenging a single government policy, bring separate suits for injunctive relief"); *see also* 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1773 (3d ed.) (Rule 23(b)(1)(A) is designed to prevent incompatible standards of conduct for defendants). That reasoning applies here. The central question is not whether each

16                                                    Case No. 5:26-cv-04998

patient's medical record is identical, but whether DOJ may obtain and use the targeted category of patient-identifying records at all. Separate adjudications of that question could impose incompatible standards of conduct on Defendants.

Certification under Rule 23(b)(1)(A) is especially appropriate because the relief Plaintiffs seek is prospective and conduct-regulating. Plaintiffs do not seek damages or individualized remedies. They seek an order governing whether Defendants may seek, receive, use, retain, disseminate, or obtain the patient-identifying information and PHI covered by the subpoenas. Because separate suits could produce inconsistent injunctions regulating the same conduct, Rule 23(b)(1)(A) provides an independent basis for provisional certification.

**IV.     The Court Should Provisionally Certify the Class and LPCH Subclass Now to Preserve Effective Relief.**

Provisional certification is necessary because the threatened harm is imminent and irreversible. Once DOJ obtains class members' identifying information and PHI, no later order can restore confidentiality, erase the government's knowledge, or undo the chilling effect on patients' willingness to seek care and communicate candidly with providers. "[F]or many of the putative class members, class treatment in this case is likely necessary to provide the remedy sought." *Rodriguez*, 591 F.3d at 1123. As noted earlier, courts in this Circuit routinely provisionally certify classes where necessary to make preliminary injunctive relief effective. *See supra* pp. 3-4.

This Court has already recognized that Plaintiffs face serious harm if the records are disclosed and that DOJ's subpoena is part of a broader campaign to chill, if not halt, transgender healthcare for minors. ECF No. 40 at 1-2. The only reason the Court denied the prior motion was that DOJ was not then a party and Plaintiffs had not established, on the sparse record then before the Court, that LPCH's conduct was fairly attributable to the government. Plaintiffs have now amended to sue DOJ directly and seek relief against the federal actors responsible for seeking, receiving, using, retaining, and disseminating class members' records.

Provisional certification is therefore necessary to ensure that renewed preliminary relief is effective. The threatened harm is not limited to the named Plaintiffs. DOJ seeks the same categories of records for all patients who received the targeted care during the covered period. The

17

Case No. 5:26-cv-04998

Class and LPCH Subclass face the same injury, and a single injunction can prevent that injury before it occurs. Without class treatment, absent class members would likely be unable to adjudicate their claims before DOJ obtains their records. *See Rodriguez*, 591 F.3d at 1123 ("Without certification, therefore, many of the putative class members likely would not be able to adjudicate their claimed need . . . [because] that claim would become moot before the district court could come to a decision."). At minimum, the Court should provisionally certify the LPCH Subclass because the record establishes that LPCH received a subpoena, that the subpoena demands patient-identifying information and PHI, and that LPCH Subclass members face imminent disclosure absent relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court provisionally certify the Class and LPCH Subclass under Rule 23(a) and Rule 23(b)(2), or in the alternative Rule 23(b)(1)(A); appoint Plaintiffs as provisional class representatives; appoint Plaintiffs' counsel as provisional class counsel under Rule 23(g); and grant such further relief as the Court deems just and proper.

Respectfully submitted,

DATED:  June 8, 2026

/s/ Caleb Hayes-Deats

SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ
RIGHTS
1401 21st Street #11548
Sacramento, California  94102
Telephone:     (415) 392-6257
Email:
sminter@nclrights.org
cstoll@nclrights.org
awhelan@nclrights.org
rberg@nclrights.org

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:
ggrunfeld@rbgg.com
kjanssen@rbgg.com

CALEB HAYES-DEATS*
ABBE DAVID LOWELL*
SCHUYLER STANDLEY*
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC  20005
Telephone: (202) 964-6110
Facsimile: (202) 964-6116
Email:
CHayes-Deats@lowellandassociates.com
ALowellpublicoutreach@lowellandassociates.com
SStandley@lowellandassociates.com

JOSHUA ROVENGER*
DONOVAN BENDANA*
GLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts  02108
Telephone:     (617) 426-1350
Email:
jrovenger@gladlaw.org
dbendana@gladlaw.org

Attorneys for Plaintiffs
*motion for admission *pro hac vice* granted

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PROVISIONAL CLASS CERTIFICATION