BRETT A. SHUMATE
Assistant Attorney General
JORDAN CAMPBELL
Deputy Assistant Attorney General
LISA K. HSIAO
Acting Director
SARAH WELCH
Senior Counsel to the Assistant Attorney General
JOHN BAILEY
BRANTLEY MAYERS
Counsel to the Assistant Attorney General
LISA K. HSIAO
Acting Director

LUKE MILLER
EUGENE O'HALLORAN
SHIMENG ZHANG
Trial Attorneys

U.S. Department of Justice
Civil Division
950 Constitution Ave. NW
Washington, D.C. 20005
Telephone: (202) 514-3180
E-mail: Sarah.E.Welch@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A., et al.<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>Defendants, | No. 5:26-cv-04998-PCP<br><br>**DEFENDANTS' RESPONSE TO MOTION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE**<br><br>Hearing Date:   June 24, 2026<br>Hearing Time:   2:00 p.m.<br>Courtroom:   8<br><br>Hon. P. Casey Pitts<br>United States District Judge |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    This Court Cannot Enjoin a Grand Jury Supervised By a Different Federal District Court. .......................................................................................................................... 2

    Plaintiffs Have No Cause of Action to Seek an Injunction ........................................... 5

    Plaintiffs' Fifth Amendment Claim Fails. ..................................................................... 7

    Plaintiffs' First Amendment Claim Fails. .................................................................... 10

    The Court Should Not Enter Classwide Relief ........................................................... 14

        A.    Absent class certification, the Court cannot grant relief to nonparties. .............. 14

        B.    Plaintiffs fail to meet Rule 23's standards. .......................................................... 15

        C.    Certification is improper under Rule 23(b)(1)(A). ............................................... 22

    The Non-Merits Factors Disfavor Injunctive Relief .................................................... 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**

*AARP v. Trump*,
605 U.S. 91 (2025) .................................................................................................................. 15

*Ahlman v. Barnes*,
445 F. Supp. 3d 671 (C.D. Cal. 2020) ..................................................................................... 16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................ 21, 22

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ............................................................................................................... 14

*Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................................................. 6

*Bates v. City of Little Rock*,
361 U.S. 516 (1960) ............................................................................................................... 12

*Becker v. Kroll*,
494 F.3d 904 (10th Cir. 2007) .................................................................................................. 8

*Blair v. United States*,
250 U.S. 273 (1919) ................................................................................................................. 9

*Block v. North Dakota ex rel. Bd. of Univ. and School Lands*,
461 U.S. 273 (1983) ................................................................................................................. 6

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ........................................................................................................*passim*

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ................................................................................................................. 4

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) ................................................................................................................... 15

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989) ................................................................................................................. 14

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ..................................................................................................... 6

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ................................................................................................................. 8

ii

*Davis v. Bucher*,
   853 F.2d 718 (9th Cir. 1988) ...................................................................................... 7

*Disney Enters., Inc. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017) .................................................................................... 23

*Doe (1) v. Univ. of Kan. Hosp. Auth.*,
   2025 WL 1634958 (D. Kan. June 9, 2025) ............................................................... 20

*Doe v. Luzerne Cnty.*,
   660 F.3d 169 (3d Cir. 2011) ...................................................................................... 18

*Dole v. Serv. Emp. Union, ALF-CIO, Local 280*,
   950 F.2d 1456 (9th Cir. 1991) ............................................................................ 10, 24

*First Choice Women's Resource Centers, Inc. v. Davenport*,
   146 S. Ct. 1114 (2026) .............................................................................................. 14

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*,
   2026 WL 1686059 (June 11, 2026) .............................................................................. 6

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................. 16

*Hancock v. County of Rensselaer*,
   882 F.3d 58 (2d Cir. 2018) .......................................................................................... 8

*I.L. v. Six Flags Ent. Corp.*,
   2025 WL 2300009 (E.D. Cal. Aug. 8, 2025) ............................................................. 20

*IDK, Inc. v. Clark Cnty.*,
   836 F.2d 1185 (9th Cir. 1988) ................................................................................... 14

*In re Ashley Madison Customer Data Sec. Breach Litig.*,
   2016 WL 1366616 (E.D. Mo. Apr. 6, 2016) .............................................................. 21

*In re Grand Jury Proceedings*,
   801 F.2d 1164 (9th Cir. 1986) ..................................................................................... 9

*In re Grand Jury Subpoena John Doe No. A01-209*,
   197 F. Supp. 2d 512 (E.D. Va. 2002) ........................................................................ 10

*In re Grand Jury Subpoena No. 16-03-217*,
   875 F.3d 1179 (9th Cir. 2017) ....................................................................... 10, 13, 24

*In re Sealed Case*,
   794 F.2d 749 (D.C. Cir. 1986) ................................................................................... 25

*In re Subpoena Duces Tecum*,
   228 F.3d 341 (4th Cir. 2000) ..................................................................................... 25

*J.R. v. Atrium Health, Inc.*,
2024 WL 3032890 n.4 (W.D.N.C. June 17, 2024) ............................................................... 20

*Kalbers v. Dep't of Just.*,
166 F.4th 783 (9th Cir. 2026) ............................................................................................... 24

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023) ................................................................................................. 22

*La Mar v. H & B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) ................................................................................................ 23

*Laird v. Tatum*,
408 U.S. 1 (1972) .................................................................................................... 10, 11, 13

*Langadinos v. Wash. State Bar Ass'n*,
2025 WL 917199 (W.D. Wash. Mar. 26, 2025) ..................................................................... 6

*Levine v. United States*,
362 U.S. 610 (1960) .......................................................................................................... 1, 6

*Matsushita Elec. Indus. Co. v. Epstein*,
516 U.S. 367 (1996) ............................................................................................................. 14

*Meese v. Keene*,
481 U.S. 465 (1987) ............................................................................................................. 12

*Mercado v. Noem*,
800 F. Supp. 3d 526 (S.D.N.Y. 2025) .................................................................................. 15

*Mirabelli v. Olson*,
350 F.R.D. 138 (S.D. Cal. 2025) .......................................................................................... 16

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
858 F.2d 1376 (9th Cir. 1988) ................................................................................................ 6

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) ............................................................................................................. 14

*NASA v. Nelson*,
562 U.S. 134 (2011) ............................................................................................................... 7

*New York Times v. Gonzales*,
459 F.3d 160 (2d Cir. 2006) ............................................................................................... 4, 5

*Nixon v. Administrator of General Services*,
433 U.S. 425 (1977) ............................................................................................................... 7

*Pablo Sequen v. Albarran*,
810 F. Supp. 3d 1084 (N.D. Cal. 2025) ............................................................................... 15

*Pittsburgh Plate Glass Co. v. United States*,
    360 U.S. 395 (1959) ........................................................................................................ 24

*Rapuano v. Trs. of Dartmouth Coll.*,
    334 F.R.D. 637 (D.N.H. 2020) ......................................................................................... 20

*Redd v. Guerrero*,
    84 F.4th 874 (9th Cir. 2023) ............................................................................................... 4

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) .......................................................................................................... 14

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ..................................................................................... 17, 19

*Russell v. Gregoire*,
    124 F.3d 1079 (9th Cir. 1997) ............................................................................................ 7

*Samia v. United States*,
    599 U.S. 635 (2023) .......................................................................................................... 24

*Seaton v. Mayberg*,
    610 F.3d 530 (9th Cir. 2010) .............................................................................................. 7

*Sherman v. Trinity Teen Sols., Inc.*,
    339 F.R.D. 203 (D. Wyo. 2021) ........................................................................................ 21

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011) .......................................................................................................... 14

*Syngenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002) .............................................................................................................. 6

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ..................................................................................................... 14, 15

