SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street #11548
Sacramento, California 94102
Telephone: (415) 392-6257
Email:    sminter@nclrights.org
          cstoll@nclrights.org
          awhelan@nclrights.org
          rberg@nclrights.org

ABBE DAVID LOWELL (*pro hac vice*)
CALEB HAYES-DEATS (*pro hac vice*)
SCHUYLER STANDLEY (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Telephone:   (202) 964-6110
Facsimile:   (202) 964-6116
Email:
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
Sstandley@lowerllandassociates.com

Attorneys for Plaintiffs

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       ggrunfeld@rbgg.com
             kjanssen@rbgg.com

JOSHUA ROVENGER (*pro hac vice*)
DONOVAN BENDANA (*pro hac vice*)
GLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts 02108
Telephone: (617) 426-1350
Email:       jrovenger@gladlaw.org
             dbendana@gladlaw.org

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A.; Z.B., a minor, by and through their parent, B.B.; Z.C., a minor, by and through their parent, C.C.; Z.D., a minor, by and through their parent, D.D.; Z.E., a minor, by and through their parent, E.E.; F.F.; and Z.G., a minor, by and through their parents, G.G. and A.G., on behalf of themselves and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; U.S. DEPARTMENT OF JUSTICE; and LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, a California nonprofit public benefit corporation, <br><br> Defendant. | Case No. 5:26-cv-04998-PCP <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION** <br><br> Judge:   Hon. P. Casey Pitts <br><br> Date:   June 24, 2026 <br> Time:   2:00 p.m <br> Courtroom:   8 |

[6024864.1]

Case No. 5:26-cv-04998-PCP

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................2

I.      PLAINTIFFS WILL LIKELY SUCCEED ON THEIR CLASSWIDE CLAIMS .....................2

        A.      This Court Has Jurisdiction to Protect Plaintiffs' Constitutional Rights ........................2

        B.      Plaintiffs Will Likely Prevail on Their Fifth Amendment Claim ...................................6

        C.      Plaintiffs Will Likely Prevail on Their First Amendment Claim....................................8

II.     PLAINTIFFS SATISFY RULE 23'S REQUIREMENTS FOR PROVISIONAL
        CERTIFICATION...............................................................................................................10

        A.      Provisional Class Certification Is Warranted .................................................................10

        B.      Plaintiffs Have Satisfied Numerosity, Commonality, Typicality, and
                Rule 23(b)(2) ..................................................................................................................11

        C.      Plaintiffs Are Adequate Class Representatives ..............................................................12

        D.      Certification Is Proper Under Rule 23(b)(1)(A)..............................................................13

III.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION..........14

IV.     THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN
        ORDER PRESERVING PLAINTIFFS' PRIVACY RIGHTS ...................................................15

CONCLUSION .............................................................................................................................15

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*AARP v. Trump*,
605 U.S. 91 (2025) .................................................................................................. 11

*Abouammo v. United States*,
608 U.S. _, 2026 WL 1686084 (June 11, 2026).......................................................... 5

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ............................................................................................... 7, 9

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ............................................................................................... 2, 3

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) .................................................................................................. 10

*Barbara v. Trump*,
790 F. Supp. 3d 80 (D.N.H.) ................................................................................... 13

*Barbara v. Trump*,
146 S. Ct. 879 (2025) .............................................................................................. 13

*Bell v. Hood*,
327 U.S. 678 (1946) ............................................................................................... 2, 3

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ................................................................................. 4, 7, 10, 15

*Bursey v. United States*,
466 F.2d 1059 (9th Cir. 1972).................................................................................. 10

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) .............................................................................................. 9

*Coe v. Blanche*,
No. 1:26-cv-4641-JAV, ECF 46-1 & 46-2 (S.D.N.Y.) .............................................. 8

*Conant v. Walters*,
309 F.3d 629 (9th Cir. 2002)................................................................................. 8, 10

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .................................................................................................... 2

*Cummings v. Connell*,
316 F.3d 886 (9th Cir. 2003).................................................................................... 13

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022) .................................................................................................. 6

*Doe v. Bonta*,
 101 F.4th 633 (9th Cir. 2024)............................................................................................... 6

*Doe v. City of Apple Valley*,
 No. 20-CV-499 (PJS/DTS), 2020 WL 1061442 (D. Minn. Mar. 5, 2020) .............................. 13

*Doe v. Mindgeek USA Inc.*,
 702 F. Supp. 3d 937 (C.D. Cal. 2023)................................................................................. 12

*Doe v. Mundy*,
 514 F.2d 1179, 1182 (7th Cir. 1975)................................................................................. 13

*Does 1-10 v. Univ. of Washington*,
 326 F.R.D. 669 (W.D. Wash. 2018)................................................................................... 13

*Endocrine Soc'y v. FTC*,
 2026 WL 1257289 (D.D.C. May 7, 2026) ....................................................................... 2, 10

*Ex parte Young*,
 209 U.S. 123 (1908) ........................................................................................................... 2

*First Choice Women's Resource Ctrs., Inc. v. Davenport*,
 146 S. Ct. 1114 (2026) .................................................................................................... 8, 9

*Free Enter. Fund v. PCAOB*,
 561 U.S. 477 (2010) ........................................................................................................... 2

*Garro Pinchi v. Noem*,
 813 F. Supp. 3d 973 (N.D. Cal. 2025) ............................................................................... 11

*Gray v. County of Riverside*,
 No. 13-cv-444, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) .............................................. 14

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)........................................................................................... 12

*In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*,
 2026 WL 1392565 (D.R.I. May 14, 2026)......................................................................... 14

*In re Admin. Subpoena No. 25-1431-019*,
 800 F. Supp. 3d 229 (D. Mass. 2025) ............................................................................... 10

