BRETT A. SHUMATE
Assistant Attorney General
JORDAN CAMPBELL
Deputy Assistant Attorney General
LISA K. HSIAO
Acting Director
SARAH WELCH
Senior Counsel to the Assistant Attorney General
JOHN BAILEY
BRANTLEY MAYERS
Counsel to the Assistant Attorney General
LISA K. HSIAO
Acting Director
SHIMENG ZHANG

LUKE MILLER
EUGENE O'HALLORAN
Trial Attorneys

U.S. Department of Justice
Civil Division
 950 Constitution Ave. NW
 Washington, D.C. 20005
 Telephone: (202) 514-6993
 E-mail: John.Bailey@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A., et al.<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>Defendants, | No. 5:26-cv-04998-PCP<br><br>**FEDERAL DEFENDANTS'<br>MEMORANDUM IN SUPPORT OF<br>MOTION TO STAY PRELIMINARY<br>INJUNCTION PENDING APPEAL** |

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................1

BACKGROUND ..............................................................................................................1

ARGUMENT ...................................................................................................................2

    I.      The government is likely to succeed on the merits of its appeal. ....................2

         A. Plaintiffs are in the wrong court and do not have a cause of action. ..........2

         B. Plaintiffs' Fifth Amendment Claim is Unlikely to Succeed. .......................4

    II.     The Non-Merits Factors Favor a Stay...............................................................7

CONCLUSION.................................................................................................................8

**TABLE OF AUTHORITIES**

**CASES**

*Abbott v. Perez,*
    585 U.S. 579 (2018).................................................................................................... 4

*Armstrong v. Exceptional Child Ctr.,*
    575 U.S. 320 (2015).................................................................................................... 2

*Branzburg v. Hayes,*
    408 U.S. 665 (1972).................................................................................................... 3

*Chicago Headline Club v. Noem,*
    168 F.4th 1033 (7th Cir. 2026) ................................................................................. 8

*Church of Scientology of Cal. v. United States,*
    506 U.S. 9 (1992)....................................................................................................... 9

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).................................................................................................... 4

*Cnty. of Sacramento v. Lewis,*
    523 U.S. 833 (1998).................................................................................................... 7

*Dickinson v. Trump,*
    174 F.4th 634 (9th Cir. 2026) ................................................................................... 2

*Dobbs v. Jackson Women's Health Organization,*
    597 U.S. 215 (2022).................................................................................................... 5

*Dole v. Serv. Emps. Union, FL-CIO, Local 280,*
    950 F.2d 1456 (9th Cir. 1991) ................................................................................... 8

*Hancock v. Cnty. of Rensselaer,*
    882 F.3d 58 (2d Cir. 2018).......................................................................................... 6

*Hilao v. Est. of Marcos,*
    95 F.3d 848 (9th Cir. 1996) ....................................................................................... 2

*In re Grand Jury Proceedings,*
    801 F.2d 1164 (9th Cir. 1986) ................................................................................... 5

*In re Grand Jury Subpoena, No. 16-03-217,*
    875 F.3d 1179 (9th Cir. 2017) ......................................................................... 1, 7, 8

*In re Sealed Case,*
    794 F.2d 749 (D.C. Cir. 1986).................................................................................... 9

*In re Subpoena Duces Tecum,*
    228 F.3d 341 (4th Cir. 2000) ..................................................................................... 9

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).................................................................................................... 4

*Maryland v. King*,
    567 U.S. 1301 (2012)...............................................................................................8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
    145 S. Ct. 2658 (2025)...........................................................................................3

*New York Times Co. v. Dep't of Def.*,
    2026 WL 1179440 (D.C. Cir. Apr. 27, 2026)......................................................9

*Nken v. Holder*,
    556 U.S. 418 (2009)...............................................................................................2

*Regino v. Staley*,
    133 F.4th 951 (9th Cir. 2025) ...............................................................................5

*Samia v. United States*,
    599 U.S. 635 (2023)...............................................................................................8

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)...........................................................................................3, 8

*Tucson Woman's Clinic v. Eden*,
    379 F.3d 531 (9th Cir. 2004) ........................................................................1, 5, 7

*United States v. Calandra*,
    414 U.S. 338 (1974)...............................................................................................5

*United States v. Dionisio*,
    410 U.S. 1 (1973)...................................................................................................6

