SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st Street #11548
Sacramento, California  94102
Telephone: (415) 392-6257
Email:      sminter@nclrights.org
            cstoll@nclrights.org
            awhelan@nclrights.org
            rberg@nclrights.org

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        ggrunfeld@rbgg.com
              kjanssen@rbgg.com

ABBE DAVID LOWELL (*pro hac vice*)
CALEB HAYES-DEATS (*pro hac vice*)
SCHUYLER STANDLEY (*pro hac vice*)
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
Telephone:   (202) 964-6110
Facsimile:   (202) 964-6116
Email:
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
SStandley@lowellandassociates.com
Attorneys for Plaintiffs

JOSHUA ROVENGER (*pro hac vice*)
DONOVAN BENDANA (*pro hac vice*)
GLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts  02108
Telephone: (617) 426-1350
Email:        jrovenger@gladlaw.org
              dbendana@gladlaw.org

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Z.A., a minor, by and through their parent, A.A., *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, *et al*,<br><br>Defendants. | Case No. 5:26-cv-04998<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>Assigned to: Hon. P. Casey Pitts |

Case No. 5:26-cv-04998

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT .................................................................................................................. 5

    I.      DOJ Has Not Shown Irreparable Harm ................................................................. 5

    II.    DOJ Has Not Made a Strong Showing of Likelihood of Success .......................... 7

        A.    DOJ's Arguments Contradict the Longstanding Practice Permitting Plaintiffs to Enjoin Constitutional Violations ...................................................... 7

        B.    DOJ Threatens to Violate Plaintiffs' Fifth Amendment Rights ....................... 10

    III.   The Balance of Equities and Public Interest Disfavor a Stay ............................... 12

CONCLUSION .............................................................................................................. 13

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) .................................................................................. 5, 6, 7, 12

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ................................................................................................. 3, 8, 9, 10

*Branzburg v. Hayes*,
   408 U.S. 665 (1972) .................................................................................................. 11

*Chicago Headline Club v. Noem*,
   168 F.4th 1033 (7th Cir. 2026) ............................................................................... 6

*Church of Scientology of Cal. v. United States*,
   506 U.S. 9 (1992) ...................................................................................................... 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................................................. 9

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*,
   137 F.4th 932 (9th Cir. 2025) ................................................................................. 6, 7

*Coe v. Blanche*,
   No. 1:26-cv-4641-KPF (S.D.N.Y. 2026) ............................................................. 2, 4, 12, 13

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ................................................................................ 5, 7

*Doe v. Bonta*,
   101 F.4th 633 (9th Cir. 2024) ................................................................................. 11

*Doe v. GoodRx Holdings, Inc.*,
   No. 23-cv-00501, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ...................... 4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) .................................................................................................. 8, 10

*In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*,
   No. 1:26-mc-0007, 2026 WL 1392565 (D.R.I. May 14, 2026) ......................... 12

*In re Children's Nat'l Hosp.*,
   No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026) .......................... 2, 12

*In re Clean Water Act Rulemaking*,
   60 F.4th 583 (9th Cir. 2023) ................................................................................... 5

*In re Subpoena No. 25-1431-014*,
  810 F. Supp. 3d 555 (E.D. Pa. 2025) ................................................................... 12

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ................................................................................ 5

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................................ 5

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ......................................................................... 11, 13

*New York Times v. Gonzales*,
  459 F.3d 160 (2d Cir. 2006) .......................................................................... 3, 4, 8

*NIH v. Am. Public Health Ass'n*,
  145 S. Ct. 2658 (2025) ........................................................................................ 10

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................... 5, 7, 12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ......................................................................................... 9, 10

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................................................ 10

*Tucson Woman's Clinic v. Eden*,
  379 F.3d 531 (9th Cir. 2004) ................................................................................ 9

*United States v. Calandra*,
  414 U.S. 338 (1974) ............................................................................................ 11

*United States v. Hubbell*,
  530 U.S. 27 (2000) ............................................................................................ 8, 9

*United States v. Wells*,
  29 F.4th 580 (9th Cir. 2022) ............................................................................... 11

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) .............................................................................. 5

*Whalen v. Roe*,
  429 U.S. 589 (1977) ............................................................................................ 11