*Trump v. Vance*,
    481 F. Supp. 3d 161 (S.D.N.Y. 2020) .............................................................................. 24

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .......................................................................................................... 17

*United States v. Calandra*,
    414 U.S. 338 (1974) ............................................................................................................ 9

*United States v. Dionisio*,
    410 U.S. 1 (1973) ................................................................................................................ 9

*United States v. McClintock*,
    748 F.2d 1278 (9th Cir. 1984) ............................................................................................ 3

*United States v. Mitchell*,
463 U.S. 206 (1983) ......................................................................................................... 5

*United States v. R. Enters., Inc.*,
498 U.S. 292 (1991) ........................................................................................... 3, 4, 8, 9

*United States v. Testan*,
424 U.S. 392 (1976) ......................................................................................................... 6

*United States v. Williams*,
504 U.S. 36 (1992) ........................................................................................................... 3

*Univ. of Pa. v. EEOC*,
493 U.S. 182 (1990) ....................................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................................*passim*

*Whalen v. Roe*,
429 U.S. 589 (1977) ......................................................................................................... 7

*White v. Symetra Assigned Benefits Serv. Co.*,
104 F.4th 1182 (9th Cir. 2024) ...................................................................................... 16

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................................................................................... 24

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ................................................................................. 22, 23

*Zinser v. Accufix Rsch. Inst., Inc.*,
273 F.3d 1266 (9th Cir. 2001) ...................................................................................... 22

**STATUTES**

5 U.S.C. § 701(b)(1)(B) .......................................................................................................... 6

28 U.S.C. § 2072(b) ................................................................................................................ 6

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................................................. 16

Fed. R. Civ. P. 23(b) ................................................................................................. 19, 22, 23

Fed. R. Civ. P. 45(c) ............................................................................................................... 3

Fed. R. Civ. P. 45(d) ............................................................................................................... 4

Fed. R. Crim. P. 6 ................................................................................................................. 24

Fed. R. Crim. P. 6(e) ........................................................................................... 1, 3, 7, 16

Fed. R. Crim. P. 17(a) ................................................................................................... 2

Fed. R. Crim. P. 17(c)(1) .............................................................................................. 2

Fed. R. Crim. P. 17(c)(2) .............................................................................................. 2

Fed. R. Crim. P. 17(e) .................................................................................................. 3

Regulations

45 C.F.R. § 164.512(f)(1) ........................................................................................... 10

Other Authorities

Elias Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction?*,
     77 Baylor L. Rev. 681 (2025) ............................................................................ 15

**INTRODUCTION**

Plaintiffs make an extraordinary and unprecedented request of this Court: issue an injunction prohibiting compliance with a grand jury subpoena they say was issued by a different district court. Plaintiffs do not offer a *single past example* of such an order. That is because grand jury subpoenas are subject to judicial supervision, but the supervising court is the one that issues the subpoena. Indeed, "[t]he grand jury is an arm of the court." *Levine v. United States*, 362 U.S. 610, 617 (1960). This Court can no more review any proceedings in the Northern District of Texas than that court can review this Court's actions. If Plaintiffs wish to seek quashal of a subpoena they say was issued by the Northern District of Texas, they are free to move to quash in that court.

Plaintiffs' choice to instead file a collateral civil action in this Court, and to seek a temporary restraining order, leaves their request without precedent. It also makes them unable to meaningfully support their Fifth and First Amendment claims. Plaintiffs, this Court, and the Lucile Salter Packard Children's Hospital at Stanford (LPCH) lack basic facts to meaningfully evaluate questions about an alleged grand jury subpoena, and grand jury secrecy prevents the Department from even confirming or denying the existence of a grand jury subpoena. *See* Fed. R. Crim. P. 6(e). And Plaintiffs do not even claim knowledge of other grand jury subpoenas they believe exist, leaving them unable to show that even provisional class certification is permissible.

Nor do the non-merits considerations favor Plaintiffs. Their irreparable harm theory depends on *public* disclosure of their medical records or transgender status, ignoring the alleged grand jury context. And the public interest and balance of equities decisively favor permitting grand juries to investigate whether crimes have been committed.

**BACKGROUND**

Plaintiffs claim that a federal grand jury in the Northern District of Texas issued a subpoena to LPCH directing the hospital to produce certain records related to treatment of minor patients with gender dysphoria. Pursuant to Federal Rule of Criminal Procedure 6(e), the Department is not presently permitted to confirm or deny this assertion. Plaintiffs concede that "the nature of any alleged criminal conduct under investigation is unknown[.]" TRO Mot. 4.

According to Plaintiffs, on June 3, LPCH disclosed that it had received a grand jury subpoena

1

"that is almost identical" to a grand jury subpoena allegedly issued to New York University's Langone Hospitals. TRO Mot. 4. Several families of children who received treatment from LPCH during the time period allegedly covered by the subpoena then sued LPCH, seeking a temporary restraining order to bar disclosure of their medical records to United States pursuant to the alleged subpoena. *See* ECF No. 3. After the Court denied that motion, *see* ECF No. 40, Plaintiffs filed an amended complaint naming the Department of Justice and Acting Attorney General as defendants. *See* FAC, ECF No. 41.

Plaintiffs now seek a temporary restraining order barring the Department from "requesting, receiving, producing, transmitting, disclosing, or otherwise obtaining" their medical records pursuant to the alleged LPCH subpoena or "any substantially similar subpoena issued to any California health care provider[.]" ECF No. 46-7 at 1. Plaintiffs also seek certification of a class encompassing certain patients from all California healthcare institutions, as well as a subclass of certain LPCH patients. *See* ECF No. 45; FAC ¶¶ 57-58.

## ARGUMENT

### This Court Cannot Enjoin a Grand Jury Supervised By a Different Federal District Court.

A challenge to a federal grand jury subpoena belongs in the district court supervising the grand jury that issued the subpoena, not in a separate federal district through collateral civil litigation. The Federal Rules of Criminal Procedure expressly govern all proceedings in criminal cases, including proceedings related to grand jury investigations, and Rule 17(c) provides the exclusive mechanism for challenging grand jury subpoenas. "The court" which has the ongoing authority to supervise the grand jury investigation and litigate claims related to its process—and which, under Rule 6(e), is responsible for determining any requests for disclosure of grand jury materials—is the only appropriate court to decide Plaintiffs' claims. *See* Fed. R. Crim. P. 17(c)(2) ("On motion made promptly, *the court* may quash or modify the subpoena if compliance would be unreasonable or oppressive."); *see id.* R. 17(c)(1) (using "[t]he court" to refer to the issuing court); *id.* R. 17(a) ("A subpoena must state *the court's* name and the title of the proceeding, include the seal of *the court*, and command the witness to attend and testify at the time and place the subpoena specifies." (emphasis added)). "Grand juries are subject to judicial control and subpoenas to motions to quash"—not collateral civil litigation. *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972). Granting Plaintiffs' request would circumvent the rules of criminal procedure and encroach

2

on the authority of the supervising district court over its own process. Not surprisingly, Plaintiffs have not cited a single case upholding this novel procedure.

The Supreme Court has recognized that grand jury subpoenas remain subject to the supervision of the issuing court overseeing the grand jury investigation. *United States v. R. Enters., Inc.*, 498 U.S. 292, 298-301 (1991) (A "grand jury subpoena issued through normal channels" is presumed reasonable, and motions to quash are evaluated by the supervising court in light of the grand jury's broad investigative authority); *United States v. Williams*, 504 U.S. 36, 47 (1992) (recognizing historic independence of the grand jury and the limited role of courts in interfering with grand jury investigations). Courts likewise have recognized that challenges to grand jury subpoenas belong before the issuing court supervising the grand jury investigation. *See, e.g.*, *United States v. McClintock*, 748 F.2d 1278, 1285 (9th Cir. 1984) (district court may exercise its supervisory power over grand jury proceedings only where necessary to deter official misconduct and protect judicial integrity). Disputes concerning compliance with a federal grand jury subpoena—including motions to quash, requests for protective relief, or assertions of privilege—must be directed to the issuing court, not litigated collaterally in another federal district.