*In re CNH Subpoena*,
 No. 25-cv-03780-JRR, 2026 WL 160792 (D. Md. Jan. 21, 2026)....................................... 15

*In re Grand Jury Subpoena, No. 16-03-217*,
 875 F.3d 1179 (9th Cir. 2017)........................................................................................... 10

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
 823 F. Supp. 3d 1 (D.D.C. Mar. 13, 2026)........................................................................... 7

*In re Meta Pixel Healthcare Litig.*,
 647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................... 14

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

*In re Subpoena Duces Tecum No. 25-1431-016*,
  No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025)....................................... 7

*In re: Subpoenas*,
  No. 0:26-mc-00043-PJS, ECF 1 (D. Minn. Jun. 22, 2026) ......................................................... 7

*Kalbers v. U.S. Dep't of Just.*,
  166 F.4th 783 (9th Cir. 2026)........................................................................................................ 14

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
  787 F.3d 1237 (9th Cir. 2015)........................................................................................................ 4

*Laird v. Tatum*,
  408 U.S. 1 (1972) .......................................................................................................................... 8

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
  752 F.3d 755 (9th Cir. 2014) ......................................................................................................... 3

*Maehr v. U.S. Dep't of State*,
  5 F.4th 1100 (10th Cir. 2021) ........................................................................................................ 2

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ................................................................................................. 14, 15

*N.Y. Times v. Ashcroft*,
  No. 04-cv-7677 (RWS), 2004 WL 3354862 (S.D.N.Y. Sept. 28, 2004) ...................................... 3

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 4493 (1958) .................................................................................................................... 9

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  585 U.S. 755 (2018) ...................................................................................................................... 8

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017)........................................................................................................ 2

*New York Times Co. v. Gonzales*,
  459 F.3d 160 (2d Cir. 2006)...................................................................................................... 3, 4

*NRA of Am. v. Vullo*,
  602 U.S. 175 (2024) .................................................................................................................... 10

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
  807 F. Supp. 3d 1295 (W.D. Wash. 2025) ............................................................................... 3, 6

*Rapuano v. Trs. of Dartmouth Coll.*,
  334 F.R.D. 637 (D.N.H. 2020)..................................................................................................... 13

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) .................................................................................................................... 10

*Rosenberger v. Rector*,
  515 U.S. 819 (1995) ...................................................................................................................... 8

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

*Samia v. United States*,
  599 U.S. 6355 (2023) ......................................................................................... 15

*Sammartano v. First Judicial Dist. Ct.*,
  303 F.3d 959 (9th Cir. 2002) ............................................................................. 15

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ..................................................................................... 10, 11

*Trump v. Vance*,
  591 U.S. 786 (2020) ............................................................................................ 7

*Tucson Woman's Clinic v. Eden*,
  379 F.3d 531 (9th Cir. 2004) ................................................................. 6, 7, 8, 14

*United States v. Calandra*,
  414 U.S. 338 (1974) ......................................................................................... 4, 6

*United States v. Cessa*,
  856 F.3d 370 (5th Cir. 2017) ............................................................................... 5

*United States v. R. Enters.*,
  498 U.S. 292 (1991) ............................................................................................ 7

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) .......................................................................................... 15

*University of Pennsylvania v. EEOC* ,
  493 U.S. 182 (1990) ............................................................................................ 9

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 7486 (1976) .......................................................................................... 8

*Vasquez Perdomo v. Noem*,
  148 F.4th 656 (9th Cir. 2025) ........................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................... 12

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ........................................................................... 14

**CONSTITUTIONS**

U.S. Const. amend. I ................................................................................................ 9

**STATUTES**

5 U.S.C. § 701 ......................................................................................................... 2

5 U.S.C. § 702 ......................................................................................................... 2

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND
ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

**OTHER AUTHORITIES**

8A Fed. Proc., L. Ed. § 22:459.................................................................................................4

U.S. Dep't of Justice, *Justice Manual* § 9-11.120.................................................................5

U.S. Dep't of Justice, *Justice Manual* § 9-11.121.................................................................5

**RULES**

Fed. R. Crim. P. 17...................................................................................................................4

Fed. R. Crim. P. 6.....................................................................................................................6

**TREATISES**

1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions,* § 3:13 (6th Ed. 2025)................ 11

William Blackstone, *Commentaries on the Laws of England* 300.............................................5

**MISCELLANEOUS**

Att'y Gen. of Texas, Press Release, AG Paxton Declares So-Called Sex-Change Procedures on Children and Prescription of Puberty Blockers to be "Child Abuse" Under Texas Law (Feb. 21, 2022), https://perma.cc/Z67Z-A5RR ......................................................................... 7

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

**INTRODUCTION**

This case asks whether California courts can protect the First and Fifth Amendment rights of California patients, who sought and received care in California, against unprecedented intrusions into their privacy by the Department of Justice ("DOJ"). DOJ has engaged in a sweeping campaign to obtain proposed class members' protected health information ("PHI") as part of a concerted, nationwide effort to end transgender healthcare. It first issued HIPAA subpoenas to 20 hospitals, including several in California. When courts around the country refused to enforce those subpoenas, DOJ responded by issuing substantially similar grand jury subpoenas from Texas. DOJ's shifting tactics may change the type of subpoena, but they cannot change the constitutional limits on what it may obtain. DOJ's campaign, in its entirety, violates the Fifth Amendment by seeking to compel disclosure of the class's most sensitive personal information when DOJ has no legitimate need for it. It also violates the First Amendment both by chilling protected conversations between doctors and patients about healthcare that California deems a right under its state constitution, and by discriminating based on viewpoint, singling out those who sought and provided medical advice recommending a form of care DOJ has condemned and vowed to end.