*United States v. R. Enters. Inc.*,
    498 U.S. 292 (1991)...............................................................................................6

*United States v. Sells Eng'g, Inc.*,
    463 U.S. 418 (1983)...............................................................................................5

**STATUTES**

18 U.S.C. § 3282(a) ......................................................................................................9

18 U.S.C. § 3486..........................................................................................................4

**RULES**

Fed. R. Crim. P. 6(e)....................................................................................................3

Fed. R. Crim. P. 17(c)..................................................................................................2

Fed. R. Crim. P. 17(e)..................................................................................................2

**INTRODUCTION**

The Supreme Court and the Ninth Circuit have repeatedly upheld the "longstanding principle" that the grand jury is entitled to "every man's evidence." *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1192 (9th Cir. 2017). Because this Court's recent injunction against the Government flouts that principle, turns centuries of grand jury jurisprudence on its head, and prevents the Government from obtaining relevant evidence to further an active criminal investigation, this Court should stay its injunction pending appeal.

**BACKGROUND**

On July 2, 2026, the Court granted in part and denied in part the motions for class certification and preliminary relief. *See* Order, ECF No. 93. As to class certification, the court provisionally certified the subclass of Stanford patients under Rule 23(a) and Rule 23(b)(2), but denied certification as to the statewide class. *See id.* at 15-18. On the merits, the Court held that plaintiffs were likely to succeed on their Fifth Amendment informational privacy claim under the five-factor balancing test set out in *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004), and so declined to reach plaintiffs' First Amendment claim. Order at 31-40. As for the remaining injunction factors, the court concluded that the Stanford class will likely suffer irreparable harm absent an injunction and that the balance of equities and public interest tip in favor of relief.

The Court ultimately enjoined the Department "from requesting, receiving, producing, transmitting, disclosing, or otherwise obtaining any records, documents, or information that (1) identify members of the provisional class as having sought or received gender-affirming care (or 'Sex-Rejecting Procedures'); (2) disclose the clinical indications, diagnoses, assessments, or other sensitive health information underlying the provision of such care to members of the provisional class; (3) describe the gender-affirming care . . . provided to members of the provisional class or any consultations or patient intakes related to such care; or (4) relate to the provision of informed consent and parent or guardian authorization for provisional class members' receipt of gender-affirming care[.]" Order at 43. On July 9, 2026, Federal Defendants timely filed a notice of appeal. *See* ECF No. 94.

**ARGUMENT**

When deciding a motion to stay an order pending appeal, courts consider "(1) whether the stay

1

applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Dickinson v. Trump*, 174 F.4th 634, 642 (9th Cir. 2026) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

**I.    The government is likely to succeed on the merits of its appeal.**

**A.    Plaintiffs are in the wrong court and do not have a cause of action.**

Defendants are likely to succeed on their arguments that this Court cannot interfere with any grand jury subpoenas issued from a federal grand jury in Texas. The Federal Rules of Criminal Procedure establish a comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas. By permitting Plaintiffs to bypass that framework through collateral civil litigation, this Court effectively created a new mechanism for challenging federal grand jury process that neither the Rules nor history and precedent recognize. This Court's threshold conclusion—that patients have an equitable cause of action to bring a freestanding constitutional claim against alleged grand jury process issued under the authority of a different district court—is wrong, and it is not a close question.

Plaintiffs have no equitable cause of action to seek to "incidentally prevent DOJ's enforcement of a grand jury subpoena in another district." Order at 26. The Federal Rules of Criminal Procedure have instead "express[ly] provi[ded]," *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 328 (2015), that challenges to grand jury process take the form of a motion to quash presented to the supervising court. *See* Fed. R. Crim. P. 17(c); *Hilao v. Est. of Marcos*, 95 F.3d 848, 852 (9th Cir. 1996) (recognizing that "the Federal Rules have the force of statute"). Moreover, permitting collateral attacks on grand jury process outside the supervisory court is "judicially unadministrable"—both for the supervisory and non-supervisory court. *Armstrong*, 575 U.S. at 328. Grand jury subpoenas can be served "at any place within the United States," Fed. R. Crim. P. 17(e), and so a multiplicity of inconsistent rulings among federal courts could result if grand jury process could be challenged outside the issuing court—and even more so if those non-issuing courts accepted challenges by subpoena non-recipients. Further, the historical tradition of grand jury secrecy, now enshrined by Rule 6(e), means that it is impossible for the government to effectively litigate collateral challenges to grand jury process without the express authorization of the supervising court. *See* Fed. R. Crim. P. 6(e)(3)(E)(i). Nor is there any equitable history or tradition