*Zepeda v. INS*,
  753 F.2d 719 (9th Cir. 1983) ................................................................................ 5

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

**Statutes**

5 U.S.C. § 702 ................................................................................................................. 3

**Rules**

Federal Rule of Criminal Procedure 17 ................................................................. 3, 7, 8

**Other Authorities**

Richard H. Fallon, Jr., *Constitutional Remedies: In One Era and Out the Other*,
    136 Harv. L. Rev. 1300 (2023) ................................................................................. 10

Case No. 5:26-cv-04998

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

**INTRODUCTION**

In entering its preliminary injunction, the Court found that Defendants Acting Attorney General Todd Blanche and the U.S. Department of Justice (collectively, "DOJ") were violating the Fifth Amendment rights of Plaintiffs and similarly situated provisional class members by seeking some of the "most sensitive information that could be collected about a person" even though there is "virtually no chance that the information is relevant to an offense chargeable in the Northern District of Texas." ECF 93 ("Op.") at 38, 40. Allowing DOJ to obtain that information would cause members of the provisional class to suffer immediate and irreparable harm, including the "loss of privacy, chilling of doctor-patient communications, and risk of governmental harassment." *Id.* at 40-41. DOJ now seeks to stay the Court's injunction, which would allow it to obtain the provisional class's medical information and impose the same harms the Court found irreparable, during the pendency of DOJ's appeal.

The Court should deny the motion for multiple, independent reasons. First, DOJ has not offered any evidence of irreparable harm. Despite taking twelve days to file its motion, DOJ has not provided any declaration or other evidence identifying the supposed harms that would occur during the time it will take to resolve DOJ's appeal. Instead, it relies on broad assertions of harm to law enforcement and separation of powers that the Ninth Circuit has rejected as too generic to support a stay.

Second, DOJ has not shown a strong likelihood of success on appeal. Its arguments largely rehash points it made in opposing the injunction, without addressing the Court's explanations for why it previously rejected those arguments. DOJ's likelihood of success on appeal is further undercut by the fact that four other district courts have agreed with this Court's determination that the privacy concerns of transgender minors far outweigh any purported interest DOJ may have in obtaining their medical records.

Finally, the balance of equities and the public interest weigh heavily against a stay. As the Southern District of New York recently explained when denying a similar motion, a stay would result in a "complete subversion" of the preliminary injunction by allowing the "very irreparable

harm that the preliminary injunction was designed to prevent." *Coe v. Blanche*, No. 1:26-cv-4641-KPF, ECF 83 at 1-2 (S.D.N.Y. July 17, 2026).

## BACKGROUND

The decision from which DOJ now appeals catalogues the Executive Branch's "antipathy for the choice of some state legislatures not to ban gender-affirming care for minors." Op. at 4. In January 2025, President Trump "issued an executive order that expressly aimed to 'end' gender-transition-related medical care for minors." *Id.* In April, the Attorney General directed DOJ to civilly investigate such care for supposed violations of the Food, Drug, and Cosmetic Act and the False Claims Act. *Id.* at 4-5. In July, DOJ issued "more than 20 administrative subpoenas to medical centers providing gender-affirming care." *Id.* at 5. Those subpoenas sought "documents that would 'identify each patient' " receiving certain types of transgender healthcare, together with documents relating to their "clinical indications" and "diagnoses." *Id.* at 6 (internal quotation marks omitted). At least eight district courts quashed those subpoenas in whole or in part, concluding that "DOJ had failed to articulate any basis for investigating the hospitals" and that it was " 'utterly unclear' how such sensitive and identifying patient records related to the hospitals' purportedly unlawful conduct." *Id.* at 6-7 (quoting *In re Children's Nat'l Hosp.*, No. 1:25-cv-03780, 2026 WL 160792, at *3 (D. Md. Jan. 21, 2026)).

DOJ responded to those setbacks by withdrawing the administrative subpoenas, including one to Lucile Salter Packard Children's Hospital ("Packard"), and issuing grand jury subpoenas "under the seal of the Northern District of Texas." Op. at 8. Those grand jury subpoenas also sought documents "sufficient to identify each patient who underwent Sex-Rejecting Procedures," together with the "clinical assessments" and "diagnoses" that "formed the basis for providing Sex-Rejecting Procedures." *Id.* Courts in other districts have found that DOJ's conduct amounted to an attempt to " 'recast discredited civil administrative subpoenas as grand jury subpoenas from a hand-picked faraway jurisdiction in order to minimize judicial review of constitutional infirmities.' " *Id.* at 9 (quoting *Coe*, No. 26-cv-4641, ECF 89 at 11 (S.D.N.Y. June 24, 2026)).