It is easy to see why the Criminal Rules channel challenges to grand jury subpoenas to the district where the criminal investigation or prosecution is being conducted. Permitting a separate federal district court to entertain collateral challenges to a subpoena issued by a grand jury sitting in another district would improperly intrude upon the issuing court's supervisory authority, create the risk of inconsistent rulings among federal courts, and disrupt the orderly administration of federal criminal investigations. Only by having all such questions addressed by the supervisory court can consistency be ensured and the grand jury's overall conduct be effectively monitored. *See* Fed. R. Crim. P. 6(e) (grand jury secrecy requirement). Indeed, the risk of inconsistent rulings among federal courts would be particularly pronounced for grand jury subpoenas if they could be challenged outside the issuing court, as grand jury subpoenas can be served "at any place within the United States," Fed. R. Crim. P. 17(e), while subpoenas contemplated by Civil Rule 45 have a more limited geographic reach. *See* Fed. R. Civ. P. 45(c) (subpoena "may command a person to attend a trial, hearing, or deposition" or produce documents or things only within specified geographic bounds). These distinct features of grand jury subpoenas explain why they are subject to challenge only in the court that issued the subpoena, unlike other subpoenas that can be

challenged in "the district where compliance is required." Fed. R. Civ. P. 45(d).

More generally, the Supreme Court has emphasized that the grand jury's investigative powers are necessarily broad and courts should avoid unnecessary interference with its functioning. *Branzburg*, 408 U.S. at 688 ("the longstanding principle that 'the public … has a right to every man's evidence'" applies with particular force in the grand jury context); *R. Enters.*, 498 U.S. at 297 (grand jury's investigative power must be broad if its responsibilities are to be adequately discharged). Those principles are undermined if a non-issuing district court attempts to supervise or restrain compliance with a grand jury subpoena issued under the authority of another federal court in an ongoing criminal investigation.

Even if the text of Rule 17 did not foreclose collateral attacks on grand jury process, principles of comity and judicial restraint would strongly weigh against this Court issuing an injunction that interferes with a grand jury subpoena allegedly issued by a federal grand jury sitting in another district. Such an injunction would improperly intrude upon proceedings pending before another federal court and undermine the orderly administration of criminal justice. Moreover, such relief would raise serious separation-of-powers concerns because it would effectively restrain a lawful Executive Branch criminal investigation through collateral civil process. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381-82 (2004) (recognizing separation-of-powers concerns arising from judicial intrusion into Executive Branch functions). Just as the Northern District of Texas does not superintend this Court's grand jury proceedings, this Court should decline Plaintiffs' inappropriate attempt to place this Court in the position of superintending alleged grand jury proceedings in the Northern District of Texas via coercive process issued to the United States or Hospital Defendants.

Plaintiffs cite an out-of-circuit decision, *New York Times v. Gonzales*, 459 F.3d 160 (2d Cir. 2006), as permitting such interference. They claim that *Gonzales* amounts to "confirm[ation] that it is appropriate for the Court to consider Plaintiffs' challenges on the merits notwithstanding the pendency of the Texas grand jury proceeding." TRO Mot. 8. Not so. That outlier decision is unpersuasive and distinguishable. To start, *Gonzales* did not consider the comity problems of one court interfering with another court's grand jury, nor did it consider Rule 17's limitations on where grand jury subpoenas may be challenged. Importantly, *Gonzales* considered only the possibility of a declaratory judgment, which is a "much milder" remedy than the injunction Plaintiffs seek. *Redd v. Guerrero*, 84 F.4th 874, 888 (9th

Cir. 2023) (citation omitted). Its reasoning therefore relied substantially on the specific text and equitable underpinnings of the Declaratory Judgment Act—it did not purport to opine on the propriety of an injunction or any other form of relief. *See Gonzales*, 459 F.3d at 165-67. Plaintiffs do not request a declaratory judgment as part of their TRO motion, nor could they. Neither rule nor statute recognizes a preliminary declaratory judgment. Instead, a declaratory judgment is just that—a judgment. This case is not close to a posture conducive to a final judgment: Plaintiffs filed their complaint less than two weeks ago, Defendants have not yet filed a responsive pleading, and neither side has filed a dispositive motion.

Moreover, in *Gonzales*, the plaintiffs professed that it was "unknown whether subpoenas have been issued to telephone carriers or not, and if so, whether the carriers have already complied." *Id.* at 167. That meant there was a prospect that the declaration did not interfere with any grand jury subpoenas and that alternative forms of relief, such as moving to quash, were unavailable. *Id.* (observing that "a motion to quash is not available if the subpoena has not been issued"). Here, by contrast, Plaintiffs profess certainty that a grand jury subpoena has issued, and unlike the *Gonzales* plaintiffs, they have simply opted not to avail themselves of the option to challenge the alleged subpoena in the issuing court. If anything, the fact that Plaintiffs cite *Gonzales* as their best case simply illustrates that they are asking the Court to take an unprecedented step by issuing an injunction forbidding compliance with another district court's grand jury subpoena. This Court should decline to do so.

## Plaintiffs Have No Cause of Action to Seek an Injunction

Plaintiffs point to neither an express congressional waiver of sovereign immunity nor any statutory cause of action permitting them to sue the federal government or to seek any remedies against the federal government. Ordinarily, a plaintiff seeking to challenge a grand jury subpoena does so through a motion to quash filed in the court that issued the subpoena, which the court entertains as a miscellaneous action. But Plaintiffs have filed a freestanding complaint, not a motion to quash; and they ultimately seek declaratory and injunctive relief, not quashal. *See* FAC at 31-32 (Prayer for Relief). That creates novel problems.

To obtain a remedy against the United States, a plaintiff must identify a waiver of sovereign immunity permitting the action and the remedy the plaintiff seeks. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and

5

that the existence of consent is a prerequisite for jurisdiction."). Only Congress may waive the sovereign immunity of the United States. *Block v. North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."); *United States v. Testan*, 424 U.S. 392, 399 (1976) (federal sovereign immunity persists "except as Congress has consented to" a waiver).

Likewise, a plaintiff who seeks a remedy from a court must have a cause of action in order to obtain that remedy. Only Congress can create such a private right of action. *See, e.g.*, *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 2026 WL 1686059, at *2 (June 11, 2026) ("Congress, not the judiciary, decides who may enforce the law."); *id.* at *3-4, *6.

To the extent they would seek to do so, Plaintiffs cannot rely on any of the usual recourses. For example, the Administrative Procedure Act is no help to them because it permits challenges to final agency action, but Plaintiffs identify nothing resembling a final agency action. A grand jury subpoena cannot be the final agency action: Such subpoenas are issued by a court, so they fall well outside the APA. *See* 5 U.S.C. § 701(b)(1)(B) (excluding "the courts of the United States" from the definition of "agency"); *Levine*, 362 U.S. at 617 ("The grand jury is an arm of the court."). Likewise, the Declaratory Judgment Act cannot substitute for a waiver of sovereign immunity or a cause of action. "The Declaratory Judgment Act does not provide a cause of action when a party … lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief[,]" *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022), nor does it "constitute an independent basis for jurisdiction[,]" *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1382-83 (9th Cir. 1988). Plaintiffs cannot turn to the All Writs Act, either. "[T]he All Writs Act does not confer jurisdiction on the federal courts[.]" *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002). Nor does it create a cause of action. *See, e.g.*, *Langadinos v. Wash. State Bar Ass'n*, 2025 WL 917199, at *3 (W.D. Wash. Mar. 26, 2025) ("The Act does not create a cause of action[.]"). Last, the Federal Rules of Civil or Criminal Procedure likewise offer no cause of action or waiver of sovereign immunity, since they cannot themselves create any "entitlement[] to relief." *Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality); *see* 28 U.S.C. § 2072(b) (permitting rules only if they do not "abridge, enlarge or modify any substantive right").