Faced with Plaintiffs' assertion of their constitutional rights to prevent DOJ from obtaining their most sensitive information, DOJ's opposition is most notable for what it does not say. It does not identify any legitimate need for the identifying records of patients who received healthcare provided exclusively in California. And it does not deny that it seeks this information as one part of a coordinated national effort to end that care. DOJ instead argues that this Court cannot protect Plaintiffs because only the Northern District of Texas may review its grand jury subpoenas. That is a *non sequitur*. Plaintiffs do not seek to quash the subpoenas, but instead challenge DOJ's campaign to obtain Plaintiffs' PHI by any means that would violate the Constitution. Longstanding precedent gives this Court jurisdiction to enforce Plaintiffs' constitutional rights, which limit the circumstances in which DOJ may obtain that information, whatever instrument it uses. That an order protecting Plaintiffs' rights would also prevent enforcement of a grand jury subpoena does not transform Plaintiffs' constitutional challenge into a motion to quash or make the Northern District of Texas the exclusive forum for adjudication of their rights.

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

DOJ's campaign to obtain the PHI of California transgender minors also makes this an easy case for class certification. DOJ does not dispute that it has issued virtually identical requests to multiple hospitals, seeking the same information for all transgender minors. That uniform conduct gives rise to common constitutional questions and allows the Court to provide relief to all class members with a single injunction. The Court should thus grant provisional certification and issue a preliminary injunction protecting the First and Fifth Amendment rights of transgender minors in California.

## ARGUMENT

## I. PLAINTIFFS WILL LIKELY SUCCEED ON THEIR CLASSWIDE CLAIMS

### A. This Court Has Jurisdiction to Protect Plaintiffs' Constitutional Rights

DOJ is wrong to argue that Plaintiffs lack a "cause of action." ECF 79 ("Opp.") at 5. Courts of equity have long enjoined unconstitutional action by federal officers—a power that "reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). That equitable cause of action exists "without regard to the particular constitutional provisions at issue," *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010), because injunctive relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see Bell v. Hood*, 327 U.S. 678, 684 (1946); *Ex parte Young*, 209 U.S. 123, 149 (1908). DOJ ignores this authority, which refutes its assertion that Plaintiffs have "no right, and this Court has no authority, to" stop constitutional violations. *Endocrine Soc'y v. FTC*, 2026 WL 1257289, at *8 (D.D.C. May 7, 2026).

DOJ's invocation of "sovereign immunity" fares no better. Opp. 5-6. Congress waived immunity against any "action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer" acted "in an official capacity." 5 U.S.C. § 702. That waiver "is not limited to suits under the Administrative Procedure Act." *Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106-07 (10th Cir. 2021). By its plain text, "§ 702 waives sovereign immunity for all non-monetary claims" seeking relief from unlawful conduct by federal officers. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017). DOJ is an "agency," 5 U.S.C. § 701(b)(1), and Acting Attorney General Blanche is an officer. Section 702's waiver thus covers Plaintiffs' claims for equitable and declaratory relief. The APA's exclusion of courts from the definition of "agency" does

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

not aid DOJ, because Plaintiffs challenge DOJ's conduct, not any court's.

DOJ urges that the Court cannot "prohibit[] compliance with a grand jury subpoena ... issued by a different district court." Opp. 1. But that is not what Plaintiffs seek. Plaintiffs request an order barring DOJ from "obtaining Plaintiffs' and the proposed class's identifying information or protected health information in violation of rights secured by the U.S. Constitution." ECF 46-7. "[I]t is established practice for ... federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Bell*, 327 U.S. at 684; *see Armstrong*, 575 U.S. at 327. The order Plaintiffs seek would protect their constitutional rights against any effort to obtain PHI, whatever form that effort takes.

DOJ's shifting tactics show why the relief sought in this action must address DOJ's effort to obtain these records by any means. DOJ first issued more than 20 HIPAA subpoenas seeking a "staggering amount of personal health data" concerning transgender minors. *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303-04 (W.D. Wash. 2025); *see* ECF 46-2 ("Mot.") at 3-5. As court after court has recognized, DOJ's objective is to "end the very practice it claims to be merely investigating." *QueerDoc*, 807 F. Supp. 3d at 1303-04. Faced with adverse rulings, DOJ then withdrew the HIPAA subpoenas "out of the blue" and issued "substantially similar" grand jury subpoenas. ECF 31-1 ¶ 6. The proposed class should not have to guess what DOJ will try next, and should not need to file repeated motions in every forum DOJ might secretly petition, if they even learn of those efforts. The First and Fifth Amendments limit DOJ's access to this information, whatever method it uses.

*New York Times Co. v. Gonzales* underscores the appropriateness of an action to declare and enforce the proposed class's constitutional rights. 459 F.3d 160, 167 (2d Cir. 2006). Such an action will "clarify" the proposed class's rights, "provide 'relief from uncertainty,'" and "'finalize the controversy' over" whether DOJ can seek the class's PHI *en masse*. *Id.* DOJ urges that *Gonzales* considered only a request for declaratory relief, not an injunction. Opp. 4-5. That is wrong. The *Times* sought an "Order declaring that Defendants may not obtain or review" the records at issue. *N.Y. Times v. Ashcroft*, No. 04-cv-7677 (RWS), 2004 WL 3354862 (S.D.N.Y. Sept. 28, 2004). And even if Plaintiffs have not yet obtained the declaratory judgment they seek here, this Court can issue an injunction "sufficient to protect the status quo" until final judgment issues. *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 767 (9th Cir. 2014).