recognizing freestanding constitutional causes of action to enjoin grand jury process. And prior to these cases, no other federal court appears to have endorsed the novel procedure adopted by this Court. Instead, as the Supreme Court has recognized, "[g]rand juries are subject to judicial control and subpoenas to motions to quash." *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972). An action to "prevent DOJ's enforcement of a grand jury subpoena in another district," Order at 26, "lacks a historical pedigree" and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025).

Last, Plaintiffs may not salvage matters by seeking *broader* relief from any "new efforts" by the Department to seek their patient records. Order at 26. That does not solve Plaintiffs' Rule 17 problem, and it instead simply introduces new problems. As to grand jury subpoenas, a plaintiff cannot end-run the limitations of Rule 17, *see* Order at 25, by packaging an impermissible request for relief from grand jury process together with a request for relief from other hypothetical process. If an order forbidding Action A is foreclosed, that limit cannot be evaded simply by entering an order forbidding "Action A or Action B." *See, e.g.*, *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2660-61 (2025) (staying an injunction in part, because challenges to grant terminations were channeled to a different forum, despite plaintiffs' packaging them together with challenge to guidance that was properly before district court).

Further, Plaintiffs lack standing to challenge investigatory measures other than the alleged grand jury subpoena. They provide no evidence that the government has sought or will seek to obtain their information through any means other than the alleged grand jury subpoena—rather, they can offer only mere speculation that the government might use other tools at its disposal to obtain records containing such information. It is black-letter law that to establish standing, a plaintiff must allege an injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citation omitted). Accordingly, a "threatened injury must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted) (emphasis in original). Plaintiffs plainly have not established any "certainly impending" injury from hypothetical future investigations. *See generally* FAC; ECF No. 46-2 at 24 (asserting "imminent" harm

because "[t]he return date for the grand jury subpoena issued to LPCH is June 10, 2026"). And what's more, those hypothetical future investigations may be subject to their own particular frameworks for motions to quash. *E.g.*, 18 U.S.C. § 3486. Plaintiffs cannot justify the injunction against an alleged grand jury subpoena as merely "incidental[]," Order at 26, when there is no Article III dispute as to the balance of the requested injunction.

Plaintiffs' attempted remedial broadening also introduces additional problems. A remedy barring all investigation is, if anything, even more unprecedented than an order targeting grand jury process and represents an even greater judicial invasion of Executive Branch prerogatives. Nor can Plaintiffs possibly show on the merits that any and all future attempts by the government to access their patient records would violate the Constitution. Ultimately, Plaintiffs sought and obtained an order that functions just like quashal of a grand jury subpoena. *Cf. Abbott v. Perez*, 585 U.S. 579, 595 (2018) (endorsing functional approach to assessment of remedy in order to prevent "manipulation" of rules through "careful" use of "terminology"). The government is likely to prevail in arguing on appeal that that was impermissible.

## B.      Plaintiffs' Fifth Amendment Claim is Unlikely to Succeed.

The Court erroneously held that Plaintiffs were likely to succeed on the merits of their Fifth Amendment informational privacy claim under the five-factor balancing test set out in *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004). Though the Ninth Circuit has recognized a general substantive due process right to informational privacy, *see id.*, no court appears to have before applied the doctrine to limit compliance with an otherwise lawful grand jury subpoena. Nor can *Tucson Woman's Clinic*—which predates *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022)—properly be extended to this novel context. *Dobbs* makes clear that courts may not recognize new applications of substantive due process by describing the asserted liberty interest "at a high level of generality," such as a generalized interest in "privacy," "autonomy," or bodily integrity. *Id.* at 254-57. Rather, the asserted interest must be carefully defined and shown to be "deeply rooted in the Nation's history and traditions." *Id.* at 250, 256; *see Regino v. Staley*, 133 F.4th 951, 963 (9th Cir. 2025) (noting "the critical requirement that we begin the substantive due process analysis with a 'careful description' of the asserted fundamental right" (citation omitted)). Properly framed, the right asserted here is not a general right to informational privacy, but a constitutional right to prevent a grand jury from obtaining medical records held by a third