Plaintiffs are patients of Packard and their parents. Op. at 2. Their amended complaint sought to bar DOJ from obtaining their protected health information ("PHI") and that of other

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

similarly situated patients in violation of the First and Fifth Amendments. *Id.* at 9-10. On June 8, 2026, Plaintiffs moved for provisional class certification and injunctive relief barring DOJ from obtaining class members' PHI. ECF 45 & 46.

On July 2, 2026, the Court certified a provisional class of minor patients who received transgender healthcare at Packard and entered a preliminary injunction barring DOJ from "obtaining" records that would "identify members of the provisional class as having sought or received gender-affirming care," disclose their "clinical indications" and "diagnoses," "describe the gender-affirming care" they received, or "relate to the provision of informed consent" for such care. Op. at 43. The Court first found that "DOJ's demand for Packard's patient records" raised common questions for all members of the provisional class and permitted class members to seek injunctive relief that would apply to the "class as a whole." *Id.* at 18-22.

Turning to the merits, the Court found that Plaintiffs had satisfied the standard for establishing the availability of injunctive relief for DOJ's constitutional violations. Op. at 24-31. The Supreme Court has "long held" that federal courts may enjoin "violations of federal law by federal officials," *id.* at 24 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015)), and Congress has waived DOJ's immunity from such suits in 5 U.S.C. § 702, *id.* Federal Rule of Criminal Procedure 17 does not demonstrate any congressional "intent to foreclose" the equitable relief Plaintiffs seek. *Id.* at 25-26. Plaintiffs "do not seek to quash a particular grand jury subpoena," but instead "challenge DOJ's broader campaign to procure provisional class members' private health information." *Id.* Applying the test from *Armstrong*, the Court found a lack of "congressional intent to preclude equitable relief" because (a) "Rule 17 lacks a close relationship to any particular substantive rule of law" and (b) it "contains no other indicia of an intent to foreclose constitutional claims." *Id.* at 27-28. That conclusion was "bolstered" by the Second Circuit's decision in *New York Times v. Gonzales*, 459 F.3d 160, 165-67 (2d Cir. 2006), which held that a "plaintiff could use a declaratory action in one district to collaterally challenge DOJ's attempt to obtain the plaintiff's confidential information" by issuing a grand jury subpoena in another district. Op. at 28. Finally, the Court rejected DOJ's appeals to comity, finding that any risk to comity had been "manufactured by DOJ" as it sought to "avoid another loss and force

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Packard and its patients to pursue any challenge to DOJ's demands in a forum that DOJ deems friendlier." *Id.* at 30.

The Court then found that Plaintiffs were "likely to succeed" on the merits of their Fifth Amendment privacy claim. Op. at 31. The Ninth Circuit has "recognized" Plaintiffs' Fifth Amendment right to protect the privacy of highly sensitive information, and the Supreme Court has "for decades assumed, without conclusively deciding, that such a right exists." *Id.* Applying the Ninth Circuit's test, the Court determined that the information Plaintiffs sought to protect is "highly sensitive," that the "requirements of grand jury secrecy" did not limit the "potential harm" of disclosing that information, and that DOJ had no need for the information because there was "virtually no chance that the information is relevant to an offense chargeable in the Northern District of Texas." *Id.* at 32-38.