6

**Plaintiffs' Fifth Amendment Claim Fails.**

Plaintiffs' Fifth Amendment claim rests on the novel proposition that informational-privacy principles may be invoked to limit compliance with lawful grand jury subpoenas. To our knowledge, no court has applied the doctrine in that manner. The authorities on which Plaintiffs rely arose in different contexts involving government collection, maintenance, or dissemination of personal information and did not address the government's authority to obtain evidence through compulsory process in a criminal investigation. In any event, even assuming substantive due process could constrain a grand jury subpoena in some exceptional case, such a claim can only be assessed by the court supervising the grand jury—because grand jury secrecy means that only the supervising court could balance the asserted privacy interest against the grand jury's need for the evidence and the government's compelling interest in compliance. In this posture, Plaintiffs cannot show likely success on their Fifth Amendment claim.

The Supreme Court has never held that the Fifth Amendment protects a right to informational privacy. And in the few cases where the Court assumed that such a right exists, it has underscored the limited nature of any such doctrine. In *Whalen v. Roe*, the Court upheld a state law requiring the collection of patient-identifying prescription information, emphasizing that "[r]equiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy." 429 U.S. 589, 600-06 (1977). In *Nixon v. Administrator of General Services*, the Court upheld a federal statute requiring former President Nixon to turn over presidential papers and recordings for government review, relying in part on safeguards against undue dissemination of private materials. 433 U.S. 425, 457-59 (1977). And most recently, in *NASA v. Nelson*, the Court rejected the claim because the information-gathering practices were accompanied by protections against public disclosure. 562 U.S. 134, 146-48, 155-59 (2011). Here, too, grand jury secrecy represents a robust protection against public disclosure. *See* Fed. R. Crim. P. 6(e); *infra* p. 24.

The Ninth Circuit's decisions likewise concern government disclosure or misuse of personal information after it was obtained, not the government's authority to compel production of evidence during a criminal investigation. *Davis v. Bucher*, 853 F.2d 718, 719-21 (9th Cir. 1988); *Russell v. Gregoire*, 124 F.3d 1079, 1093-94 (9th Cir. 1997); *Seaton v. Mayberg*, 610 F.3d 530, 535-39 (9th Cir. 2010). Those cases recognize, at most, a limited and context-specific privacy interest evaluated under a balancing

7

framework. None suggests that informational-privacy principles authorize a court to bar compliance with an otherwise valid grand jury subpoena in a collateral proceeding.

Indeed, the standards governing informational-privacy claims further illustrate why Plaintiffs' novel claim is doomed to fail. When assessing a substantive-due-process challenge to executive action, courts apply a uniquely demanding standard: liability attaches only if the challenged conduct is so "egregious" that it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). And because this standard can be met "in only the most extreme circumstances," substantive-due-process liability for executive action "typically involv[es] some violation of physical liberty or personal physical integrity." *Becker v. Kroll*, 494 F.3d 904, 923 (10th Cir. 2007). Grand jury subpoenas as part of a criminal investigation bear little resemblance to these cases.

The substantive-due-process framework fits Plaintiffs' challenge poorly for other reasons. The Supreme Court's "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850. This analysis usually requires a finding of intent. *Id.* at 849 ("conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level"). Plaintiffs' attempt to apply that test in a collateral proceeding "ignores that grand jury proceedings are subject to strict secrecy requirements." *R. Enters.,* 498 U.S. at 299. Even if Rule 6(e) were no bar, "[r]equiring the Government to explain in too much detail the particular reasons underlying a subpoena threatens to compromise 'the indispensable secrecy of grand jury proceedings.'" *Id.* (citation omitted). This is precisely why the sort of objection that Plaintiffs raise here must be presented, if at all, to the supervising court under the procedures set out in Rule 17. *See supra* pp. 2-4.

No ad hoc interest-balancing is required to conclude that Plaintiffs may not invoke their privacy interests to veto an alleged grand jury investigation. "[M]ost situations in which a government actor accesses an individual's personal information will not require the application of a balancing test to determine whether a due process violation has occurred." *Hancock v. County of Rensselaer*, 882 F.3d 58, 66 (2d Cir. 2018). To the extent a grand jury's receipt of evidence implicates constitutionally protected privacy interests, such "a breach of privacy takes a form courts have previously approved." *Id.* Both the

Ninth Circuit and Supreme Court have consistently held that a grand jury may take receipt of persons' private information, constitutionally protected privacy interests notwithstanding. "There is no general right to privacy before the grand jury." *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986). "The function of the grand jury is to inquire into *all* information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *R. Enters.*, 498 U.S. at 297 (emphasis added). Thus, "[a] grand jury investigation 'is not fully carried out until *every* available clue has been run down and *all* witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg*, 408 U.S. at 701 (citation omitted) (emphasis added); *see also, e.g.*, *Blair v. United States*, 250 U.S. 273, 282 (1919) ("It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."). This explains why "a witness has no right of privacy before the grand jury[,]" which is entitled to "responses [that] might prove embarrassing or result in an unwelcome disclosure of his personal affairs." *United States v. Calandra*, 414 U.S. 338, 353 (1974).

In short, the Supreme Court has repeatedly reaffirmed the grand jury's broad constitutional authority to compel evidence during its investigation. And it has repeatedly declined to adopt "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973). Accepting Plaintiffs' invitation to subject grand jury subpoenas to a "multifactor test" focused on interest balancing "would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena." *R. Enters.*, 498 U.S. at 298. And such an approach, particularly in this Court, would improperly "compromise 'the indispensable secrecy of grand jury proceedings'" by "[r]equiring the Government to explain in too much detail the particular reasons underlying a subpoena." *Id.* at 299.

Plaintiffs' reliance on cases applying multifactor balancing tests to administrative subpoenas, employment records, or civil disclosure requirements is therefore misplaced. Whatever force those considerations may have in other contexts, neither the Supreme Court nor the Ninth Circuit has held that informational privacy authorizes a court to enjoin compliance with an otherwise lawful grand jury

subpoena. Extending the doctrine in that manner would be irreconcilable with the grand jury's historically broad investigative authority.

Finally, even if balancing were appropriate and somehow possible in this venue despite grand jury secrecy, the balance would easily favor the government. Plaintiffs' claimed expectation of privacy in medical records held by third parties is incompatible with the disclosures that hospitals (including LPCH) provide to patients and their families. LPCH expressly notifies patients that it may disclose personal health information for a variety of reasons, including for law enforcement purposes. *See* Ex. A, Stanford Medicine Notice of Privacy Practices at 6 ("lawsuits and disputes" or "law enforcement").[1] More still, HIPAA "regulations themselves make clear that any privacy interest patients have in their medical records is trumped by a grand jury subpoena that is 'relevant and material to a legitimate law enforcement inquiry.'" *In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 515 (E.D. Va. 2002) (quoting 45 C.F.R. § 164.512(f)(1)(ii)) (denying motion to quash grand jury subpoena for medical records). Given these disclosures, the notion that patients could reasonably expect their medical information to be shielded from a lawful federal subpoena is fanciful. Whatever privacy interest may persist cannot overcome the government's "compelling interest in the grand jury's investigation into possible violations of federal law." *In re Grand Jury Subpoena No. 16-03-217*, 875 F.3d 1179, 1191 (9th Cir. 2017); *see also, e.g., Dole v. Serv. Emp. Union, ALF-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991) ("[T]here is little doubt that the Department's purpose of investigating possible criminal violations of [a federal law] serves a compelling governmental interest").