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

DOJ next contends that, in *Gonzales*, it was "unknown whether subpoenas have been issued." Opp. 5 (quoting 459 F.3d at 167). For much of the class, that is no distinction at all. Californian minors who sought transgender healthcare at hospitals other than Lucile Packard Children's Hospital ("LPCH"), like the *Times*, know of no subpoena they can quash. *Gonzales*, 459 F.3d at 167. Regardless, the Second Circuit's holding did not depend on the absence of a grand jury subpoena. The Circuit also considered the possibility that the recipients of a grand jury subpoena had "already complied." *Id.* Even in that circumstance, it held that a declaratory judgment would clarify the *Times'* rights. *Id.* Finally, DOJ's suggestion that *Gonzales* did not "consider Rule 17's limitations," Opp. 4, is just wrong. The Second Circuit specifically considered whether the availability of a motion to quash under Rule 17(c)(2) "renders declaratory relief inappropriate," holding it did not. *Gonzales*, 459 F.3d at 166. Here, as in *Gonzales,* declaratory relief is also proper because moving to quash the subpoena "would not offer [Plaintiffs] the same relief as a declaratory action under the circumstances of this case." *Id.* at 167.

That the requested order would constrain DOJ's ability to enforce at least one publicly disclosed grand jury subpoena is unsurprising. The "grand jury's subpoena power" cannot be used to "violate a valid privilege, whether established by the Constitution, statutes, or the common law." *United States v. Calandra*, 414 U.S. 338, 346 (1974). A grand jury subpoena "must operate within the limits of the First Amendment as well as the Fifth." *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972); *see Calandra*, 414 U.S. at 346. Any implications this Court's protection of the proposed class's rights may have for DOJ's grand jury subpoena do not "improperly intrude upon the issuing court's supervisory authority." Opp. 3. They are the logical consequence of this Court's jurisdiction to protect the proposed class's rights.

DOJ's invocation of "comity" lacks merit. Opp. 4. Comity concerns arise only if "a similar *case* with substantially similar issues and parties was previously filed in another district court." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (emphasis added). No such case has been filed. Grand jury subpoenas issue without any judicial determination, and a party moving to quash a subpoena cannot obtain a binding declaration of its rights such as the one Plaintiffs seek in this case. The clerk of the court "*must* issue a blank subpoena—signed and sealed—to the party requesting it, and that party must fill in the blanks before the subpoena is served." Fed. R. Crim. P. 17(a). DOJ can thus "cause, without specific grand jury authorization, a subpoena to be issued." 8A

Fed. Proc., L. Ed. § 22:459. DOJ effectively asks this Court to defer to its unilateral issuance of a subpoena as if it were a judicial act. But the party accused of violating constitutional rights deserves no such deference. If anything, comity considerations would favor allowing this case, as the first filed, to resolve any issues relating to the proposed class's First and Fifth Amendment rights. *Kohn*, 787 F.3d at 1241 (affirming stay in favor of "previously filed lawsuit" involving similar parties and issues).

Nor does "judicial restraint," Opp. 4, counsel against protecting the proposed class's rights in the State where they sought and received care. DOJ seeks California patients' records through a Texas grand jury, rather than through any District where the care occurred. DOJ responds that Rule 17(e) permits a grand jury subpoena to be served "at any place within the United States." Opp. 3. But service does not establish a subpoena's permissible scope. Wherever a subpoena is served, the grand jury's reach is "limited by its function toward possible return of an indictment"—that is, to offenses it could charge in its own District. U.S. Dep't of Justice, *Justice Manual* § 9-11.120, at https://perma.cc/VSZ4-33JR. Grand juries do not have a general license to investigate crimes untethered to the Districts where they sit. At common law, a grand jury could not "'regularly enquire of a fact done out of that county for which they [we]re sworn.'" *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017) (quoting William Blackstone, *Commentaries on the Laws of England* 300). DOJ's own policy reflects that historical limit: "A case should not be presented to a grand jury in a district unless venue for the offense lies in that district." U.S. Dep't of Justice, *Justice Manual* § 9-11.121. And the Constitution "twice safeguards" defendants' venue rights, requiring prosecution in the District where an offense's "essential conduct elements" occurred. *Abouammo v. United States*, 608 U.S. _, 2026 WL 1686084, at *4 (June 11, 2026) (internal quotation marks omitted). That California care could not be prosecuted in Texas only underscores that DOJ's demand is one piece of a nationwide effort to obtain these records however it can—and that this Court is a proper forum to protect Plaintiffs' rights.

DOJ also errs in treating Rule 6(e) secrecy as a reason the Court cannot weigh its asserted interest. Opp. 3, 7. DOJ has identified no legitimate need for these patients' identifying records, and a generalized, unexplained law-enforcement interest cannot outweigh the concrete and irreversible harm disclosure would inflict on the class's privacy and First Amendment rights. In any event, secrecy did not compel DOJ's silence: Rule 6(e) authorizes disclosure of grand jury matters in connection with a

judicial proceeding, including one in another district. Fed. R. Crim. P. 6(e)(3). And DOJ offers no reason to believe it could not have made such a showing here. DOJ cannot both decline to justify its demand and insist that its interest prevails.

### B.   Plaintiffs Will Likely Prevail on Their Fifth Amendment Claim

Plaintiffs' opening brief explained why Ninth Circuit precedent supports a determination that DOJ seeks to violate the proposed class's Fifth Amendment right to informational privacy. Mot. 11-21; *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551-53 (9th Cir. 2004), *overruled in part on other grounds by Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). DOJ seeks "medical records," which qualify as "'highly sensitive' personal information." *Doe v. Bonta*, 101 F.4th 633, 637 (9th Cir. 2024) (internal citation omitted). "The potential for harm in any subsequent non-consensual disclosure is obviously tremendous." *Tucson Woman's Clinic*, 379 F.3d at 552. There are no adequate "safeguards" against disclosure, because harm results from "release of information to government employees" who will indisputably receive it. *Id.* And DOJ has no legitimate need for the information. As courts have recognized, DOJ's objective is to "end the very practice it claims to be merely investigating"—an aim that supplies no legitimate interest capable of outweighing the class's privacy interest under any balancing. *QueerDoc*, 807 F. Supp. 3d at 1303-04.