party through otherwise lawful compulsory process. History and tradition provide no support for such a right. Just the opposite. Both the Supreme Court and Ninth Circuit have recognized that a "witness has no right of privacy before the grand jury," which is entitled to "responses [that] might prove embarrassing or result in an unwelcome disclosure of his personal affairs." *United States v. Calandra*, 414 U.S. 338, 353 (1974); *In re Grand Jury Proceedings*, 801 F.2d 1164, 1169 (9th Cir. 1986) ("There is no general right to privacy before the grand jury."); *see also, e.g.*, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 433 (1983) ("there are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence").

More generally, the Supreme Court has also repeatedly declined to adopt "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17 (1973). Subjecting alleged grand jury subpoenas to a "multifactor test" focused on interest balancing does just that—it "invite[s] procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena." *United States v. R. Enters. Inc.*, 498 U.S. 292, 298 (1991). Application of a multifactor balancing test, weighing the privacy of the information against the government's need for the information and how well-justified the investigation is, would be utterly inconsistent with a functional grand jury system. More still, such an approach would improperly "compromise the indispensable secrecy of grand jury proceedings" by "[r]equiring the government to explain in too much detail the particular reasons underlying a subpoena." *Id.* at 299. Indeed, outside the supervising court, it is impossible to balance privacy interests against the needs of the grand jury. A hypothetical illustrates the problem. Suppose a grand jury were investigating allegations that physicians had deceived their patients by prescribing placebos or adulterated drugs, and patient records were needed to identify the full universe of victims. Plaintiffs could hardly contend that the Constitution categorically barred the grand jury from obtaining those records—any more than it bars grand juries from obtaining medical records when investigating sexual assault or child exploitation. Yet because grand jury proceedings are secret, neither Plaintiffs nor this Court knows whether the investigation concerns circumstances of that kind, *see* ECF No. 46-2 at 4 ("the nature of any alleged criminal conduct under investigation is unknown"), and the government cannot confirm or deny

the nature of the investigation without compromising grand jury secrecy in violation of Rule 6(e). A court lacking access to a grand jury proceedings cannot meaningfully weigh a need for the records against an asserted privacy interest.

Regardless, insofar as a grand jury's receipt of evidence implicates constitutionally protected privacy interests, such "a breach of privacy takes a form courts have previously approved." *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 66 (2d Cir. 2018). No ad hoc interest balancing is required to conclude that Plaintiffs' Fifth Amendment claim is doomed.

In any event, Plaintiffs' substantive due process claim also fails under the balancing test generally applicable to disclosure of private information to the government. *See Tucson Woman's Clinic*, 379 F.3d at 551-552. Plaintiffs' claimed expectation of privacy in medical records held by third parties is incompatible with the disclosures that Stanford provides to patients. Even apart from that, the Court's analysis substantially overstates Plaintiffs' privacy interests by treating disclosure of medical records pursuant to a grand jury subpoena as tantamount to public dissemination of highly sensitive medical information. Order at 32-34. It is not. On Plaintiffs' own telling, the records would be produced to federal investigators in connection with a grand jury proceeding, subject to the historic safeguards governing such investigations. And the alleged sensitivity of evidence cannot itself place that evidence beyond the reach of otherwise lawful criminal process. Federal prosecutors routinely obtain and handle intensely private information, for example when investigating crimes involving sexual violence or child exploitation; Plaintiffs' contrary theory would apparently prevent the government from investigating some of the most serious offenses in Title 18 and cannot possibly be right.

On balance, and by any measure, the relevant factors plainly favor the government. Whatever cognizable privacy interests may be at stake here, they cannot possibly overcome the government's "compelling interest in the grand jury's investigation into possible violations of federal law." *In re Grand Jury Subpoena No. 16-03-217*, 875 F.3d at 1191. The Court's contrary conclusion—that the government's interest here is "at most, minimal," Order at 40—cannot be reconciled with Plaintiffs' admission that the "the nature of any alleged criminal conduct under investigation is unknown." ECF No. 46-2 at 4. On this record, Plaintiffs simply have not shown that the government has engaged in any "egregious," "conscience-shocking" misconduct prohibited by the Fifth Amendment. *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 846, 849 (1998).