Finally, the Court found that factors other than likelihood of success weighed in favor of a preliminary injunction. Op. at 40-43. The provisional class faced a risk of irreparable harm. Plaintiffs had a likelihood of showing not only deprivation of a constitutional right, but also disclosure of the " 'most sensitive information that could be collected about a person.' " *Id.* at 40 (quoting *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501, 2025 WL 2052302, at *15 (N.D. Cal. July 22, 2025)). Such disclosure would deter provisional class members from seeking healthcare and could "out" them to federal officials that "sought to identify, demonize, and ultimately to eradicate an entire population of transgender people." *Id.* at 41 (quoting *Coe*, No. 26-cv-4641, ECF 89 at 8). DOJ identified no offsetting harm that would weigh against an injunction. Its own "conduct" suggested that any need it has for class members' information is "not urgent," because DOJ "took no action to compel disclosure of such information for nine months after first serving Packard with its administrative subpoena." *Id.* at 42. Moreover, the preliminary injunction does "nothing to prevent DOJ from seeking other records that might actually be relevant" to any criminal investigation. *Id.*

## LEGAL STANDARD

"A request for a stay pending appeal is committed to the exercise of judicial discretion," and the "party requesting a stay pending appeal 'bears the burden of showing that the circumstances

justify an exercise of that discretion.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)).  Courts consider four factors: "(1) whether the Government has made a strong showing of the likelihood of success on the merits; (2) whether the appellants will be irreparably injured absent a stay; (3) whether a stay will substantially injure other parties; and (4) where the public interest lies."  *Id.*  The first two are the "most critical," and the last two are considered only "if the first two factors are satisfied."  *Nken*, 556 U.S. at 434-35.

## ARGUMENT

### I.    DOJ Has Not Shown Irreparable Harm

Where a movant "has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue."  *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam). "[S]imply showing some possibility of irreparable injury" is insufficient.  *Nken*, 556 U.S. at 434 (cleaned up).  Instead, the applicant must show that "irreparable injury is likely to occur during the period before the appeal is likely to be decided."  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).  DOJ has not made this threshold showing.  This Court has already found that the preliminary injunction will not injure the government "in any meaningful way," explaining that "the government 'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'"  Op. at 42 (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)).

Although DOJ must show irreparable harm to prevail, it devotes only two paragraphs of its motion to that issue.  ECF 97-1 ("Mot.") at 7-8.  First, it argues that a government "suffers a quintessential form of irreparable injury when it is forestalled from enforcing its own laws."  *Id.* at 7 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers)).  But the Ninth Circuit has explained that the "harm of such a perceived institutional injury is not 'irreparable,' because the government 'may yet pursue and vindicate its interests in the full course of this litigation.'"  *Doe #1*, 957 F.3d at 1059 (quoting *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam)).  Otherwise, "no act of the executive branch asserted to be inconsistent with" the Constitution "could be the subject of a preliminary injunction."  *Id.*; *see also In re Clean Water Act Rulemaking*, 60 F.4th 583, 594 (9th Cir. 2023) ("[I]t is well settled that

federal courts have equitable authority to 'enjoin unconstitutional actions by state and federal officers.'"). Nor can DOJ invoke a generalized injury to "separation of powers." Mot. at 7. The Ninth Circuit has rejected the "notion that [an] injunction's effect on the 'separation of powers' qualifies as irreparable harm at the stay stage." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 137 F.4th 932, 943 (9th Cir. 2025).[1]

Second, DOJ asserts that "indefinite delay imposed by the preliminary injunction" will "concretely and irreversibly harm[ ]" its investigation. Mot. at 7-8. But any delay will not be "indefinite." The Ninth Circuit has already entered a schedule under which DOJ's appeal will be fully briefed by September 25, 2026, less than three months from the Court's entry of the preliminary injunction. ECF 95. "DOJ's conduct" has created far more extensive delay, because it "took no action" for "nine months after first serving Packard with its administrative subpoena." Op. at 42. DOJ's conduct continues to suggest that any need it has for the requested information is "not urgent." *Id.* It waited twelve days to even move for a stay. ECF 97. DOJ cannot delay its pursuit of information for over nine months and then contend that it will suffer irreparable harm by waiting a few additional months "before the appeal is likely to be decided." *Al Otro Lado*, 952 F.3d at 1007.