## **Plaintiffs' First Amendment Claim Fails.**

As a fallback, Plaintiffs repackage their informational privacy claim as an alleged violation of their First Amendment rights. They claim the alleged subpoena will chill putative class members' speech with their doctors and is therefore unlawful. Plaintiffs' First Amendment claim fails several times over.

**A.** To start, Plaintiffs lack Article III standing because it is well-established that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). The facts of *Laird* are instructive.

---

[1] Available at https://perma.cc/DN8F-WJEA (effective February 16, 2026).

There, respondents claimed "the very existence of the Army's data-gathering system produces a constitutionally impermissible chilling effect upon the exercise of their First Amendment rights." *Id.* at 13. The Court rejected that theory. It distinguished cases recognizing First Amendment injuries based on chill, explaining that "[i]n none of these cases . . . did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and addition[a]l action detrimental to that individual." *Id.* at 11. Instead, in those cases, "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." *Id.* A chilling effect arising from respondents' "speculative apprehensiveness that the Army may at some future date misuse the information in some way that would cause direct harm to respondents" did not establish standing. *Id.* at 13-14.

*Laird* controls here. Because the alleged subpoena does not compel or regulate Plaintiffs, their allegations of subjective chill are "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Id.* at 14. Indeed, Plaintiffs' asserted injury depends on the same attenuated chain *Laird* rejected: that the government may obtain information from someone else, may later misuse that information, and that the possibility of such future misuse may chill Plaintiffs' willingness to speak with others. As in *Laird*, Plaintiffs lack Article III standing.[2]

**B.** For related reasons, Plaintiffs' First Amendment claim also fails on the merits. The alleged subpoena does not infringe any First Amendment right enjoyed by Plaintiffs. Disclosure of medical records to a federal grand jury does not interfere with Plaintiffs' freedom "to speak openly with" their providers, or with the rights of free speech or association of individual doctors. The alleged subpoena does not, directly or indirectly, regulate what patients may say or what doctors may advise. Nor does disclosure in response to a grand jury subpoena—subject to the strict secrecy protections of Rule 6(e)—

---

[2] *Laird* also forecloses any attempt by Plaintiffs assert the speech rights of hospitals or doctors. *See* 408 U.S. at 13 & n.7 ("a litigant has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). In any event, Plaintiffs' bald assertion that the alleged subpoena will cause doctors to "limit their communications with their patients" lacks any support in the record. TRO Mot. 23.

expose Plaintiffs' records to public scrutiny, impose civil or criminal liability on Plaintiffs for speaking with their doctors, or attach any other penalty to seeking or providing medical advice. Disclosure under these circumstances involves no "significant encroachment upon personal liberty," *i.e.*, "the threat of substantial government encroachment upon important and traditional aspects of individual freedom" that is "neither speculative nor remote." *Bates v. City of Little Rock*, 361 U.S. 516 (1960); *Meese v. Keene*, 481 U.S. 465, 472 (1987) ("While the governmental action need not have a direct effect on the exercise of First Amendment rights . . . it must have caused or must threaten to cause a direct injury to the plaintiffs.").

Indeed, the Supreme Court has held the First Amendment does not shield even the recipient of an administrative subpoena from disclosing information that incidentally affects speech interests. *See Univ. of Pa. v. EEOC*, 493 U.S. 182, 200 (1990). There, the Supreme Court rejected a First Amendment privilege against disclosure of confidential tenure-review materials in response to an administrative subpoena. The university argued that such disclosure would have "a chilling effect on candid evaluations and discussions," thereby impairing its First Amendment right to academic freedom. *Id.* at 196-97. The Court disagreed, concluding that the alleged injury to First Amendment interests was too "remote and attenuated" to "infringe any First Amendment right enjoyed by" the university. *Id.* at 200-201. Plaintiffs' theory is still more attenuated because Plaintiffs challenge the incidental effects of compulsory process issued to a third party. In these circumstances, Plaintiffs have not established that the alleged grand jury subpoena infringes any interest protected by the First Amendment.[3]

**C.** Even if Plaintiffs' First Amendment rights were somehow implicated by an alleged grand jury subpoena directed at a third party, the Supreme Court and Ninth Circuit have repeatedly rejected efforts to convert asserted First Amendment interests into a freewheeling constitutional privilege against compulsory process. In *Branzburg v. Hayes*, the Supreme Court held that the First Amendment did not excuse reporters from appearing before a grand jury and answering questions relevant to a criminal

---

[3] Plaintiffs' confusing assertion that the alleged subpoena "discriminates based on 'viewpoint'" fails for this threshold reason. TRO Mot. 23 (citation omitted). This claim also lacks merit for other reasons, including that a grand jury subpoena does not regulate speech based on viewpoint merely because it uses conduct-based definitions that may turn on the purpose of a medical intervention. Otherwise, any subpoena for records pertaining to a particular kind of expressive conduct could be recast as a content- or viewpoint-based speech restriction. For good reason, that is not the law.

investigation, even though doing so could reveal confidential sources and thereby affect newsgathering. 408 U.S. 665, 689-90 (1972). The Court recognized that "news gathering is not without its First Amendment protections," *id.* at 707, but held that those protections do not relieve a witness of the ordinary obligation to provide evidence to a grand jury. The public "has a right to every man's evidence," and that principle "is particularly applicable to grand jury proceedings." *Id.* at 688.

The Ninth Circuit applied that rule in *In re Grand Jury Subpoena No. 16-03-217*, 875 F.3d 1179 (9th Cir. 2017). There, Glassdoor resisted a grand jury subpoena seeking identifying information for anonymous users, arguing that disclosure would infringe "users' First Amendment right to speak and associate anonymously." *Id.* at 1186. The Ninth Circuit rejected that claim. It explained that Glassdoor's argument—that "forcing [it] to comply with the grand jury's subpoena duces tecum will chill First Amendment-protected activity"—"is fundamentally the same argument the Supreme Court rejected in *Branzburg*." *Id.* Indeed, "*Branzburg* . . . made clear that the First Amendment does not provide reporters—or anyone else—with a privilege against responding to a grand jury's inquiries[,]" regardless of "whether the underlying claim is related to newsgathering, speech, or association." *Id.* at 1187. "These are all First Amendment-protected activities, but none of them will prevent an individual from being required to cooperate with a good-faith grand jury investigation." *Id.*

So too here. Because "*Branzburg* controls," "the only question is whether there is evidence that the grand jury is acting in bad faith." *Id.* at 1190. As already explained, however, Plaintiffs cannot possibly prove—and this Court cannot meaningfully assess—any grand jury's intentions without access to the materials before it and an understanding of any investigation, underscoring why the Criminal Rules provide that a district court supervising a grand jury must be the one to hear any concerns about the legitimacy of the investigation or the grand jury's good faith. *See supra* pp. 2-5. Plaintiffs' First Amendment objection, if it is cognizable at all, must be presented to the allegedly supervising court in a motion to quash.[4]

---

[4] Indeed, Justice Powell's concurrence in *Branzburg* expressly contemplates that First Amendment concerns should be channeled through a motion to quash presented to the supervising court. *See* 408 U.S. at 710 (Powell, J., concurring) ("[I]f the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a

*(footnote cont'd on next page)*

13

**D.** Plaintiffs' citation to *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026), is misplaced. This line of cases applies to situations where a "state authority . . . has demanded private donor or member information." *Id.* at 1125. In that context, the Supreme Court has recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)). But Plaintiffs do not even allege any comparable burden on protected association. *See* FAC ¶¶ 130-46. Nor could they. The First Amendment protects only those individuals engaged in *expressive* association, meaning that they have joined together to collectively express and pursue the "views that brought them together" on "political, social, economic, educational, religious and cultural" matters. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984). It does not constitutionalize ordinary commercial, professional, or service-provider relationships merely because those relationships involve communication. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24-25 (1989); *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1195 (9th Cir. 1988). Plaintiffs thus have no expressive association claim available to them. And nothing else in the *First Choice* line of cases transforms an alleged grand jury subpoena for third-party medical records into a cognizable burden on protected association.