DOJ has no real answer to *Tucson Woman's Clinic*—only an oblique assertion that "reliance" on "multifactor balancing tests" is "misplaced" in the grand jury context. Opp. 9. But that balancing test is exactly how the Ninth Circuit decides "whether the governmental interest in obtaining information outweighs the individual's privacy interest," *Tucson Woman's Clinic*, 379 F.3d at 551, and DOJ gives no reason it stops applying when DOJ seeks the same information by grand jury subpoena. DOJ's own authority makes the point. It repeatedly quotes *Calandra* for the proposition that a "witness has no right of privacy before the grand jury." Opp. 9 (quoting 414 U.S. at 353). But *Calandra* holds that the grand jury's subpoena power, however broad, "may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law," including "Fifth Amendment privilege." 414 U.S. at 346, 353. The proposed class invokes no amorphous preference against "unwelcome disclosure of ... personal affairs," *id.* at 353; it invokes a Fifth Amendment right that binding precedent recognizes, *Tucson Woman's Clinic*, 379 F.3d at 551-53. That right limits DOJ's power to obtain that information,

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

regardless of the particular tool it uses.

DOJ's side of the balance is weak for the further reason that DOJ has identified no legitimate need for the class's identifying records and may not compel them in order to suppress lawful care. *E.g.*, *United States v. R. Enters.*, 498 U.S. 292, 299 (1991); *Branzburg*, 408 U.S. at 708; *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 7-8 (D.D.C. Mar. 13, 2026); *see also In re: Subpoenas*, No. 0:26-mc-00043-PJS, ECF 1 (D. Minn. Jun. 22, 2026) (quashing six DOJ grand jury subpoenas deemed retaliatory and unlawful). DOJ responds that the Court lacks "basic facts to meaningfully evaluate" its position, Opp. 1, but the public record already shows what DOJ is after: courts have found "strong evidence" that DOJ has pursued this same category of PHI as part of its effort to end this care. *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151, at *13 (W.D. Wash. Sept. 3, 2025); *see* Mot. 3-4. Although DOJ says it need not "explain in too much detail the particular reasons underlying a subpoena," Opp. 8, it has not explained at all. Faced with repeated court findings, DOJ responds with silence—leaving nothing on its side of the balance.

Nor can DOJ contend that grand jury secrecy provides "robust protection" of the proposed class's privacy rights. Opp. 7. Rule 6(e)(3)(A)(ii) would permit sharing the proposed class's PHI with "state" officials in Texas. Those same officials have declared healthcare received by class members to be "child abuse." *See* Att'y Gen. of Texas, Press Release, AG Paxton Declares So-Called Sex-Change Procedures on Children and Prescription of Puberty Blockers to be "Child Abuse" Under Texas Law (Feb. 21, 2022), https://perma.cc/Z67Z-A5RR. "The potential for harm" is "obviously tremendous." *Tucson Woman's Clinic*, 379 F.3d at 552. *Trump v. Vance* is not to the contrary: it invoked grand jury secrecy to answer a President's claim of reputational "*stigma*," not a privacy interest in medical records. 591 U.S. 786, 803-04 (2020). Assurances of confidentiality "do not eliminate" the burden of compelled disclosure *to DOJ*—the injury here. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021).

Finally, the proposed class's constitutional rights do not evaporate because LPCH advised patients that it "may release your health information to law enforcement" when "required by law" because "certain conditions are met." ECF 79-1 at 7. That disclosure explicitly incorporates the legal protections the proposed class invokes, which necessarily include the requirement that the need for disclosure outweighs Plaintiffs' Fifth Amendment interest in protecting this "highly sensitive" personal

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

information. Virtually every hospital makes such disclosures. *See Coe v. Blanche*, No. 1:26-cv-4641-JAV, ECF 46-1 & 46-2 (S.D.N.Y.). Such boilerplate disclaimers have never been deemed to override patients' acute interest in the privacy of their PHI. *Tucson Woman's Clinic*, 379 F.3d at 552.

### C. Plaintiffs Will Likely Prevail on Their First Amendment Claim

The First Amendment protects "communication between a doctor and a patient." *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002); *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 771 (2018). Plaintiffs may assert that protection as the intended recipients of that speech, because the First Amendment provides protection to a communication's "source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). DOJ's demand burdens that speech in two independent ways. It compels disclosure of communications—the diagnoses, assessments, and counseling exchanged in treatment—together with the identities of the patients and providers who exchanged them, chilling the candor on which effective care depends. And it discriminates based on viewpoint: DOJ "seeks to punish" the class "on the basis of the content of doctor-patient communications," *Conant*, 309 F.3d at 637, demanding the records of only those patients who "asserted" a "gender identity" different from their "biological sex," ECF 31-2 at 6-8. Targeting the "views taken by speakers on a subject" makes the "violation of the First Amendment ... all the more blatant." *Conant*, 309 F.3d at 637 (quoting *Rosenberger v. Rector*, 515 U.S. 819, 829 (1995)). These burdens attach to DOJ's effort to obtain this information whatever instrument it uses.