## II.    The Non-Merits Factors Favor a Stay

Numerous recent rulings have recognized the irreparable harm to the Government visited by erroneous injunctions limiting lawful investigations and actions. It is well-established that the government suffers a quintessential form of irreparable injury when it is forestalled from enforcing its own laws. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The injunction here thus irreparably harms the United States because it directly prohibits the government from utilizing grand jury process to seek Plaintiffs' patient records. This harm is compounded in this context: by "prevent[ing] the Government from enforcing its policies against nonparties," the Court's injunction transgresses the separation of powers by "effectively establish[ing] the district court as the supervisor" of the Government's criminal investigation. *Chicago Headline Club v. Noem*, 168 F.4th 1033, 1040 (7th Cir. 2026); *CASA*, 606 U.S. at 859. And because the Court lacks equitable authority to enjoin grand jury process allegedly issued by a sister federal court, "the Government is likely to suffer irreparable harm from the [court's] entry of [an] injunction[] that likely exceed[s] the [court's] authority." *CASA*, 606 U.S. at 860. The preliminary injunction indefinitely bars the Department from obtaining the covered information through *any* grand jury process to investigate *any* crime, no matter how strong the evidence of wrongdoing, how necessary the information is to effectively prosecute it, or whether the subject of investigation is a hospital, doctor, pharmaceutical company, or otherwise.

These harms to the government and the public interest cannot be repaired by a later judgment in the government's favor. In this context, delay concretely and irreversibly harms the government's "clearly . . . legitimate and compelling interest" in enforcing criminal laws. *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d at 1191. The public and the government have a "compelling interest in finding, convicting, and punishing those who violate the law." *Samia v. United States*, 599 U.S. 635, 655 (2023) (citation omitted); *Dole v. Serv. Emps. Union, FL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991) ("[T]here is little doubt that the Department's purpose of investigating possible criminal violations of [a federal law] serves a compelling governmental interest."); *accord, e.g.*, *In re Sealed Case*, 794 F.2d 749,

7

751 n.3 (D.C. Cir. 1986) (per curiam) (recognizing "the weighty public interest in the orderly functioning of grand juries and the judicial process"). In the meantime, during the indefinite delay imposed by the preliminary injunction, personnel depart, records are lost or destroyed, statutes of limitations run, and witnesses' memories fade. *See, e.g.*, 18 U.S.C. § 3282(a) (default five-year statute of limitations for federal crimes). Indefinite delay threatens to foreclose investigative avenues—or prosecution altogether—before the government can complete its inquiry.

On the other side of the balance, Plaintiffs' asserted privacy interests do not outweigh those interests. The Court's determination that Plaintiffs would be irreparably harmed absent an injunction does not control its ruling on this stay motion—after all, all preliminary injunctions involve a determination that the prevailing party will be irreparably harmed absent an injunction, but district courts and courts of appeals stay preliminary injunctions anyway. *See, e.g.*, *New York Times Co. v. Dep't of Def.*, 2026 WL 1179440, at *2-3 (D.C. Cir. Apr. 27, 2026) (granting a stay despite concluding the losing party would face irreparable harm from a stay). For the reasons explained already, to the extent Plaintiffs retain privacy interests in medical records held by hospitals in this context, the government's interest in finding, convicting, and punishing those who violate the law far "outweighs the privacy rights of those whose [medical] records" are sought via grand jury subpoena. *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000). Any records disclosed to the government in the interim could be returned if Plaintiffs were to ultimately prevail on appeal. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13-15 (1992) ("[I]f the summons were improperly issued or enforced a court could order that the IRS' copies of the tapes be either returned or destroyed."). No principle of law or equity supports an injunction that indefinitely prohibits the Department from seeking or receiving an entire category of relevant evidence.

## **CONCLUSION**

The Court should grant the Government's motion for a stay pending appeal.

Dated:  July 14, 2026                    Respectfully submitted,


                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         JORDAN CAMPBELL
                                         Deputy Assistant Attorney General

                                         SARAH WELCH
                                         Senior Counsel to the Assistant Attorney General

                                         JOHN BAILEY
                                         ___/s/ _John Bailey_____

                                         BRANLEY MAYERS
                                         Counsel to the Assistant Attorney General

                                         U.S. Department of Justice
                                         Civil Division

                                         Attorneys for Federal Defendants