DOJ's broad and generic assertions of harm are further undercut by its failure to submit any supporting evidence. *Cmty. Legal Servs.*, 137 F.4th at 942-43. This Court found that DOJ's interest in receiving the requested records is "negligible," because the records are "almost certainly irrelevant" to the investigation. Op. at 40. It further found that "DOJ's conduct suggests that the need is not urgent." *Id.* at 42. Even though DOJ "had the opportunity to gather evidence"

---

[1] DOJ's citation to *Chicago Headline Club v. Noem*, 168 F.4th 1033, 1040 (7th Cir. 2026), is inapposite. Mot. at 7. In *Chicago Headline Club*, the injunction at issue "established the district court as the supervisor of all Executive Branch activity in the city of Chicago" by requiring the government "to submit all current and future internal guidance, policies, and directives regarding efforts to implement the order for the court's review." 168 F.4th at 1040. Nothing about the Seventh Circuit's invalidation of that injunction on the merits suggests that *any* injunction that restrains executive power constitutes "supervision" and causes irreparable harm. *Id.* As there is no analogous supervisory element to this Court's preliminary injunction, and because this injunction is limited to the specific information at issue, the concerns set forth in *Chicago Headline Club* are distinguishable and inapplicable.

during the twelve days it waited to file its stay motion, the motion does not include a "declaration from a government official asserting" that irreparable harm will occur, much less that it will occur during the pendency of its expedited appeal. *Cmty. Legal Servs.*, 137 F.4th at 942-43. The motion "fails to cite any evidence at all." *Id.* Without any such evidence, the Court "cannot conclude that irreparable injury 'is the more probable or likely outcome' here." *Id.* (quoting *Al Otro Lado*, 952 F.3d at 1007). Even if DOJ's generic assertions of enforcement delay established "some possibility of irreparable injury," and they do not, that would be insufficient to support a stay. *Nken*, 556 U.S. at 434. The Court should deny the stay on that basis alone.

## II. DOJ Has Not Made a Strong Showing of Likelihood of Success

"An applicant for a stay pending appeal must make 'a strong showing that he is likely to succeed on the merits.'" *Al Otro Lado*, 952 F.3d at 1010 (quoting *Nken*, 556 U.S. at 434). That is a "high standard." *Doe #1*, 957 F.3d at 1062. "Where, as here, the showing of irreparable harm is weak at best, the government must make a commensurately strong showing of a likelihood of success on the merits to prevail under the sliding scale approach." *Al Otro Lado*, 952 F.3d at 1010. "Only 'a stronger showing of one element may offset a weaker showing of another.'" *Id.* DOJ fails to show any likelihood of success on appeal, much less a strong likelihood, because it does not meaningfully address this Court's detailed and persuasive reasoning. A motion that simply repeats arguments already rejected after full briefing and argument does not carry the heavy burden required to suspend an injunction protecting constitutional rights.

### A. DOJ's Arguments Contradict the Longstanding Practice Permitting Plaintiffs to Enjoin Constitutional Violations

This Court's Order addressed Federal Rule of Criminal Procedure 17 in detail and concluded that, under the Supreme Court's decision in *Armstrong*, Rule 17 did not display "congressional intent to preclude" the equitable relief Plaintiffs seek. Op. at 25-29. *Armstrong* found such an intent with respect to § 30(A) of the Medicaid Act because it (1) created a "sole remedy" for "failure to comply with Medicaid's requirements" and (2) explicitly conferred

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

"enforcement of [that remedy's] judgment-laden standard upon the Secretary" of Health & Human Services. 575 U.S. at 328; Op. at 26-27.[2]

DOJ urges that, under *Armstrong*, Rule 17 establishes a "comprehensive framework governing the issuance, supervision, and challenge of grand jury subpoenas." Mot. at 2. But that is simply wrong. Rule 17 is not "comprehensive." It is overinclusive in some respects and underinclusive in others. Rule 17 is overinclusive because it is not specific to grand jury subpoenas, and instead "provides a broad mechanism to challenge any federal criminal subpoena" as "unreasonable or oppressive." Op. at 27 (quoting Fed. R. Crim. P. 17(c)(2)). Rule 17 is also underinclusive, because it is not the "sole remedy" for protecting Fifth Amendment rights, even in connection with grand jury subpoenas. *Armstrong*, 575 U.S. at 328. Subpoena recipients need not move to quash a grand jury subpoena under Rule 17(c) to assert their Fifth Amendment rights, and can instead refuse to testify or produce requested documents. *E.g.*, *United States v. Hubbell*, 530 U.S. 27, 36 (2000). If DOJ persists in violating those individuals' Fifth Amendment rights, then courts must dismiss any indictments the grand jury returns. *See id.* at 45-46. Those remedies for threatened and actual Fifth Amendment violations are unrelated to Rule 17, reinforcing the Court's conclusion that "Rule 17 lacks a close relationship to any particular substantive rule of law." Op. at 27. It would be unprecedented to infer that the creation of a mechanism to challenge *any* criminal subpoena as "unreasonable or oppressive" demonstrated congressional intent to foreclose other longstanding remedies for protecting Fifth Amendment rights. *See Gonzales*, 459 F.3d at 166 (holding Rule 17 does not preclude declaratory relief).