**The Court Should Not Enter Classwide Relief**

**A.  Absent class certification, the Court cannot grant relief to nonparties.**

Federal courts cannot issue relief "to *everyone* potentially affected by an allegedly unlawful act[,]" regardless of party-status. *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). Instead, judicial remedies are limited to parties. Prior to class certification, putative class members are nonparties. Unlike members of a *certified* class, members of a *putative* class are not bound by any resulting judgment. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties."); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 (1996) ("[A]ll members of the class … are bound by the judgment entered in the action."). Relief in favor of a putative class—unlike a certified class—is thus relief issued for nonparties, and it thus exceeds "the maximum a court can

legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered").

14

provide." 606 U.S. at 854.

Bearing this out, putative-class injunctions share many features of universal injunctions. Like a universal injunction, putative-class injunctions circumvent "Rule 23's procedural protections and allow courts to create *de facto* class actions at will." *CASA*, 606 U.S. at 849 (quotation omitted). Unlike rulings regarding certified classes, putative-class injunctions are plagued by the same asymmetry, which "equity abhors," as universal injunctions, where unsuccessful plaintiffs can file seriatim lawsuits until they prevail, while unsuccessful defendants need only lose once. Elias Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction?*, 77 Baylor L. Rev. 681, 705 (2025). And putative-class injunctions are unlike "[d]ecrees obtained on a bill of peace"—the historic analog to today's class action, which "would bind all members of the group[.]" *CASA*, 606 U.S. at 848 (quotation omitted).

To be sure, the Supreme Court once authorized temporary relief for a putative class. *AARP v. Trump*, 605 U.S. 91 (2025). But *AARP* was decided before *CASA* made clear that relief to non-parties is beyond what a federal court can provide. And in *AARP*, the "temporary injunctive relief to the putative class" was necessary "in order to preserve [the Court's] jurisdiction pending appeal." *Id.* at 97. No such issue is present here. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-15 (1992) (compliance with subpoena does not moot challenge to subpoena). The Court should not read *AARP* to authorize a putative-class injunction.

### B.  Plaintiffs fail to meet Rule 23's standards.

Plaintiffs seek provisional class certification. Proposed Order 1. Even "provisional" class certification requires full Rule 23 analysis. *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1121 (N.D. Cal. 2025) (citing *Mercado v. Noem*, 800 F. Supp. 3d 526, 559 (S.D.N.Y. 2025)). "The term 'provisional' ... signal[s] that the certification will dissolve if the injunction does but does 'not suggest the [Court] undertook less than a full Rule 23 analysis.'" *Id.* (quoting *Mercado*, 800 F. Supp. 3d at 559) (cleaned up). A plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.* Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* The movant must do so by a preponderance

of the evidence. *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024). And "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160.

Plaintiffs' motion cannot bear that scrutiny. They fail to affirmatively show numerosity, commonality, typicality, and adequacy, and their proposed class falls outside Rule 23(b)(2).

**1. Numerosity.** Numerosity requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Generally, a class of more than 40 members satisfies the numerosity requirement. *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 684 (C.D. Cal. 2020). Plaintiffs do not need to provide a precise headcount, but they must offer "some evidence of or reasonably estimate the number of class members[.]" *Mirabelli v. Olson*, 350 F.R.D. 138, 144 (S.D. Cal. 2025). The key word is reasonable—this Court may connect dots that the evidence supports connecting, but it may not rely on mere speculation, impression, or extrapolation from cursory allegations. *Id.*

Plaintiffs fail to supply actual evidence of numerosity. Plaintiffs' first and primary argument openly relies on speculation and extrapolation rejected by cases like *Mirabelli*. They assert, "On information and belief, at least ten hospitals in California, including LPCH, *could have* received a Grand Jury Subpoena." Class Mot. 6 (emphasis added). Plaintiffs themselves have no way of knowing which hospitals, if any, received a grand jury subpoena even substantially similar to one the allegedly issued to LPCH. Nor do they have any way of knowing the contents of any such alleged subpoena(s). This is unsurprising, given the secrecy requirements of grand jury proceedings. Fed. R. Crim. P. 6(e). Plaintiffs then try to extrapolate their proposed class based on a news article's claim that the number of patients' records sought in a *different* alleged subpoena to a *different* hospital with a *different* procedural posture numbered in the thousands. Class Mot. 6. Plaintiffs offer no reasonable method of translating such an unconfirmed statistic into an estimate of the number of individuals who could fall within their proposed class, let alone proposed subclass of LPCH patients, based on medical interventions received from specific hospitals.

Plaintiffs' fallback argument—that joinder is impracticable because "transgender individuals face

heightened risks of harassment and discrimination," *id.* at 7—lacks a basis in law. Indeed, they cite only one case for their assertion that "practical barriers to individual litigation—including the vulnerability of class members, limited ability to sue individually, and the sensitive nature of the claims—support numerosity." *Id.* at 7 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010)). As a preliminary matter, the cited portion of *Rodriguez* discusses commonality, not numerosity. But putting that aside, *Rodriguez*'s reasoning on this point is squarely limited to the immigration context. Indeed, in the same paragraph Plaintiffs cite, *Rodriguez* explained that absent class certification, the claims of many putative class members would have become procedurally moot, so certification was necessary to properly vindicate their rights. 591 F.3d at 1123. No such procedural hurdle exists here. Because their numerosity argument is purely speculative, Plaintiffs fail to affirmatively show numerosity for either their class or subclass.

**2. Commonality, typicality, and Rule 23(b)(2)**. A single problem defeats Plaintiffs' attempt to show commonality and typicality: Their proposed class sweeps in individuals who received gender-related medical interventions at *any* California hospital, but those individuals are not similarly situated with respect to Plaintiffs' claims. Plaintiffs claim to be certain LPCH has received a grand jury subpoena, and they allege a belief that at least ten unnamed other hospitals in California have also received grand jury subpoenas. Class Mot. 6. If Plaintiffs were correct, that would mean they are trying to certify a class based on *different* government actions regarding *different* third-party actors (the hospitals), only some of whom are named as defendants in this action. Separate grand jury subpoenas may have different demands and may be issued to investigate different potential violations of the law, and each recipient of a grand jury subpoena may adopt a different strategy for engaging with the government upon receipt.

On Plaintiffs' telling, prospective class members suffer injuries from different government actions—alleged grand jury subpoenas issued to different hospitals. That defeats commonality and typicality. Commonality requires a common answer to a common question among class members, "where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original) (quotation omitted); *accord Dukes*, 564 U.S. at 350 (for commonality purposes, class's claims must "depend upon a common contention" which "must be of such a nature that it is capable of classwide

17

resolution"). In other words, commonality "requires the plaintiff to demonstrate that the class members 'have suffered [or will soon suffer] the same injury[.]'" *Dukes*, 564 U.S. at 350. While it is true that a single common question will do, whether each class member "suffered a violation of the same provision of law" is not enough. *Dukes*, 564 U.S. at 350. Rather, "[c]ommonality requires the plaintiff[s] to demonstrate that the class members have suffered the same injury." *Id.* (quotations omitted). Where, on Plaintiffs' telling, prospective class members are injured by *different* government actions, which Plaintiffs have not come close to showing are materially identical, that defeats susceptibility of the questions to common proof or affirmative demonstration that common classwide answers are possible.