DOJ contests standing under *Laird v. Tatum*, 408 U.S. 1 (1972). But the Supreme Court recently found *Laird* to be "nothing like" a case where a plaintiff faces an existing government investigation. *First Choice Women's Resource Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1127-28 (2026). DOJ has "targeted" the proposed class "for investigation." *Id.* at 1128. It repeatedly "commanded production" of their private PHI, first with HIPAA subpoenas and later grand jury subpoenas "backed by a threat of court-ordered compliance followed by the possibility of sanctions." *Id.* Those threats injure the proposed class's First Amendment rights by causing class members and their physicians to "cease or modify protected First Amendment advocacy the government disfavors." *Id.* at 1125.

DOJ seeks to distinguish *First Choice* on the ground that it involved "protected association," rather than protected speech. Opp. 14. But the First Amendment equally prohibits "abridging" both

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

"freedom of speech" and the "right of the people peaceably to assemble." U.S. Const. amend. I. If subpoenaing membership lists deters people from associating, then subpoenaing patients' discussions about their private medical information equally deters them from speaking to their health care providers. *See Chiles v. Salazar*, 146 S. Ct. 1010, 1019 (2026). That is not conjecture. It is what the proposed class representatives have declared under oath. ECF 45-7 ¶ 5; ECF 45-8 ¶ 13. *First Choice* held that the subpoena at issue chilled not only "associating," but also the "advocacy" that resulted from that association. 146 S. Ct. at 1125. It makes no sense—none—to hold that a subpoena injures the rights of adult "donors," but not vulnerable children and their parents seeking candid medical advice concerning intimate personal matters. *Id.* DOJ's demand for patient and provider identities also raises an independent problem. Compelled disclosure of the identities of those who have engaged in disfavored but lawful activity has long drawn exacting scrutiny, because it induces self-censorship and exposes those identified to threats, harassment, and reprisal. *See Ams. for Prosperity*, 594 U.S. at 606-07; *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462-63 (1958).

DOJ next contends that its investigation "does not, directly or indirectly, regulate what patients may say or what doctors may advise." Opp. 11-12. Again, that argument cannot be reconciled with *First Choice*. DOJ subjects to investigation minors who told their physicians that they have a "gender identity" that differs from their "biological sex." ECF 31-2 at 6-8. It is not investigating minors who did not. Allowing that investigation to proceed would "achieve exactly what the First Amendment forbids, marginalizing dissident voices and reshaping the marketplace of ideas to [DOJ's] pleasure." *First Choice*, 146 S. Ct. at 1130. The Supreme Court's decision in *University of Pennsylvania v. EEOC* is not to the contrary. 493 U.S. 182 (1990). That case lacked any allegation that the "subpoenas are intended to or will in fact direct the content of ... discourse toward or away from particular subjects or points of view." *Id.* at 198. Any impact on First Amendment rights was thus "extremely attenuated." *Id.* at 199. Here, in contrast, DOJ's investigation explicitly discriminates based on viewpoint. A sister court has recognized this when reviewing the FTC's civil investigative demands to medical organizations. The District Court for the District of Columbia found that requests "seek[ing] substantive content that itself would be protected by the First Amendment and the identity of the individuals who created the content" raised "concerns that [the] true aim is to suppress the [organization's] speech regarding gender-

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

affirming care." *Endocrine Soc'y*, 2026 WL 1257289, at *13. The same demand for patient identities and complete records, set against DOJ's declared objective to end this care, supplies no legitimate interest that could justify the burden on protected speech.

Finally, DOJ argues that "*Branzburg* controls" and forecloses any assertion of First Amendment rights in response to a grand jury subpoena. Opp. 13. But the proposed class's claims are broader than any grand jury subpoena. They seek to bar any investigative technique pursued by Defendants that discriminates based on viewpoint. *See Conant*, 309 F.3d at 634. Regardless, *Branzburg* recognized that even "grand juries must operate within the limits of the First Amendment." 408 U.S. at 708. The Ninth Circuit has held that the First Amendment does not permit grand jury investigations "'instituted or conducted other than in good faith.'" *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1190 (9th Cir. 2017) (internal citation omitted). It has prohibited grand jury investigations that "engaged in a fishing expedition designed to gather as much background information as possible about the activities of a dissident group." *Id.* at 1188 (discussing *Bursey v. United States*, 466 F.2d 1059, 1065 (9th Cir. 1972)). That is exactly what DOJ is attempting here. It targets patients based on viewpoint. It requests an "astonishingly broad array of documents," including "all medical records and personal information of patients." *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025). Because that demand turns on the viewpoint patients expressed to their physicians, it burdens protected speech whatever instrument DOJ uses—a burden DOJ does *nothing* to dispute, *see* pp. 5-7, *supra*. And DOJ may not achieve through the coercive pressure of investigation what it could not do directly: it may not wield the "threat of invoking legal sanctions" to "achieve the suppression" of disfavored speech. *NRA of Am. v. Vullo*, 602 U.S. 175, 180 (2024) (internal citation omitted); *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). Viewpoint-discriminatory demands of this kind trigger the most exacting scrutiny, *Reed v. Town of Gilbert*, 576 U.S. 155, 163-71 (2015), which DOJ's demand cannot survive: the suppression of disfavored views is never a legitimate—much less compelling—interest.

## II. PLAINTIFFS SATISFY RULE 23's REQUIREMENTS FOR PROVISIONAL CERTIFICATION

### A. Provisional Class Certification Is Warranted

Courts have routinely issued temporary relief to provisional classes, including after *Trump v.*

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

*CASA, Inc.*, 606 U.S. 831 (2025). *See, e.g.*, *Vasquez Perdomo v. Noem*, 148 F.4th 656, 688 n.15 (9th Cir. 2025) (explaining that a district court can certify a provisional class for purposes of a preliminary injunction and extend such relief to all class members); *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1011 (N.D. Cal. 2025) (certifying a provisional class). Justice Kavanaugh's concurrence in *CASA* expressly anticipated that "plaintiffs who challenge the legality of" government action could "seek to proceed by class action under [Rule] 23(b)(2) and ask a court to award preliminary classwide relief." 606 U.S. at 869 (Kavanaugh, J., concurring).[1] Because Plaintiffs seek provisional certification together with preliminary relief, the class members are not the unconsented nonparties DOJ describes.