Even if DOJ could satisfy the first of *Armstrong*'s two criteria, it could not satisfy the second. As the Court previously found, "Rule 17 contains no other indicia of an intent to foreclose constitutional claims for equitable relief that would incidentally affect enforcement of a subpoena." Op. at 27-28. DOJ asserts that permitting such constitutional claims would be

---

[2] As a threshold matter, it is unclear whether *Armstrong*'s standard applies not only to statutory schemes Congress enacted, but also to equitable claims asserting the constitutional rights of individuals. The Supreme Court has repeatedly found an implied right of action to redress constitutional violations. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (collecting cases).

"judicially unadministrable." Mot. at 2 (quoting *Armstrong*, 575 U.S. at 328). But in *Armstrong*, the concern about administrability related to a "judgment-laden standard" that required the "expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking." 575 U.S. at 328-29. There can be no serious dispute that federal courts, not administrative agencies, routinely resolve Fifth Amendment claims under well-established standards. *E.g.*, *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). DOJ's protestations about administrability hypothesize a "multiplicity of inconsistent rulings among federal courts." Mot. at 2. But that simply rehashes DOJ's prior arguments about comity of federal courts, the principle that has historically avoided the "embarrassment of conflicting judgments." Op. at 29. As the Court found, DOJ cannot invoke comity concerns because its own "forum shopping" "manufactured" any "risk of conflicting court orders." *Id.* at 30. DOJ does not respond to that finding, much less identify any error in it.

DOJ next argues that Plaintiffs cannot seek "*broader* relief" prohibiting it from obtaining PHI by means other than the grand jury subpoena. Mot. at 3-4. That argument lacks merit. First, Plaintiffs have standing because their injury has been "*certainly impending*" for over a year. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Before the grand jury subpoena issued, DOJ had served a "substantially similar" administrative subpoena seeking the same information about the provisional class. ECF 31-1 ¶ 6. Even if DOJ has now withdrawn that administrative subpoena, its long running "campaign to procure provisional class members' private health information," Op. at 25, creates a "credible threat" of future action sufficient for standing, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). As the Court explained, Plaintiffs should not have to play " 'a game of whack-a-mole' in which they must constantly uncover and counter DOJ's ever-shifting tactics." Op. at 26.

Similarly unavailing is DOJ's accusation that Plaintiffs are "packaging an impermissible request for relief from grand jury process together with a request from other hypothetical process." Mot. at 3. Plaintiffs "do not seek to quash a particular grand jury subpoena," much less package such relief with other requests. Op. at 25. The Court enjoined "DOJ from 'obtaining' " specific

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

information. *Id.* at 26. That injunction does "not invalidate the subpoena," which remains in place and can be enforced as to documents and information that do not fall within the injunction's scope. *Id.* That fact distinguishes Justice Barrett's concurrence in *NIH v. Am. Public Health Ass'n*, 145 S. Ct. 2658 (2025). There, a district court had jurisdiction to vacate agency guidance under the APA, but lacked jurisdiction to reinstate grants terminated under that guidance because statutes channeled that issue to the Court of Claims. *Id.* at 2661 (Barrett, J., concurring). As a matter of "law and logic," vacating the guidance did not "reinstate terminated grants." *Id.* The district court's APA jurisdiction thus did not give it jurisdiction over the claims channeled to the Court of Claims. *Id.* Here, in contrast, the Court has jurisdiction to declare and enforce Plaintiffs' rights. It had no need to take the further step of quashing the grand jury subpoena and explicitly did not do so. Op. at 26.[3]