Plaintiffs' supposed common question of fact can be broken down in the exact way *Dukes* warns against. Plaintiffs' "Did the Department issue subpoenas? Did the subpoenas seek medical records? Are the subpoenas unconstitutional?" questions mirror the *Dukes* recitation of "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice?" *Id.* This Court should hold, as did *Dukes*, that "[r]eciting these questions is not sufficient to obtain class certification." *Id.*

The bottom line is that Plaintiffs fail to affirmatively demonstrate that they have presented any issue capable of classwide resolution in "one stroke[,]" *Dukes*, 564 U.S. at 350, because they seek to cram together claims arising from separate alleged subpoenas to separate medical institutions, without any affirmative showing that the same claims arise from the distinct alleged government actions. Plaintiffs assert that answers to the questions they articulate "are common even though class members' medical histories are not identical." Class Mot. 9. Not so. For one, even assuming a privacy interest sometimes allows a non-recipient to challenge a subpoena on the grounds that Plaintiffs raise, Plaintiffs fail to substantiate their argument that the entire class shares the same privacy interest in the requested records. *Cf. Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3d Cir. 2011) ("Privacy claims under the Fourteenth Amendment necessarily require fact-intensive and context-specific analyses, and unfortunately, bright lines generally cannot be drawn."). Plaintiffs also seek to define a class consisting of patients who were treated at several different hospitals, despite attaching an alleged subpoena allegedly served on just one hospital. As a result, Plaintiffs fail to convincingly argue that the Court can provide a "common answer[]" throughout the class. *Dukes*, 564 U.S. at 350 (quotation omitted). Commonality is therefore lacking.

Typicality, which "tend[s] to merge" with commonality, *Dukes*, 564 U.S. at 349 n.5, exists when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at 1124 (cleaned up). But here, Plaintiffs are all aggrieved by the alleged subpoena to LPCH, while they seek to represent a class consisting of individuals who may be aggrieved by alleged subpoenas allegedly issued to other medical institutions—with no affirmative showing whatsoever that other alleged subpoenas have the same terms, could be vulnerable to the same claims, or even exist at all. That defeats typicality.

Certifying a class despite those differences is especially dangerous when it comes to a Rule 23(b)(1)(A) or (b)(2) class, which binds all class members and prevents them from pursuing claims or seeking relief arising from the same factual nexus outside the class. If a no-opt-out class member needs additional relief of a different kind or could press additional claims based on his or her particular circumstances, that class member is still bound to the judgment, win or lose, and cannot pursue relief on his or her own. That is what a no-opt-out class means. Courts should not lightly place an absent class member in that position when there are signs of a lack of commonality or typicality.

Indeed, for essentially the same reasons, Rule 23(b)(1)(A) or (b)(2) treatment is not appropriate here. Under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

Again, because Plaintiffs claim certainty about exactly one alleged grand jury subpoena but seek to represent a class that includes individuals who received medical treatments at other hospitals, which Plaintiffs say may or may not have received similar or different subpoenas, that standard is not met here. The proposed class sweeps in patients of every "healthcare institution located in the State of California[.]" Class Mot. 5. Plaintiffs fall far short of affirmatively showing that every class member faces a certainly impending threat of disclosure—they themselves have no way of knowing the extent of compliance,

19

negotiation, or even contents of all the alleged subpoenas they seek to enjoin, at least against hospitals other than LPCH. The indivisible-remedy requirement of Rule 23(b)(2) is satisfied only when every class member is entitled to the requested relief. Where a significant portion of the class—here, patients of hospitals that have received no subpoena—could not independently seek the injunctions Plaintiffs request, that class fails the (b)(2) test. The proposed class sweeps in patients of every "healthcare institution located in the State of California." Class Mot. 5. The alleged subpoena at issue was allegedly served on LPCH. Plaintiffs allege "on information and belief" that "at least ten hospitals in California, including LPCH, could have received a Grand Jury Subpoena." *Id.* at 6.

The remedy Plaintiffs seek is readily divisible: Plaintiffs would get nothing from an order barring compliance with any subpoena issued to an institution other than LPCH, and patients of institutions other than LPCH would get nothing from an order barring compliance with any subpoena issued to LPCH. Nor have Plaintiffs begun to show that all alleged subpoenas and all prospective class members are sufficiently identical to permit common answers. That defeats commonality, typicality, and Rule 23(b)(2) certification.

**3. Adequacy.** Last, proceeding pseudonymously imperils Plaintiffs' ability to serve as adequate class representatives. Courts are averse to pseudonymous plaintiffs acting as class representatives unless they "show that the disclosure of their identities in the complaint would cause specific, significant detrimental consequences based on their personal circumstances." *I.L. v. Six Flags Ent. Corp.*, 2025 WL 2300009, at *3 (E.D. Cal. Aug. 8, 2025). Accordingly, courts have repeatedly expressed "concerns" about the prospect generally. *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020); *see also J.R. v. Atrium Health, Inc.*, 2024 WL 3032890, at *1 n.4 (W.D.N.C. June 17, 2024) ("[S]ome out-of-circuit courts have not permitted class representatives to proceed pseudonymously in litigation because it hampers the evaluation of the class representatives' ability to represent the entire class."). Pseudonymity makes it "unclear how [p]laintiffs [can] satisfy their burden to show adequacy when they are unknown or how they would evaluate potential conflicts with other class members." *Doe (1) v. Univ. of Kan. Hosp. Auth.*, 2025 WL 1634958, at *4 (D. Kan. June 9, 2025); *see Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 206 (D. Wyo. 2021) ("If Plaintiff proceeds under a pseudonym, it will be difficult to ascertain if Plaintiff and his counsel can fairly and adequately protect the interests of the class."); *In re*

20

*Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *4-5 (E.D. Mo. Apr. 6, 2016) (plaintiffs could not proceed pseudonymously as class representatives because the class members and public had interest in knowing who was guiding and directing the litigation).

The Department does not oppose Plaintiffs' wish to use pseudonyms to press their own claims; but Plaintiffs' choice to proceed pseudonymously imperils the Court's and the parties' ability to determine whether they are adequate class representatives. To determine adequacy, the Court must consider whether there are "conflicts of interest between named parties and the class they seek to represent[,]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997), and whether the named parties "possess the same interest and suffer the same injury as the class members," *id.* at 625-26 (quotation omitted). Adequacy "also factors in competency and conflicts of class counsel." *Id.* at 626 n.20. The Court cannot evaluate whether Plaintiffs are credible, conflict-free representatives of a class of allegedly hundreds without knowing who they are. Nor can it assess whether their litigation decisions are driven by genuine class interests or by an idiosyncratic personal circumstance that might not reflect the class as a whole. The Court has nothing more than Plaintiffs' assertion that they "have no incentive to sacrifice the interests of absent class members because the relief they seek is the same relief the Class and LPCH Subclass need" and that they are not "subject to any unique defenses that threaten to become the focus of the litigation." Class Mot. 12 (quotation omitted). That assertion cannot substitute for the showing Rule 23 requires.