**B.    Plaintiffs Have Satisfied Numerosity, Commonality, Typicality, and Rule 23(b)(2)**

***Numerosity.*** DOJ agrees that numerosity requires only that the proposed class and subclass have 40 members. Opp. 16. Plaintiffs offered evidence that Children's Hospital of Los Angeles had "thousands" of minor patients receiving transgender healthcare. ECF 45-1 at 6. DOJ contends Plaintiffs offer "no reasonable method of translating such an unconfirmed statistic" into an estimate of the number of members in the proposed class. Opp. 16. But *all* those thousands of minor patients received transgender healthcare in California and would thus qualify as class members. Am. Compl. ¶ 57. And the number of subclass members who received care at LPCH, a comparable hospital, must surely exceed 40. *Id.* ¶ 58. Plaintiffs need not identify the precise number of potential class members, particularly where "general knowledge and common sense indicate that [the class] is large." 1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions,* § 3:13 (6th Ed. 2025). DOJ offers no contrary evidence to suggest that fewer than forty patients are impacted by its investigation, which seeks over five years of records from multiple hospitals. *See, e.g.*, ECF 31-2 at 5; Am. Compl. ¶¶ 41-50.

***Commonality, Typicality, and Rule 23(b)(2).*** The class's and subclass's constitutional claims challenge DOJ's campaign of seeking PHI concerning transgender minors. DOJ has issued subpoenas that are so similar that they contain the same typographical error. *Compare* ECF 31-2 at 9, *with* ECF 1 at 32; Am. Compl. ¶ 50. That uniform practice creates common issues, which the Court can answer "in one stroke" to "drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

---

[1] *CASA* neither overruled nor narrowed *AARP v. Trump*. *AARP*'s holding that courts may issue temporary relief to a putative class remains controlling. *See AARP v. Trump*, 605 U.S. 91, 97-98 (2025).

(2011); ECF 45-1 at 7-10. The class representatives' challenges to that uniform practice are also "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds*, *Dukes*, 564 U.S. at 338; ECF 45-1 at 10-11. And because DOJ has "acted" on "grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2), "a single injunction or declaratory judgment would provide relief to each" class member. *Dukes*, 564 U.S. at 360.

DOJ urges that class members received care at different hospitals, which may have received different subpoenas. But DOJ seeks the same categories of records, from the same defined group of patients, to advance the same federal objective, and as part of the same federal campaign. DOJ cannot insist that it conducts a nationwide investigation out of the Northern District of Texas, on the one hand, and then contend that the nationwide investigation is different for every hospital. All class members who are targeted by that nationwide investigation suffer the same injury to their constitutional rights. And DOJ's argument entirely ignores the LPCH subclass, which by definition sought care from a single hospital subject to one set of demands. Am. Compl. ¶ 58.

DOJ's common policy supplies the "glue" *Dukes* found missing. 564 U.S. at 352. Unlike the dispersed, discretionary decisions of managers in *Dukes*, the conduct here is one agency's centralized decision to pursue the same categories of PHI concerning a defined group—a question that yields the same answer no matter which institution holds the records or how DOJ seeks them. If the mere fact that uniform conduct affected different entities and people defeated commonality, no class could ever be certified. Because the representative plaintiffs challenge uniform conduct directed at all class and subclass members, they satisfy commonality, typicality, and the requirements of Rule 23(b)(2).

## C. Plaintiffs Are Adequate Class Representatives

Plaintiffs B.B. and G.G. also satisfy Rule 23(a)(4)'s adequacy requirements. They seek common relief for all class members and have declared their willingness to vigorously pursue it. ECF 46-5 ¶ 16; ECF 46-6 ¶ 17; ECF 45-1 at 11-13.

DOJ argues that pseudonymous plaintiffs cannot adequately represent a class, citing out-of-circuit cases. Opp. 20-21. But courts in this circuit have routinely certified classes with pseudonymous class representatives. *See, e.g.*, *Doe v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 954 (C.D. Cal. 2023);

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

*Does 1-10 v. Univ. of Washington*, 326 F.R.D. 669, 685 (W.D. Wash. 2018). DOJ's citations, moreover, involved Rule 23(b)(3) classes. *See Barbara v. Trump*, 790 F. Supp. 3d 80, 96 (D.N.H.), *cert. granted before judgment*,  (146 S. Ct. 879 (2025) distinguishing *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649-50 (D.N.H. 2020)). Rule 23(b)(2) classes have "less need for information about class representatives." *Id.*; *see also Doe v. Mundy*, 514 F.2d 1179, 1182 (7th Cir. 1975). "[I]n putative class actions raising constitutional challenges, the public interest is not being able to identify any one Plaintiff, but in being able to follow the case to determine how the constitutional issues are resolved." *Doe v. City of Apple Valley*, No. 20-CV-499 (PJS/DTS), 2020 WL 1061442, at *3 (D. Minn. Mar. 5, 2020) (cleaned up). Finally, "[g]iven the stigma and fear of violence," a "rule that class representatives must be publicly identified would likely discourage individuals from stepping forward and seeking redress for their injury. That is antithetical to the purpose of the class action." *Id.*

DOJ further attempts to manufacture a conflict between Plaintiffs and some transgender youth and their families who might not oppose disclosure of their PHI. But DOJ cannot defeat adequacy by positing "speculative conflicts." *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). Moreover, any hypothetical disagreement with Plaintiffs about the merits of DOJ's investigation would not be a conflict of interest under Rule 23, because it does not create divergent interests in the relief sought. Even if DOJ had identified some putative class member who supports disclosure of their PHI, the relief sought here prevents only *compelled* disclosure. It would not prohibit any class member from *voluntarily* disclosing their medical records to DOJ. Thus, even the hypothetical sympathizer DOJ imagines would suffer no adverse effect from the requested injunction.