Finally, DOJ contends that the Court's injunction lacks "historical pedigree." Mot. at 3 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025)). But the Supreme Court has recognized a "long history of judicial review of illegal executive action, tracing back to England." *Armstrong*, 575 U.S. at 327; *Free Enter. Fund*, 561 U.S. at 491 n.2; *see* Richard H. Fallon, Jr., *Constitutional Remedies: In One Era and Out the Other*, 136 Harv. L. Rev. 1300, 1311 (2023) ("Founding generation presupposed a background scheme of common law and equitable remedies through which the Constitution could be enforced and rights vindicated."). *CASA* itself envisioned that "plaintiffs who challenge the legality of a new . . . executive action and request preliminary injunctive relief may . . . ask a court to award preliminary classwide relief." 606 U.S. at 869 (Kavanaugh, J., concurring). DOJ cannot show a strong likelihood of success on appeal when the Court exercised longstanding equitable powers on a classwide basis exactly as *CASA* foresaw.

### B.    DOJ Threatens to Violate Plaintiffs' Fifth Amendment Rights

DOJ's arguments regarding Plaintiffs' Fifth Amendment privacy claim are even weaker. DOJ does not dispute that *Tucson Woman's Clinic* recognized a Fifth Amendment "right to

---

[3] Nor did the Court bar "all investigation." Mot. at 4. To the contrary, it specifically explained that the "injunction does nothing to prevent DOJ from seeking other records that might actually be relevant to" a legitimate investigation. Op. at 42.

informational privacy." Mot. at 4. But it contends that, following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the Court should not extend *Tucson Woman's Clinic* to "new applications" such as to "limit compliance with an otherwise lawful grand jury subpoena." *Id.*[4] That argument makes no sense. The Ninth Circuit has continued to "recognize[] a right to informational privacy" even after *Dobbs*. *Doe v. Bonta*, 101 F.4th 633, 637 (9th Cir. 2024). The source of that right, the Fifth Amendment, constrains all government action, including the "grand jury's subpoena power." *United States v. Calandra*, 414 U.S. 338, 346 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 708 (1972). DOJ cannot show a strong likelihood of success on appeal by urging the Court to disregard the clear import of Ninth Circuit precedent. *See United States v. Wells*, 29 F.4th 580, 587 n.3 (9th Cir. 2022) ("[W]e . . . are bound by earlier published decisions of our court.").

DOJ urges that applying a "multifactor balancing test" to grand jury subpoenas will "impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." Mot. at 5. But neither DOJ nor the public has any interest in investigations that violate constitutional rights. *See* Op. at 42; *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The Court found that DOJ was abusing the grand jury process, because the "record before the Court evinces virtually no chance that the information [sought] is relevant to an offense chargeable in the Northern District of Texas." Op. at 38. It further found that grand jury secrecy did not prevent DOJ from offering evidence that it had a proper purpose for requesting the information: "It is within DOJ's authority to petition the Texas court for authorization to disclose grand jury matters" for the Court to review *in camera*. *Id.* at 37. Those findings show that judicial review, under established precedent, is not "inconsistent with a functional grand jury system." Mot. at 5. Such review impedes only what multiple courts have found to be a "bad-faith

---

[4] *Dobbs* itself distinguished between "two very different meanings" of privacy: "the right to shield information from disclosure" and "the right to make and implement important personal decisions without governmental interference." 597 U.S. at 273 (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). Plaintiffs' claim rests on the former interest—the right to shield highly sensitive personal medical information from compelled government disclosure. *Dobbs* addressed only the latter autonomy-based interest; it did not address, much less overrule, the informational-privacy doctrine.

campaign" of improper investigation techniques. Op. at 35. DOJ never addresses that impropriety. It is no response to repeated findings of bad faith to argue that DOJ must have the flexibility to act quickly in carrying out the same tactics the Court found likely unconstitutional. That response has even less merit where DOJ's own "conduct suggests that [its] need is not urgent." Op. at 42.