Even assuming anonymity does not prevent an adequacy finding, a conflict of interest exists between Plaintiffs and other members of the proposed class. The proposed class may encompass not only patients and families who oppose disclosure and who share the named representatives' policy views, but also patients and families who hold contrary views—who may support enforcement of patient protection laws, who may have no objection to their records being produced, or who may actively prefer disclosure as a matter of personal conviction or legal strategy. A class representative who seeks to block an alleged investigation entirely cannot adequately represent a class member who does not. It follows that, without more, the Court cannot conclude that Plaintiffs "possess the same interest and suffer the same injury" as the proposed class members, *Amchem*, 521 U.S. at 594 (quotation omitted), and that the proposed class is conflict-free, *cf., e.g.*, *Kim v. Allison*, 87 F.4th 994, 1000-01 (9th Cir. 2023) (conflict of interest when,

21

"by maximizing their own interests, the putative representatives … would necessarily undercut the interests of another portion of the class"). Also, given that the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)," the issues preventing findings of commonality and typicality—especially with respect to putative class members that could be affected by hypothetical subpoenas in the future—also demonstrate that "the named plaintiff's claim and the class claims are [not] so interrelated," and "that the interests of the class members will [not] be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20.

Plaintiffs' response—asserting that "[t]heir interests are aligned with absent class members[,]" Class Mot. 12, by protecting their privacy regardless of their views on the merits—is circular. It assumes that every member of the proposed class shares the named representatives' assessment that disclosure is harmful and that the alleged investigation is illegitimate. That assumption is not established, and under Rule 23, it cannot be assumed. This *ipse dixit*—especially when putative class members may well disagree with Plaintiffs' evaluation of the Department's investigation—does not suffice. *Cf. Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard.").

### C.   Certification is improper under Rule 23(b)(1)(A).

Certification is proper under Rule 23(b)(1)(A) when prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications" that would establish "incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). This refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (citation omitted).

Plaintiffs claim certification is proper pursuant to this rule because "DOJ is obliged by law to treat class members alike with respect to the constitutional question at issue" and "[i]f class members were required to proceed separately, different courts could impose inconsistent obligations on DOJ and subpoenaed providers." Class Mot. 16. This contention fails for the same reasons as discussed above. Plaintiffs give this Court no legal reason to treat all members of the purported class the same. They speculate as to the number of alleged subpoenas that exist, have no way of knowing their contents to the extent that they even exist at all, and have no evidence regarding the extent to which each alleged

subpoena recipient maintains records or complies with the alleged subpoena. And Plaintiffs mischaracterize the circumstance Rule 23(b)(1)(A) seeks to avoid. Plaintiffs argue it would be improper for one court to enjoin the Department from obtaining the records of some patients while another court permits obtaining the records of others, and for courts to impose different limitations, retention policies, etc. Class Mot. 16. But such "administrative difficulty . . . required by different courts for differently situated potential claimants does not rise to the level of requiring of [the Department] *inconsistent* courses of conduct." *Zinser*, 253 F.3d at 1195. This is why the Advisory Committee Notes refer to "actions to declare bond issues invalid, to fix the rights and duties of a riparian owner, and to determine a landowner's rights and duties respecting a claimed nuisance." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973); Fed. R. Civ. P. 23(b)(1)(A) advisory committee's note to 1966 amendment. Accordingly, the rule is in place not to ensure that all plaintiffs receive the same judgment, as Plaintiffs suggest, but to protect the non-movant from genuinely "incompatible" judgments that present practical impossibilities. Fed. R. Civ. P. 23(b)(1)(A). No such practical impossibility exists, where Hospital A could comply with Subpoena A even if a court bars compliance with Subpoena B by Hospital B, without creating any "incompatible standards of conduct" regarding medical records held by any institution regarding any putative class member. *Id.* If anything, Plaintiffs' concern about the prospect of inconsistent rulings by different courts is good reason to conclude that challenges to any grand jury subpoenas belong in the issuing court—not a reason to certify a class in this Court in order to interfere with a different court's alleged proceedings.

In sum, because members of the proposed class may justifiably be treated differently and Plaintiffs fail to show that the Department cannot practically manage different obligations regarding different patients or subpoenas, certification under Rule 23(b)(1)(A) is improper.

### The Non-Merits Factors Disfavor Injunctive Relief

Because Plaintiffs are unlikely to succeed on the merits, the Court should deny the motion and need not consider the remaining equitable factors. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). In any event, these factors too strongly favor the government.

Initially, Plaintiffs have not shown that they are "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs cannot

rely on a presumption that constitutional injuries are irreparable because Plaintiffs have not shown a likely violation of their constitutional rights, for the reasons explained above. Plaintiffs' second theory—that disclosure of their personal information would irreparably harm their privacy interests—lacks factual and legal support. As to the former, Plaintiffs have been put on notice that "their identifying information could be revealed to the government in response to a subpoena or court order[,]" meaning that Plaintiffs "do not have a reasonable expectation of complete privacy" in records held by third-party providers. *In re Grand Jury Subpoena*, 875 F.3d at 1187; *see* Ex. A, LPCH NPP. And as for the latter, Plaintiffs cite no authority for the idea that providing their records to the federal government in response to an alleged grand jury subpoena would constitute irreparable harm. Grand jury proceedings are subject to strict secrecy requirements, Fed. R. Crim. P. 6—a tradition that is "older than our Nation itself." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959). And "the characteristic secrecy of grand jury proceedings is a further protection against" concerns about disclosure of personal information. *Branzburg*, 408 U.S. at 700. Moreover, documents obtained via grand jury subpoena "are entitled to the same rule of secrecy that governs the subpoena itself." *Kalbers v. Dep't of Just.*, 166 F.4th 783, 787 (9th Cir. 2026). Courts have relied on just this point to reject claims of irreparable harm. *See Trump v. Vance*, 481 F. Supp. 3d 161, 164 (S.D.N.Y. 2020) (rejecting claim of irreparable harm "[b]ecause a grand jury is under a legal obligation to keep the confidentiality of its records").

The balance of harms and public interest also do not favor Plaintiffs. *See Winter*, 555 U.S. at 20. The public and the government have a "compelling interest in finding, convicting, and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted); *Dole*, 950 F.2d at 1461 ("[T]here is little doubt that the Department's purpose of investigating possible criminal violations of [a federal law] serves a compelling governmental interest."). And there is a strong "public interest in law enforcement and in ensuring effective grand jury proceedings." *Branzburg*, 408 U.S. at 690; *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d at 1191 ("The government clearly has a legitimate and compelling interest in the grand jury's investigation into possible violations of federal law."); *accord, e.g.*, *In re Sealed Case*, 794 F.2d 749, 751 n.3 (D.C. Cir. 1986) (per curiam) (recognizing "the weighty public interest in the orderly functioning of grand juries and the judicial process"); *see also In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) (interest in finding, convicting, and

punishing those who violate the law far "outweighs the privacy rights of those whose [medical] records" are sought via administrative subpoena). Plaintiffs' contrary argument rests solely on the merits, TRO Mot. 24-25, and fails for the reasons already explained.

<strong><u>CONCLUSION</u></strong>

The Court should deny Plaintiffs' motions for a temporary restraining order and for class certification. If the Court grants the motion for a temporary restraining order, the Department respectfully requests that the Court stay its order pending appeal, or at minimum for 10 days.

25

Dated:  June 17, 2026                    Respectfully submitted,


                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         JORDAN CAMPBELL
                                         Deputy Assistant Attorney General


                                         /s/ *Sarah Welch*
                                         SARAH WELCH
                                         Senior Counsel to the Assistant Attorney General
                                         950 Pennsylvania Ave. NW
                                         Washington, DC 20530
                                         202-514-3180
                                         sarah.e.welch@usdoj.gov


                                         JOHN BAILEY
                                         BRANTLEY MAYERS
                                         Counsel to the Assistant Attorney General

                                         LISA K. HSIAO
                                         Acting Director

                                         LUKE MILLER
                                         EUGENE O'HALLORAN
                                         SHIMENG ZHANG
                                         Trial Attorneys

                                         U.S. Department of Justice
                                         Civil Division

                                         Attorneys for Federal Defendants

26