### D.  Certification Is Proper Under Rule 23(b)(1)(A)

Finally, this Court can certify the class and subclass under Rule 23(b)(1)(A) because separate suits could produce "inconsistent or varying adjudications" that would establish "incompatible standards of conduct for the party opposing the class." DOJ's uniform investigative demands cannot violate the First and Fifth Amendment for some class members, but not others. DOJ contends that Rule 23(b)(1)(A) applies only when conflicting judgments threaten to create "practical impossibilities." Opp. 23. That threat exists here. Inconsistent judgments for different class members would leave DOJ (not to mention doctors and patients) in an impossible position. Different courts could enjoin different parts of

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

DOJ's investigative demands, leaving DOJ with uncertainty about what it could enforce, if anything. This is why cases involving "many individuals, all challenging a single government policy," present a "core example" of when certification under Rule 23(b)(1)(A) is appropriate. *Gray v. County of Riverside*, No. 13-cv-444, 2014 WL 5304915, at *37 (C.D. Cal. Sept. 2, 2014). The issues created by multiple suits cannot be dismissed as mere "administrative difficulty." Opp. 23 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001)). A ruling that the First and Fifth Amendment forbid DOJ's effort to obtain PHI for vast groups of transgender minors cannot coexist with a ruling permitting the same effort, and DOJ—by its own account conducting one coordinated investigation—could not conform to both. That is the precise scenario Rule 23(b)(1)(A) addresses.

## III.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

This Court's prior decision found no reason to "doubt" the "gravity of harm that might result from unauthorized disclosure of [Plaintiffs'] medical information." ECF 40 at 15. The "deprivation" of the proposed class's "constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal citation omitted). Highly personal PHI, once disclosed, "cannot be made secret again." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 802 (N.D. Cal. 2022). If DOJ obtains the records, the proposed class's Fifth Amendment privacy interest will have been extinguished, its protected First Amendment speech will have been chilled, and no remedy can change that class members' identities and medical histories have been disclosed to prosecutors who have been directed to investigate the healthcare they received as abuse. Mot. 16.

Grand jury secrecy is no answer. Opp. 24 (citing *Kalbers v. U.S. Dep't of Just.*, 166 F.4th 783, 791 (9th Cir. 2026)). Plaintiffs are harmed by disclosure of their information *to DOJ*, not just further disclosure of their information by DOJ. *See Tucson Woman's Clinic*, 379 F.3d at 551-55. Plaintiffs also explained that DOJ has recently shown "disregard" for "standards that have traditionally governed grand jury practice." Mot. at 16-17 & n.15; *see also In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 2026 WL 1392565, at *10 (D.R.I. May 14, 2026) ("[T]he discrepancy between the honorable conduct expected of federal prosecutors and DOJ's tactics in this case is unsettling."). DOJ does not respond.

/ / /

/ / /

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

## IV.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN ORDER PRESERVING PLAINTIFFS' PRIVACY RIGHTS

An injunction is necessary to maintain the status quo while this case proceeds to final judgment. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Any disclosure of the proposed class's PHI will result in the irreparable harm this case seeks to prevent. DOJ urges that it has a "'compelling interest in finding, convicting, and punishing those who violate the law.'" Opp. 24 (quoting *Samia v. United States*, 599 U.S. 635, 655 (2023)). But that generalized interest cannot outweigh the class's specific, clearly articulated interest in preventing disclosure of their constitutionally-protected information in the circumstances presented here, particularly given that DOJ has articulated no need for these patients' identifying records—as distinct from the underlying conduct it says it is investigating. Courts have faulted DOJ for failing to offer "even a bare foundation" for its sweeping demands for "adolescent patient medical records." *In re CNH Subpoena*, No. 25-cv-03780-JRR, 2026 WL 160792, at *8 (D. Md. Jan. 21, 2026). DOJ offers no such foundation here. DOJ's failure to explain any legitimate need for these patients' identifying records also precludes it from invoking a "'public interest in law enforcement.'" Opp. 24 (quoting *Branzburg*, 408 U.S. at 690). DOJ's investigation here violates the proposed class's First and Fifth Amendment rights. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)).

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motions for provisional class certification and a preliminary injunction barring DOJ from obtaining the proposed class's PHI in violation of its First and Fifth Amendment rights. DOJ requests that the Court stay any injunction pending appeal, or alternatively, for "10 days." Opp. 25. But such a stay would allow DOJ to obtain the proposed class's information, inflicting the exact harm this suit seeks to prevent. If the Court finds a likelihood of constitutional violations and irreparable harm, it should not enter a stay that would permit those violations and the accompanying harm to occur.

/ / /

/ / /

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION

DATED: June 22, 2026

Respectfully submitted,

NATIONAL CENTER FOR LGBTQ RIGHTS
GLBTQ LEGAL ADVOCATES & DEFENDERS (GLAD LAW)
ROSEN BIEN GALVAN & GRUNFELD LLP
LOWELL & ASSOCIATES PLLC


By:    /s/ Christopher F. Stoll
         Christopher F. Stoll

Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND MOTION FOR PROVISIONAL CLASS CERTIFICATION