Finally, DOJ contends that the factors set forth in *Tucson Woman's Clinic* weigh in its favor. But those assertions simply retread DOJ's earlier arguments. DOJ urges that Packard disclosed that it might produce medical information in response to a grand jury subpoena, Mot. at 6, but never responds to the Court's determination that Packard's disclosures contemplate "a showing of possible relevance to the purported law-enforcement purpose and an attendant government interest in the information," criteria DOJ has not met here, Op. at 33. Similarly, DOJ asserts that records will be produced "subject to historic safeguards," Mot. at 6, but nowhere addresses the Court's finding that it is "of little solace to transgender minors that the only officials with access to their medical records are those working to terminate gender-affirming care based on clear hostility to 'transgenderism,'" Op. at 35. Every court to have considered this issue has held that the interest of transgender minors in the privacy of their medical records outweighs any interest DOJ may have in obtaining that same information. *Coe*, No. 1:26-cv-4641-KPF, ECF 77 at 20 (S.D.N.Y. June 24, 2026); *In re Admin. Subpoena 25-1431-032 to Rhode Island Hosp.*, No. 1:26-mc-0007, 2026 WL 1392565, at *8-10 (D.R.I. May 14, 2026); *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 588-606 (E.D. Pa. 2025). DOJ cannot make a "strong showing" that courts' uniform conclusion is incorrect, *Al Otro Lado*, 952 F.3d at 1010, much less that the Court's ruling is so plainly wrong that it should be stayed pending appeal.

### III.    The Balance of Equities and Public Interest Disfavor a Stay

The final two factors of the stay analysis, if reached, both weigh heavily against entry of a stay here. First, a "stay will substantially injure" the provisional class. *Nken*, 556 U.S. at 434. This Court previously found that allowing DOJ to obtain the provisional class's sensitive medical information would result in constitutional violations, "loss of privacy, chilling of doctor-patient

communications, and risk of governmental harassment," all of which "cannot be undone." Op. at 41.[5] A stay pending appeal would permit DOJ to obtain the provisional class's information and thus inflict the "very irreparable harm that the preliminary injunction was designed to prevent." *Coe*, No. 1:26-cv-4641-KPF, ECF 83 at 1-2 (S.D.N.Y. July 17, 2026). Such an outcome would be a "complete subversion of the Court's decision to grant the preliminary injunction in the first place." *Id.*

The public interest also disfavors a stay. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Because a stay would threaten such violations, the public interest weighs in favor of denying DOJ's motion.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny DOJ's motion for a stay pending appeal.

---

[5] DOJ's suggestion that any injury can be cured by returning or destroying records after appeal, Mot. at 8, is wrong. *Church of Scientology of Cal. v. United States* addressed whether a third party's compliance with a subpoena rendered a dispute moot; it did not hold that disclosure of constitutionally protected information to the government causes no irreparable injury. 506 U.S. 9, 13-15 (1992). In fact, the Court held the exact opposite, noting that "a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy." *Id.* at 13. The Court found that, following disclosure, "it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred." *Id.*

DATED:  July 28, 2026

SHANNON P. MINTER – 168907
CHRISTOPHER F. STOLL – 179046
AMY WHELAN – 215675
RACHEL BERG*
NATIONAL CENTER FOR LGBTQ
RIGHTS
1401 21st Street #11548
Sacramento, California  94102
Telephone:     (415) 392-6257
Email:
sminter@nclrights.org
cstoll@nclrights.org
awhelan@nclrights.org
rberg@nclrights.org

GAY C. GRUNFELD – 121944
KARA J. JANSSEN – 274762
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:
ggrunfeld@rbgg.com
kjanssen@rbgg.com

Respectfully submitted,

*/s/ Caleb Hayes-Deats*

CALEB HAYES-DEATS*
ABBE DAVID LOWELL*
SCHUYLER STANDLEY*
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC  20005
Telephone: (202) 964-6110
Facsimile: (202) 964-6116
Email:
CHayes-Deats@lowellandassociates.com
ALowellpublicoutreach@lowellandassociates.com
SStandley@lowellandassociates.com

JOSHUA ROVENGER*
DONOVAN BENDANA*
GLBTQ LEGAL ADVOCATES &
DEFENDERS (GLAD LAW)
18 Tremont Street, Suite 950
Boston, Massachusetts  02108
Telephone:     (617) 426-1350
Email:
jrovenger@gladlaw.org
dbendana@gladlaw.org

Attorneys for Plaintiffs
*motion for admission *pro hac vice* granted

14                                    Case No. 5:26-cv-04998